# A

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| DUKES, SS. | DUKES SUPERIOR COURT<br>CIVIL ACTION NO.: DUCV2013-00049 |

WENDY SWOLINZKY )
D/B/A BOOKABOAT )
    Plaintiff )
 )
V. )
 )
BEVERLY WRIGHT, SPENCER BOOKER, )
And JAMES NEWMAN, as they are the )
Aquinnah Board of Selectmen, and BEVERLY )
WRIGHT, individually )
    Defendants )

## SECOND AMENDED COMPLAINT

### PARTIES

1. Plaintiff Wendy Swolinzky, hereinafter "Ms. Swolinzky" or "Plaintiff", resides in Dukes County, P.O. Box 634, Aquinnah, MA 02535.

2. For the period of 14 years preceding this complaint, Plaintiff has single handedly conducted an annual/seasonal boat renting business called "BookaBoat," located on land owned by both the Towns of Aquinnah and Chilmark.

3. Defendants Beverly Wright, Spencer Booker and James Newman each reside in Aquinnah, MA. and together constitute the Aquinnah Board of Selectmen, hereinafter "the Board", which conducts its business in Dukes County at 65 State Road, Aquinnah, MA 02535.

4. Defendant Beverly Wright was the Chair Person of the Board, and formerly the President of the Wampanoag Tribe, is a resident of Dukes County and resides in Aquinnah, MA 02535 and Charleston, West Virginia 25321.

### FACTS

5. The Defendants know that Plaintiff's "BookaBoat" boat rental business is seasonal and that a significant volume of her business is conducted annually from late Spring to Labor Day.

6. As of the start of the 2013 season, the Plaintiff held a valid 5-year lease with the Board. This lease of Lot B commenced on July 1, 2012 and ran through June 30, 2017.

7. For the past seven (7) years, the Aquinnah Board of Selectmen and the small community of Menemsha lessees were actually aware that the Plaintiff conducted her business from a small office in a "shack" owned by Camille Rose. This "shack" is located on Lot A, which adjoins Lot (B). Plaintiff had leased Lot B for the previous fourteen (14) years and had been openly using the "shack" for the previous seven (7) years. A major portion of the "shack" itself is located within the Town of Chilmark and the remainder of the shack lies within the borders of the Town of Aquinnah.

8. As of December of 2012, the members of the Aquinnah Board of Selectmen clearly knew that Camille Rose owned this "shack," and that Ms. Rose intended to sell the "shack" to the Plaintiff. The Defendants also knew, or in the exercise of reasonable care, should have known that a significant portion of the "shack" was not located within the borders of the Town of Aquinnah.

9. At the December 18, 2012, Aquinnah Board of Selectmen (hereinafter "BOS") meeting the Board members discussed the possibility of purchasing the "shack" on Lot A from Camille Rose. The BOS directed Aquinnah Town Administrator Adam Wilson (hereinafter "Wilson") to contact Rose to determine if she was interested in the sale of the "shack" as an option to Rose "having to remove it." See email exchange between Wilson and Camille Rose, cc. to BOS, (Attached hereto as "Exhibit A")

10. On January 8, 2013, Rose responded to the BOS as follows:

    "Your offer to buy my building in Menemsha is appreciated but I have promised to sell it to Wendy Smolinsky (sic) in the event that I can no longer use it. Please understand that in spite of the stories to the contrary, I have never sublet to her. Several years ago I made this promise to Wendy and now I will honor it..." See email exchange between Camille Rose and BOS, (Attached hereto as "Exhibit B")

11. There is a provision in all Aquinnah Board leases of the waterfront Menemsha lots prohibiting the subletting of lots or shared usage, however the Board had neither employed nor enforced the provision until December 2012, when the provision was used as a reason not to renew the Lease of Lot A, held by Camille Rose.

12. The BOS initially stated their intention not to renew Camille Rose's lease of Lot A purportedly because she was unable to demonstrate that she intended to use the property for purposes permitted by the lease as a bait and tackle business. The

BOS subsequently attempted to use the "shared usage" exclusion as the basis for ending Ms. Rose's lease.

13. In her preparation for the 2013 season, the Plaintiff appeared at a duly noticed meeting of the Board on January 8, 2013 and presented her business plan.

14. On January 8, 2013, the BOS reviewed Plaintiff's business plan. Board member James Newman suggested that there be a switch of lots, that the Board permit Plaintiff to swap her existing lease of Lot B for the existing lease of Lot A. As stated, Lot A's lessee, Camille Rose, had permitted the Plaintiff to use the shack to conduct her business for the last 7 years without disturbance by the Board or anyone else.

15. The Board took Plaintiff's business plan and its own suggestion to "swap" Plaintiff's Lot B with Lot A under advisement until the next Board meeting, which was scheduled for January 22, 2013.

16. On January 22, 2013, the Board formally accepted the minutes of the January 8, 2013 meeting and did so unanimously. The Board's January 22, 2013, relevant minutes are as follows:

> "Aquinnah Board of Selectmen
> Minutes of Meeting 1/22/2013
> Aquinnah Town Hall Selectmen's Mtg Room
> Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,
> Also present: Town Administrator Adam Wilson, Jamie Vanderhoop, Theresa Manning, Chief Randhi Belain, Sgt Paul Manning, Wendy Swolinzky, Vern Welch, Jimmy San Fillippo, Barbara Bassett, Moderator Mike Hebert, June Manning, and Town Accountant Margie Spitz.
> -The meeting began at 5:05 pm
> -1st on the agenda under old business was a review of minutes from the 1-8 Selectmen's meeting.
> -Jim made a motion to accept the minutes from January 8th. Beverly seconded.
> The Board voted 3 - 0 in favor. The motion passed.
> -Next under old business was a revisit of the proposal from Wendy to have her switch the current Menemsha lot she leases (Lot B) and take over the lot being vacated by Camille Rose (Lot A). With the change, Lot A's water frontage would increase to 70' and Lot B's would be reduced to 35'. Spencer stated he was in favor of the change and just moving the lot lines. Beverly said she just doesn't want a state agency saying down the road they couldn't make these changes. Wendy said the current site plan

was drawn up by Hugh (Taylor) and only the lot owned by Alfred Vanderhoop had been on the original site plan.
There was discussion about the Board's decision not to renew Camille's lease, which was for one year, expiring June 30th of this year and the existing shed being sold to Wendy. The lot created would become available to the 1st person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern.
-Jim made a motion to move the lot line so that Lot B is reduced to 35 feet and increase Lot A to be 69.9 feet. Beverly seconded. There was discussion about notifying Chip about Lot B's availability. Jimmy asked about the commercial fishing license requirement to have one of the lots. The Board voted 3 - 0 in favor. The motion passed.
-Beverly made a motion that as of July 1st, 2013, the town will enter into a new lease agreement for Wendy to have Lot A. Jim seconded.
The Board voted 3 - 0 in favor. The motion passed." (Attached hereto as "Exhibit C")

17. No contingencies existed or further approval was required at the time of the Board's vote or subsequent to it. The Board was the sole licensing and issuing authority for the rights to lease Lot A. The Plaintiff subsequently relied on their unanimous votes granting her substantial contractual rights and following the January 22, 2013, Board meeting, she entered into a written contract with Camille Rose to purchase the shack resting on Lot A for the sum of $30,000. Any issue regarding any party named on the "waiting list," could and should have been raised at that time.

18. Full faith and credit to a "waiting list" policy of the Board was amply discussed in public during the January 22, 2013 Board Meeting and was repeated in the minutes and stated as follows:

> "The lot created would become available to the 1st person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern." Vern is Vernon Welch, Berta Welch's husband. "There was discussion about notifying Chip about Lot B's availability." See minutes of the meeting of January 22, 2013, a full, true and accurate copy of which is memorialized in paragraph 17 above. The Board also noted in their minutes that the existing shed was to be sold to the Plaintiff "Wendy."

19. Neither the Plaintiff nor Camille Rose were on the wait list because each held a valid lease. The Board's concept of the lot swap did nothing to derogate from the wait-list policy. It was specifically addressed and honored during the January 22, 2013 meeting. Vernon Welch was present and participating, he was placed on public notice that Lot B was open and available on July 1, 2013 first to Brian Vanderhoop and then to him should Mr. Vanderhoop decline.

20. Defendant Beverly Wright has in the recent past been, and currently is, an employee of Berta Welch, the wife of Vernon Welch. Berta Welch and Defendant Wright have known each other and worked together and have been best friends for many years. Beverly Wright's husband is Berta Welch's first cousin.

21. On April 23, 2013, the Defendants wrongfully and without legitimate justification or notice rescinded their previous vote to award the Plaintiff with a lease for Lot A. The Defendants, without justification or legitimacy subsequently awarded the lease of Lot A, as well as the use of the "shack" to Vernon Welch.

22. This decision was based upon nepotism and political favoritism and was approved by the Board without lawful justification or explanation.

23. The lease of Lot A to Welch was done despite the fact that Defendant Beverly Wright knew that Plaintiff had relied on the January 22, 2013 vote to purchase the shack from Camille Rose. Board members Booker and Newman admitted during public Board meetings that rescission of their January 22, 2013 vote would likely put the Plaintiff out of business.

24. On April 23, 2013, the Board rescinded the previously unanimous vote of January 22, 2013 by a vote of 2 to 0. BOS member James Newman abstained. , The BOS's lease of Lot A to Vernon Welch, was done with full knowledge that the Plaintiff owned the shack.

25. Vernon Welch is domiciled in Dukes Country and resides at 10 Raymonds Hill Lane, Aquinnah. Mr. Welch is married to Berta Welch, Defendant Wright's employer.

## COUNT ONE
### Breach of Contract

26. On January 22, 2013, the Board of Selectmen of Aquinnah entered into an agreement with the Plaintiff, whereby the Defendant Board agreed to lease to the Plaintiff and the Plaintiff agreed to rent the premises described as follows: Lot A with frontage increased to 69.9 feet, lease to commence July 1, 2013 at the annual rent of $450.00 for a term of five years. The written minutes of the January 22, 2013 BOS meeting were confirmed unanimously on February 5, 2103. The audio-tape and transcript of the January 22, 2013 meeting memorialized the lease agreement as did the confirmation of the written minutes on February 5, 2015. See paragraph 17.

27. The Plaintiff requests that the audio-tapes, transcripts and video-tapes, if any, of the respective BOS meetings identified above are hereby incorporated by reference for all purposes.

28. By its rescission vote of April 23, 2013, the Board of Selectmen of Aquinnah breached its agreements with the Plaintiff and damaged her in several particulars, specifically including, but not limited to, the $30,000 she committed in reliance on the January 22, 2013 votes of the Board of Selectmen of Aquinnah, and substantial losses in business during her 2013 Summer season and subsequently.

## COUNT TWO
### Promissory Estoppel

29. Following two properly noticed and constituted public meetings of the Board of Selectmen of Aquinnah, namely the public meetings of January 8 and January 22, 2013, the unanimous votes of the Selectmen constituted promises to the Plaintiff which reasonably induced her actions to enter into binding contracts in preparation for the nearing Summer season of 2013, and also induced Plaintiff's forbearance from moving the shack, which she purchased following the Board's votes and in addition induced Plaintiff's forbearance from seeking alternative business sites.

30. Plaintiff's reliance on the promises defined by the unanimous votes of the Selectmen on January 22, 2013 were not only commercially reasonable, they were made four months before the start of the Summer season. Her reliance constitutes an independent and sufficient basis for enforcing the promises.

31. Rescission of the January 22, 2013 unanimous votes occurred on April 23, 2013, a mere seven (7) days before the start of the 2013 summer season for the Plaintiff.

## COUNT THREE
### Interference With Contractual and Advantageous Business Relationships

32. Defendant Beverly Wright, in concert with third parties, by and with continuing improbity, intentionally interfered with both the contractual and advantageous business relationships between the Plaintiff and the Town of Aquinnah by proactively and wrongfully coordinating a rescission of the Board's unanimous vote of January 22, 2013.

33. On April 23, 2013, Defendant Wright, by her unlawful actions as a government actor and under the color of law, achieved her goal of rescission, her baseless reasons on full display during televised recordings of the Board's several public meetings, culminating in the award of Plaintiff's Lot A lease to Vernon Welch, the spouse of Berta Welch, Defendant Wright's employer as well as Wright's husband's first cousin.

34. On April 23, 2013, the Board wrongfully, and without explanation or justification, rescinded its prior vote to lease Lot A to the Plaintiff, in doing so the Defendants breached the covenant of good faith and fair dealing with the Plaintiff, anticipatorily breached the promised lease, refused to execute and deliver to

Plaintiff a formal indenture of lease for the said premises, and at the present time continues to refuse to deliver and execute the lease and has caused Plaintiff multiple damages.

35. Plaintiff is ready, willing and able to do and perform all acts and things necessary by her to be done under the terms if the agreement set forth in the public meeting votes of the Aquinnah Board of Selectmen of January 22, 2013.

## COUNT FOUR
### Unconstitutional Taking

36. On September 3, 2013, Aquinnah's Board of Selectmen and Aquinnah's Planning Board conducted a joint public meeting for the specific purpose of discussing Plaintiff's "shack," its removal from Lot A, and the rights of all lessees of Menemsha lots.

37. As of September 3, 2013, the Board actually knew that Plaintiff's Planning Board application was not merely pending but also complex and would become the subject of multiple further permit requirements.

38. Sometime shortly before the Board meeting of December 3, 2013, without notice to the Plaintiff or in compliance with Massachusetts' Open Meeting Law, Defendant Wright had sua-sponte asked the Town Administrator to place an item on the meeting agenda regarding the "status" of Plaintiff's permit applications.

39. Board member Newman is the Board's representative to the Aquinnah Planning Board and was at all relevant times cognizant of Plaintiff's applications, which remain pending to this date. He was a proactive participant in the joint meeting of the Select and Planning Board on September 3, 2013, paragraph 29 above.

40. No notice pursuant to G. L. Ch. 30A, Section 20(c) was given to Plaintiff or to the public that a taking of the shack was to be considered.

41. In multiple meetings of the Board of Aquinnah subsequent to the January 22, 2013 votes, the Board acknowledged Plaintiff's ownership of the shack. (See para. 9-11).

42. At all relevant times, the Board was actually aware that Plaintiff had purchased the shack on April 11, 2013 and had a copy of her Bill of Sale in its Town Office.

43. On May 28, 2013, the Board's attorney corresponded and acknowledged Plaintiff's ownership of the shack.

44. On May 28, 2013, the Board's attorney corresponded and suggested that Plaintiff sell the shack to Vernon Welch.

45. On December 3, 2013, the Board voted to take the shack as town property and did so without notice to the Plaintiff or with either Procedural or Substantive Due Process in violation of Plaintiff's rights under both the 4th and 5th Amendments to the United States Constitution and Articles 10 and 12 of the Massachusetts Declaration of Rights.

46. In violation of the Open Meeting Law of Massachusetts, G. L. Ch. 30A, Section 20(c) by failing to provide appropriate notice to the public of which Plaintiff is a part, the Board lacked the authority to unilaterally amend the agenda from "status" to a "taking."

47. The Board's vote of December 3, 2013, was arbitrary, capricious, and violated Plaintiff's constitutional right to the free and unfettered access to her personal property by taking that property without notice, and by ignoring the requisite steps to seize personal property in accord with the law of eminent domain or as required by the 4th and 5th Amendments to the United States Constitution and Articles 10 and 12 of the Massachusetts Declaration of Rights

48. In a wrongful attempt and with the intent to justify or explain the Board's misconduct of December 3, 2013, on February 5, 2014, entirely without legal justification or precedent, the Board employed Section 17 of a lapsed lease with Camille Rose (lapsed as of June 30, 2013) to take possession of the shack in 2014.

49. On December 3, 2013, in violation of the open meeting law, G. L. Ch. 30A, Section 20(c) by failing to notify anyone in the Town of Aquinnah or in the Town of Chilmark by customary posting in advance of a public meeting of any agenda item by which the Board intended to discuss Plaintiff's property, without notice to the Plaintiff pursuant to her Federal and Massachusetts constitutional rights, the Town voted a public taking of the shack, without compensation, of personal property of the Plaintiff, property situated not in the Town of Aquinnah but in the Town of Chilmark.

COUNT FIVE
Massachusetts Constitution, Declaration of Rights, Art. 10 and 12

50. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

51. The actions of the Defendants, individually and collectively, deprive the Plaintiff of the practical value of her property and has effected a taking of the Plaintiff's property for the purpose of wrongfully benefitting another party, based upon political favoritism and nepotism, and without notice or due process and without the payment of just compensation in violation of the Massachusetts Constitution, Declaration of Rights, Art. 10 and 12.

52. Plaintiff has been damaged by Defendants' violations as described in this count and seek recovery for the damages caused thereby.

## COUNT SIX
### Federal Civil Rights Claims (42 US CODE 1983, 1985)

53. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

54. The actions of the Defendants, individually and collectively, under the color of law, denied the Plaintiff the economically viable use of her property, awarded the lease of Lot A and the so-called "shack" on the basis of political favoritism, which constitutes a seizure without due process and without just compensation in violation of 42 U.S Code, 1983, Federal Civil Rights, Amendments IV, V and Amendment XIV of the United States Constitution.

55. Plaintiff has been damaged by the Defendants' violations as described more fully above and seeks recovery for the damages caused thereby, including attorney's fees and punitive damages.

## COUNT SEVEN
### Civil Conspiracy

56. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

57. The individual Defendants acting as the Board of Selectmen, have pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of a common plan or design to violate Plaintiff's constitutional rights by awarding the lease of Lot A and the shack to another party based upon political favoritism and nepotism.

WHEREFORE, The Plaintiff respectfully requests:

a. That the Defendant Board be required to specifically perform the agreement to lease Lot A in accord with the terms of the January 22, 2013 votes;

b. That if specific performance is not granted, judgment enter in favor of the Plaintiff and against the Defendants, jointly and severally in an amount to be decided by a jury;

c. That the Court declare that Plaintiff is the lawful owner of the shack and that, in the alternative, it be removed, at the Defendants expense to Lot B;

    d. That the Court order the Town of Aquinnah to fairly and reasonably compensate her for the shack, for losses in her business and associated costs;

    e. That payment of costs be made by the Defendants.

    f. The Court award punitive damages and attorneys fees as provided by law.

Respectfully submitted,
For Plaintiff,
By her attorney,

Timothy M. Burke, BBO #065720
160 Gould Street, Suite 100
Needham, MA 02494-2300
(781) 455-0707

Dated: February 9, 2016