

**COMMONWEALTH OF MASSACHUSETTS**
**DUKES COUNTY**
**Docket Report**

**1374CV00049**
**Wendy  Swolinzky d/b/a BookaBoat  vs.  Aquinnah Board of Selectmen et al**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Contract / Business Cases | **FILE DATE:** | 12/04/2013 |
| **ACTION CODE:** | A08 | **CASE TRACK:** | F - Fast Track |
| **DESCRIPTION:** | Sale or Lease of Real Estate | | |
| **CASE DISPOSITION DATE** | 04/13/2016 | **CASE STATUS:** | Closed |
| **CASE DISPOSITION:** | Transferred to another Court | **STATUS DATE:** | 04/13/2016 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil A |

| LINKED CASE |
|---|

| DCM TRACK | | |
|---|---|---|
| **Tickler Description** | **Due Date** | **Completion Date** |
| Service | 03/04/2014 | 04/13/2016 |
| Answer | 04/03/2014 | 04/13/2016 |
| Rule 12/19/20 Served By | 04/03/2014 | 04/13/2016 |
| Rule 15 Served By | 04/03/2014 | 04/13/2016 |
| Rule 12/19/20 Filed By | 05/03/2014 | 04/13/2016 |
| Rule 15 Filed By | 05/03/2014 | 04/13/2016 |
| Rule 15 Heard By | 06/02/2014 | 04/13/2016 |
| Rule 12/19/20 Heard By | 06/02/2014 | 04/13/2016 |
| Discovery | 04/01/2016 | 04/13/2016 |
| Rule 56 Served By | 05/02/2016 | 04/13/2016 |
| Rule 56 Filed By | 06/01/2016 | 04/13/2016 |
| Final Pre-Trial Conference | 10/03/2016 | 04/13/2016 |
| Judgment | 12/01/2016 | 04/13/2016 |

| PARTIES | |
|---|---|

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

**COMMONWEALTH OF MASSACHUSETTS**
**DUKES COUNTY**
**Docket Report**

| **Plaintiff** | **Private Counsel** | **375450** |
|---|---|---|
| Wendy  Swolinzky d/b/a BookaBoat | Oberkoetter,  Robert  F | |
| PO Box 634 | Robert F. Oberkoetter, Esq. | |
| Aquinnah, MA 02535 | Robert F. Oberkoetter, Esq. | |

Oberkoetter,  Robert  F
Robert F. Oberkoetter, Esq.
Robert F. Oberkoetter, Esq.
3 Jordan Road
Dartmouth, MA 02748
Work Phone (508) 536-5364
Added Date: 12/04/2013

**065720**

Burke,  Timothy Michael
Law Offices Of Timothy M Burke
Law Offices Of Timothy M Burke
160 Gould Street
Suite 100
Needham, MA 02494
Work Phone (781) 455-0707
Added Date: 11/04/2015

**677851**

Burke,  Jared
Law Offices of Timothy M Burke
Law Offices of Timothy M Burke
160 Gould Street
Suite 100
Needham, MA 02494
Work Phone (781) 455-0707
Added Date: 11/04/2015

# COMMONWEALTH OF MASSACHUSETTS
## DUKES COUNTY
### Docket Report

| Defendant | Private Counsel | 115890 |
|---|---|---|
| Aquinnah Board of Selectmen<br>65 State Road<br>Aquinnah, MA 02535 | Davis, John J<br>Pierce, Davis & Perritano LLP<br>Pierce, Davis & Perritano LLP<br>10 Post Office Square<br>Suite 1100<br>Boston, MA 02109-4603<br>Work Phone (617) 350-0950<br>Added Date: 06/16/2014 | |
| | | 661497 |
| | Barnett, Seth<br>Pierce Davis & Perritano LLP<br>Pierce Davis & Perritano LLP<br>10 Post Office Square<br>Suite 1100<br>Boston, MA 02109-4603<br>Work Phone (617) 350-9050<br>Added Date: 12/26/2014 | |
| | **Private Counsel**<br>Twohig, Shauna<br>Pierce, Davis & Perritano, LLP<br>Pierce, Davis & Perritano, LLP<br>90 Canal Street<br>Fourth Floor<br>Boston, MA 02114-2018<br>Work Phone (617) 350-0950<br>Added Date: 08/18/2014 | 685590 |
| **Defendant**<br>Booker, Member, Spencer | **Private Counsel**<br>Twohig, Shauna<br>Pierce, Davis & Perritano, LLP<br>Pierce, Davis & Perritano, LLP<br>90 Canal Street<br>Fourth Floor<br>Boston, MA 02114-2018<br>Work Phone (617) 350-0950<br>Added Date: 08/18/2014 | 685590 |
| **Defendant**<br>Newman, Member, James | **Private Counsel**<br>Twohig, Shauna<br>Pierce, Davis & Perritano, LLP<br>Pierce, Davis & Perritano, LLP<br>90 Canal Street<br>Fourth Floor<br>Boston, MA 02114-2018<br>Work Phone (617) 350-0950<br>Added Date: 08/18/2014 | 685590 |

DUKES COUNTY
Docket Report

| Defendant | Private Counsel | 633225 |
|---|---|---|
| Welch, Individually, Vernon | Vukota, Marilyn H<br>McCarron, Murphy & Vukota, LLP<br>McCarron, Murphy & Vukota, LLP<br>P.O. Box 1270<br>Edgartown, MA 02539<br>Work Phone (508) 627-3322<br>Added Date: 05/23/2014 | |
| Defendant<br>Wright, Individually, Beverly | Private Counsel<br>Davis, John J<br>Pierce, Davis & Perritano LLP<br>Pierce, Davis & Perritano LLP<br>10 Post Office Square<br>Suite 1100<br>Boston, MA 02109-4603<br>Work Phone (617) 350-0950<br>Added Date: 06/16/2014 | 115890 |
| | Barnett, Seth<br>Pierce Davis & Perritano LLP<br>Pierce Davis & Perritano LLP<br>10 Post Office Square<br>Suite 1100<br>Boston, MA 02109-4603<br>Work Phone (617) 350-9050<br>Added Date: 12/26/2014 | 661497 |
| Defendant<br>Wright, Member, Beverly | | |

## PARTY CHARGES

| # | Offense Date/<br>Charge | Code | Town | Disposition | Disposition<br>Date |
|---|---|---|---|---|---|
| | | | | | |

## EVENTS

| Date | Session | Event | Result | Resulting Judge |
|---|---|---|---|---|
| 02/26/2014 | Civil A | Rule 12 Hearing | Rescheduled | |
| 04/11/2014 | Civil A | Rule 12 Hearing | Held as Scheduled | |
| 07/30/2014 | Civil A | Hearing | Held as Scheduled | |
| 01/27/2016 | Civil A | Pre-Trial Conference | Canceled | Davis |

COMMONWEALTH OF MASSACHUSETTS
**DUKES COUNTY**
**Docket Report**

| FINANCIAL SUMMARY | | | | |
|---|---|---|---|---|
| No Financial Data for this report | | | | |

| Deposit Account(s) Summary | Received | Applied | Checks Paid | Balance |
|---|---|---|---|---|
| **Total** | | | | |

COMMONWEALTH OF MASSACHUSETTS
DUKES COUNTY
Docket Report

| | | INFORMATIONAL DOCKET ENTRIES | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 12/04/2013 | 1 | Complaint & civil action cover sheet filed | |
| 12/04/2013 | | Origin 1, Type A08, Track F. | |
| 12/04/2013 | | Tracking: origin/track set, Notice sent to Plt. Atty. | |
| 12/05/2013 | 2 | SERVICE RETURNED: Beverly Wright, Member(Defendant) | |
| 12/05/2013 | 3 | SERVICE RETURNED: Spencer Booker, Member(Defendant) | |
| 12/05/2013 | 4 | SERVICE RETURNED: James Newman, Member(Defendant) | |
| 12/05/2013 | 5 | SERVICE RETURNED: Beverly Wright, Individually(Defendant) | |
| 12/13/2013 | 6 | Tracking Order Service on Defendants | |
| 12/27/2013 | 7 | Defendants' MOTION to Dismiss (MRCP 12b) Complaint of Wendy Swolinzky d/b/a BookaBoat | |
| 12/27/2013 | 8 | Memorandum: in Support of Motion to Dismiss filed by Defendants | |
| 12/27/2013 | 9 | Opposition to Defs. Motion to Dismiss filed by Wendy Swolinzky d/b/a BookaBoat | |
| 12/27/2013 | 10 | Affidavit of compliance with Superior Court Rule 9A. | |
| 12/27/2013 | 11 | List of Documents | |
| 12/27/2013 | 12 | Notice of Filing | |
| 12/27/2013 | 13 | Request to File Reply Brief | |
| 12/31/2013 | | Request (P#13, to File Reply Brief) ALLOWED 3 Pages only (Nickerson, J.) Notices mailed 12/31/2013 | |
| 01/10/2014 | 14 | Reply brief to Plt. Opposition to Motion to Dismiss filed by Defendants | |
| 02/03/2014 | | Notice sent to appear on 2/26/2014 for a hearing | |
| 02/19/2014 | 15 | JOINT Motion of parties to to Continue Motion hearing | |
| 02/20/2014 | | Motion (P#15, Joint Motion to Continue) ALLOWED, Continued to 11 April 2014 at 2:00 PM (Page, J.) Notices mailed 2/20/2014 | |
| 02/20/2014 | | Notice sent to appear on 4/11/2014 for a hearing | |
| 04/16/2014 | | Motion (P#7, Defs/ Motion to Dismiss) The defendants' motion to dismiss is DENIED. It cannot be said that the plaintiffs have filed a legally insufficient complaint. Nor, can it be held that it appears to a certainty that the plaintiff is "entitled to no relief under any state of facts which could be proved in support of the claim." While the defendants' arguments do have some merit, they are best suited and should be raised during a motion for summery judgment. (Page, J.) Notices mailed 4/16/2014 | |
| 04/18/2014 | 16 | Plaintiff Wendy Swolinzky d/b/a BookaBoat's MOTION to amend complaint | |
| 04/18/2014 | 17 | Memorandum: in Support of Motion to Amend Complaint filed by Wendy Swolinzky d/b/a BookaBoat | |
| 04/18/2014 | 18 | Defendants' Response to Plt. Motion to Amend Complaint | |

| 04/18/2014 | 19 | Plt. Opposition to Defendants' Request to Strike |
| 04/18/2014 | 20 | Plt. Motion to Consolidate Plt Motion to Amend with Hearing on April 11, 2014 |
| 04/18/2014 | 21 | List of Documents and Affidavit |
| 04/22/2014 | | Motion (P#16, Motion to Amend Complaint) No action taken for the reasons set forth in Defendants' response (Page, J.). Notices mailed 4/22/2014 |
| 04/22/2014 | 22 | First Amended Complaint |
| 04/28/2014 | 23 | SERVICE RETURNED (summons): Vernon Welch, Individually, service made on 4/28/2014 (last and usual) |
| 04/30/2014 | 24 | ANSWER (first amended complaint): Aquinnah Board of Selectmen and Beverly Wright, Individually |
| 05/23/2014 | 25 | ANSWER, COUNTERCLAIM AND CROSS CLAIM: Vernon Welch, Individually(Defendant) |
| 05/30/2014 | 26 | ANSWER by Wendy Swolinzky d/b/a BookaBoat to COUNTERCLAIM of Vernon Welch, Individually |
| 06/16/2014 | 27 | Atty John J Davis's notice of appearance for Aquinnah Board of Selectmen and Beverly Wright, Ind. |
| 06/23/2014 | 28 | Atty Daniel C Perry's withdrawal of appearance filed re: Aquinnah Board of Selectmen and Beverly Wright |
| 07/16/2014 | 29 | Plaintiff Wendy Swolinzky d/b/a BookaBoat's MOTION to determine insufficiency |
| 07/16/2014 | 30 | Opposition to Pltf's" motion to determine insufficiency "of Defs' objections to Pltf's requests for admission filed by Wendy Swolinzky d/b/a BookaBoat |
| 07/16/2014 | 31 | Affidavit of compliance with Superior Court Rule 9A. |
| 07/18/2014 | 32 | Court received Pltf's First Rule 36 requests for admission |
| 07/18/2014 | 33 | Court received Defs' response to Pltf's first Rule 36 requests for admission |
| 07/18/2014 | 34 | Court received Pltf's second Rule 36 requests for admissions |
| 07/18/2014 | 35 | Court received Defs' response to Pltf's second Rule 36 requests for admission |
| 07/21/2014 | | Notice sent to appear on 7/30/2014 for a hearing on motions and requests. |
| 07/30/2014 | | Motion (P#29, Motion to Determine Insufficiency) ALLOWED as to Request #10, Denied as to the rest. (Chin, J.) Notices mailed 7/30/2014 |
| 08/18/2014 | 36 | Atty Shauna R Twohig's notice of appearance for Aquinnah Board of Selectmen et al |
| 08/18/2014 | 37 | ANSWER by Aquinnah Board of Selectmen et al to CROSSCLAIM of Vernon Welch, Individually and JURY DEMAND. |

# DUKES COUNTY
## Docket Report

| | | |
|---|---|---|
| 09/17/2014 | 38 | JOINT Motion of parties to Extend Tracking Order |
| 09/18/2014 | | Motion (P#38, Joint Motion to Extend Tracking Order) ALLOWED (Chin, J.) Notices mailed 9/18/2014 |
| 12/26/2014 | 39 | Appearance entered<br>On this date Seth Barnett, Esq. added for Defendant Aquinnah Board of Selectmen |
| 12/26/2014 | | Appearance entered<br>On this date Seth Barnett, Esq. added for Defendant Beverly Wright, Individually |
| 11/04/2015 | 40 | Appearance entered<br>On this date Timothy Michael Burke, Esq. added for Plaintiff Wendy Swolinzky d/b/a BookaBoat |
| 11/04/2015 | | Appearance entered<br>On this date Jared Burke, Esq. added for Plaintiff Wendy Swolinzky d/b/a BookaBoat |
| 11/06/2015 | 41 | Plaintiff Wendy Swolinzky d/b/a BookaBoat's Assented to Motion to extend tracking deadline(s) Discovery |
| 11/19/2015 | | Endorsement on Motion to extend tracking deadline(s) (#41.0): ALLOWED by Assent | Nickerson |
| 01/07/2016 | | The following form was generated:<br><br>Notice to Appear for Final Pre-Trial Conference<br>Sent On: 01/07/2016 08:47:48 |
| 01/15/2016 | | Event Result:<br>The following event: Pre-Trial Conference scheduled for 01/27/2016 11:15 AM has been resulted as follows:<br>Result: Canceled<br>Reason: By Court prior to date | Davis |
| 03/07/2016 | 42 | Plaintiff Wendy Swolinzky d/b/a BookaBoat's Motion to amend the original complaint |
| 03/07/2016 | 43 | Wendy Swolinzky d/b/a BookaBoat's Memorandum in support of Motion to Amend Complaint |
| 03/07/2016 | 44 | Opposition to paper #42.0 Motion to Amend Complaint filed by Aquinnah Board of Selectmen et al |
| 03/07/2016 | 45 | Affidavit of compliance with Superior Court Rule 9A<br><br>Applies To: Wendy Swolinzky d/b/a BookaBoat (Plaintiff) |
| 03/07/2016 | 46 | Rule 9A notice of filing |
| 03/09/2016 | | Endorsement on Motion to amend the Complaint (#42.0): ALLOWED | Moriarty |
| 03/09/2016 | 47 | Amended: amended complaint filed by Wendy Swolinzky d/b/a BookaBoat |

| 04/13/2016 | 48 | Notice of Removal to the United States District Court filed by |
|------------|-----|----------------------------------------------------------------|
|            |     | the Defendants |
|            |     | Applies To: Aquinnah Board of Selectmen (Defendant); Wright, Member, Beverly (Defendant); Booker, Member, Spencer (Defendant); Newman, Member, James (Defendant); Wright, Individually, Beverly (Defendant); Welch, Individually, Vernon (Defendant) |
| 04/13/2016 |     | Case transferred to another court. |



## COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049

A True Copy
Attest:

<u>**Complaint For Specific Performance**</u>

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually



JOSEPH E. SOLLITIO, JR.,
CLERK OF COURTS

## The Parties

1. Plaintiff Wendy Swolinzky, hereinafter "Wendy", resides in Dukes County, P.O. Box 634, Aquinnah, MA 02535.

2. For the period of 14 years preceding this complaint, Wendy has single handedly conducted an annual/seasonal boat renting business called "BookaBoat" located on land owned by the Towns of Aquinnah and Chilmark.

3. Defendants Beverly Wright, Spencer Booker and James Newman each reside in Aquinnah, MA and together constitute the Aquinnah Board of Selectmen, hereinafter "the Board", which conducts its business in Dukes County at 65 State Road, Aquinnah, MA 02535.

4. Defendant Beverly Wright is the Chair Person of the Board, was formerly the President of the Wampanoag Tribe, is a resident of Dukes County and resides in Aquinnah, MA 02535.

5. The Defendants know that Wendy's BookaBoat business is seasonal and that a significant volume of her business is conducted annually from late Spring to Labor day.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

DEC 04 2013

1

REC'D
_____ CLERK

6. BookaBoat is a summer boat rental business conducted by Wendy for the last 14 years.

7. As of the start of the 2013 season, Wendy held a valid 5-year lease with the Board. This lease of Lot B commenced on June 20, 2012.

8. For the past seven (7) years, the Board of Aquinnah and the small community of Menemsha lessees were actually aware that Wendy conducted her business from a small office in a shed owned by Camille Rose, which shed rests on Lot A

9. There is a provision in all Board leases of the waterfront Menemsha lots prohibiting shared usage, however the Board had neither employed nor enforced the provision until December 2012, when the provision was used as a reason not to renew the Lease of Lot A, held by Camille Rose.

10. In her preparation for the 2013 season, Wendy appeared at a duly noticed meeting of the Board on January 8, 2013 to present her business plan.  A true and accurate copy of the minutes of that meeting are attached as Exhibit A.

11. On January 8, 2013,  Board member James Newman suggested that there be a switch of lots,  that the Board  permit Wendy  to swap  her existing lease of Lot B for the existing lease of Lot A, which Lot A had been improved in 1939 by a small shack that had survived the hurricane of 1938. Lot A's lessee, Camille Rose, had permitted Wendy to use the shack to conduct her business for the last 7 years without disturbance by the Board or anyone else.

12. The Board took Wendy's plan and its own suggestion under advisement until the next Board meeting, January 22, 2013.

13. On January 22, 2013, the Board formally accepted the minutes of the January 8, 2013 meeting and did so unanimously. The January 22, 2013  relevant minutes are as follows:

"Aquinnah Board of Selectmen
Minutes of Meeting 1/22/2013
Aquinnah Town Hall Selectmen's Mtg Room
Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,
Also present: Town Administrator Adam Wilson, Jamie Vanderhoop, Theresa Manning, Chief Randhi Belain, Sgt Paul Manning, Wendy Swolinzky, Vern Welch, Jimmy San Fillippo, Barbara Bassett, Moderator Mike Hebert, June Manning, and Town Accountant Margie Spitz.
-The meeting began at 5:05 pm

-1st on the agenda under old business was a review of minutes from the 1- 8 Selectmen's meeting.

-Jim made a motion to accept the minutes from January 8th. Beverly seconded.

**The Board voted 3 - 0 in favor. The motion passed.**

-Next under old business was a revisit of the proposal from Wendy to have her switch the current Menemsha lot she

leases (Lot B) and take over the lot being vacated by Camille Rose (Lot A). With the change, Lot A's water frontage would increase to 70' and Lot B's would be reduced to 35'. Spencer stated he was in favor

of the change and just moving the lot lines. Beverly said she just doesn't want a state agency saying down the road

they couldn't make these changes. Wendy said the current site plan was drawn up by Hugh (Taylor) and only the

lot owned by Alfred Vanderhoop had been on the original site plan.

There was discussion about the Board's decision not to renew Camille's lease, which was for one year, expiring

June 30th of this year and the existing shed being sold to Wendy. The lot created would become available to the 1st

person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern.

-Jim made a motion to move the lot line so that Lot B is reduced to 35 feet and increase Lot A to be

69.9 feet. Beverly seconded. There was discussion about notifying Chip about Lot B's availability. Jimmy asked

about the commercial fishing license requirement to have one of the lots.

**The Board voted 3 - 0 in favor. The motion passed.**

-Beverly made a motion that as of July 1st, 2013, the town will enter into a new lease agreement for Wendy to have

Lot A. Jim seconded.

**The Board voted 3 - 0 in favor. The motion passed."**

14. Wendy relied on these unanimous votes granting her substantial contractual rights and following the January 22, 2013 Board meeting, she entered into a written contract with Camille Rose to purchase the shack resting on Lot A for the sum of $30,000.

15. Full faith and credit to a "waiting list" policy of the Board was amply discussed in public during the January 22, 2013 Board Meeting and was repeated in the minutes: "The lot created would become available to the 1st person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern." Vern is Vernon Welch, Berta Welch's husband. "There was discussion about notifying Chip about Lot B's availability." See minutes of the meeting of January 22, 2013, a true and accurate copy of which are attached hereto as Exhibit B.

16. Neither Wendy nor Camille Rose were on the wait list because each held a valid lease. The Board's concept of the lot swap did nothing to derogate from the wait-list policy. It was specifically addressed and honored during the January 22, 2013 meeting, and since Vern Welch was present and participating, he was placed on public notice that Lot B was open and available on July 1, 2013 first to Brian Vanderhoop and then to him should Mr. Vanderhoop decline.

17. Defendant Beverly Wright has in the recent past been an employee of Berta Welch and they have known each other and worked together and have been best friends for many years. Beverly Wright's husband is a cousin of Berta Welch.

18. Despite the fact that Beverly Wright actually knew that Wendy had relied on the January 22, 2013 vote and that Board members Booker and Newman admitted during public Board meetings that rescission would likely put Wendy out of business, on April 23, 2013, the Board rescinded the January 22, 2013 unanimous votes by a vote of 2 to 0, member James Newman abstaining, and later awarded a lease of Lot A to Vernon Welch.

### ***COUNT ONE***

Breach of Contract

19. On January 22, 2013, the Board of Selectmen of Aquinnah entered into an agreement with the Plaintiff, whereby the defendant Board agreed to lease to the Plaintiff and the Plaintiff agreed to rent the premises described as follows:  Lot A with frontage increased to 69.9 feet, lease to commence July 1, 2013 at the annual rent of $450.00. The written minutes of the January 22, 2013 meeting were confirmed unanimously on February 5, 2103. The televised tape of the January 22, 2013 meeting memorialized the agreement as did the confirmation of the written minutes.

20. By its rescission vote of April 23, 2013, the Board of Selectmen of Aquinnah breached its agreements with Wendy and damaged her in several particulars, specifically including, but not limited to, the $30,000 she committed in reliance on

the January 22, 2013 votes of the Board of Selectmen of Aquinnah, and substantial losses in business during her 2013 Summer season.

## COUNT TWO

### Promissory Estoppel

21. Following two properly noticed and constituted public meetings of the Board of Selectmen of Aquinnah, namely the public meetings of January 8 and January 22, 2013, the unanimous votes of the Selectmen constituted promises to Wendy which reasonably induced her actions to enter into binding contracts in preparation for the nearing Summer season of 2013, and also induced Wendy's forbearance from moving a shed, which she purchased following the Board's votes and in addition induced Wendy's forbearance from seeking alternative business sites.

22. Wendy's reliance on the promises defined by the unanimous votes of the Selectmen on January 22, 2013 were not only commercially reasonable, they were made four months before the start of the Summer season. Her reliance constitutes an independent and sufficient basis for enforcing the promises.

23. Rescission of the January 22, 2013 unanimous votes occurred on April 23, 2013, a mere seven (7) days before the start of the 2013 Summer season.

## COUNT THREE

### Interference With Contractual and Advantageous Business Relationships

24. Defendant Beverly Wright, in concert with third parties, by and with continuing improbity, intentionally interfered with both the contractual and advantageous business relationships between Wendy and the Town of Aquinnah by proactively and wrongfully coordinating a rescission of the Board's unanimous vote of January 22, 2013.

25. On April 23, 2013, Defendant Wright, by her unlawful work as a government actor, achieved her goal of rescission, her baseless reasons on full display during

televised recordings of the Board's several public meetings,  culminating in the award of Wendy's Lot A lease to Vernon Welch, the spouse of Berta Welch, Defendant Wright's husband's first cousin.

26. On April 23, 2013, the Board wrongfully rescinded its prior vote, breached the covenant of good faith and fair dealing with Wendy, anticipatorily breached the promised lease, refused to execute and deliver to Wendy a formal indenture of lease for the said premises, and at the present time continues to refuse to deliver and execute the lease and has caused Wendy multiple damages.

27. Wendy is ready, willing and able to do and perform all acts and things necessary by her to be done under the terms if the agreement set forth in the public meeting votes of the Aquinnah Board of Selectmen of January 22, 2013.

WHEREFORE, The Plaintiff respectfully requests:

a. That the Defendant Board be required to specifically perform the agreement to lease in accord with the terms of the January 22, 2013 votes;

b. That if specific performance is not granted  judgment enter in favor of the Plaintiff and against the Defendants, jointly and severally in an amount to be decided by a jury;

c. That payment of costs be made by the Defendants.

By the Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 375450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

December 3, 2013

6

<u>Exhibit A</u>

Aquinnah Board of Selectmen
Minutes of Meeting 1/08/2013
Aquinnah Town Hall Selectmen's Mtg Room

Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,
Also present: Town Administrator Adam Wilson, Town Moderator Mike Hebert, Police Chief Randhi Belain, Sgt
Paul Manning Wendy Swolinzky, Isaac Taylor, Fred Croft, Barbara Bassett, June Manning.

-The meeting began at 5:00 pm

-1st on the agenda under old business was a review of minutes from the 12- 18 Selectmen's meeting.
<u>-Jim made a motion to accept the minutes from December 18th. Beverly seconded.</u>
The Board voted 3 - 0 in favor. The motion passed.
Under New Business was a meeting with Wendy about the lease lot she and Camille (Rose) have worked together.
She handed out a site map showing the lots as they are mapped out on the Chilmark side of the Menemsha Creek.
She explained how she has shared the use of Camille's abutting lot for her rental boat business.
-Spencer read into the record an e-mail from Camille stating that she intends to sell the shed that is on her leased lot
to Wendy.
-Jim made the suggestion that there be a switch of lots. Wendy would take over the lease on Camille's lot + have
the building as well. The Town would take control of the lot Wendy currently has. Wendy said Camille's lot only
has 35' of water frontage and her lot has 78'. All the lots have 54' along the land except Camille's which is 36'.
Wendy stated she uses 60' of dock, which wouldn't fit in Camille's lot. She suggested that she slide her whole
operation down 35 feet and free up space between her and Lot C which is operated by Hollis Smith. There was
discussion on whether or not the survey could be changed and who would change it. Wendy said the current
survey's water frontage was done by Hugh (Taylor), to accommodate every lease holder's business needs.
<u>The Board, by consensus, decided to take Wendy's proposed idea under advisement until the next Selectmen's</u>
<u>meeting (1/22).</u>

-Next on the agenda is the approval of the warrant for the 2nd special town meeting planned for Tuesday, February
5th. Mike reviewed the warrant, which has only two warrant articles related to the acquisition and relocation of the
Gay Head Lighthouse. Adam explained that there will be two meetings that night; the first covering the articles in a
special that had to be postponed due to a lack of a quorum in November and the second a ½ hour later taking up the
lighthouse issue. Jim asked if the $5K request for feasibility and planning would offset administrative costs for the
Lighthouse Committee. Adam said the language in the Community Preservation Act allows this type of spending
to occur for administrative purposes.
<u>Beverly made a motion to approve the warrant as presented. Jim seconded.</u>
The Board voted 3 – 0 in favor. The motion passed.
<u>The Selectmen signed the warrant.</u>

-Next on the agenda was a meeting with Fred Croft over the issue of obtaining a commercial bay scallop license.
Spencer said that Fred's application for the license had not been recommended by the Shellfish Committee. He
said the initial submission of the application was returned to Fred because it was incomplete; it lacked necessary
signatures from two commercial fishermen. When that was accomplished and then resubmitted, it was turned down
for recommendation again due to a lack of proof that Fred had resided in Aquinnah for 12 consecutive months.

Adam explained that anyone who has been turned down for any kind of license or permit has the right to appeal.  In this case the remedy for a denied commercial scallop license would go to the Board.

-Beverly said the time frame for residency is November of 2011 to November of 2012.  She saw there was a gap in documentation from February 15th to the 1st of April.  Fred said he spent two weeks of that time on his boat.  When he found out that living on one's boat is against Town By-Laws, he made other arrangements.  He produced an e-mail statement from Isaac Taylor that he lived with him for the month of March.  Since April he has stayed at 81 Lighthouse Rd.

-Spencer read a statement from Town Clerk Carolyn Feltz that Fred was a registered voter in the town.  He then read a letter from Buddy Vanderhoop (Shellfish Chairman) apologizing for not attending due to off island medical appointments and that his Committee still doesn't have proof of 12 month residency.  He said that until proof is met, no license should be issued.  Spencer read the shellfish regulations regarding the requirements of residency proof for 12 months in order to get a commercial bay scallop license.

-Beverly asked if the proof given by Fred has been determined unacceptable to the Shellfish Committee.  Adam said there are documents being presented tonight that seem to close the residency gap.  Isaac produced a letter signed by him and his wife stating that Fred had lived with them for the month of March.  He said the committee knows that Fred has lived in town for a year.  Fred also produced 3 vehicle excise tax bills he has received from the Town of Aquinnah for the last three years.

-Adam said if this information is being produced now, the shellfish committee should see it so they can reconsider recommending the license.  Beverly said there's no language in the regulations for the Shellfish Committee to act on appeals.  Fred said the only unaccounted time he was not in Aquinnah is the last week of February.  He was away on vacation.

-Beverly said there can be an allowance in the residency requirement to have a vacation.  Spencer said the black and white of residency proof is here in front of them.  Adam looked at the long form and stated that the application seeks recommendation from the Shellfish Committee but license authorization comes from the Selectmen.

-Beverly made the motion to approve a commercial scallop license for Fred Croft for 2013.  Jim seconded.
Jim said it should be approved.  He's satisfied with statements from Sarah, Isaac and Hugh that Fred has lived in Aquinnah for a full year.
The Board voted 3 – 0 in favor.  The motion passed.

-Next on the agenda was the ratification of the Library Director's contract.  Adam explained that the Library Trustees had worked diligently with Judy (Jardin, Town Benefits Administrator), and the personnel by-laws in crafting a contract that ties in with the different aspects of the benefits available and the classification of the position.
There was discussion about the role the Personnel Committee plays in hiring and oversight of human resources management.
Jim made a motion to ratify the contract as presented.  Beverly seconded.
The Board voted 3 – 0 in favor.  The motion passed.

-In the Town Administrator's report.  Adam read his review of unfinished/continued business for the Board for 2012:
1. Jim's appointment to the Tri-Town Committee expires Jan 17th.  The Board will take up another reappointment at their 1/22 meeting;
2. There are other appointments to the up-island regional refuse district that will need reappointing in February;
3. Going back over the warrant articles from last May's ATM & STM –
    A. Has the $50K for the landfill repair happened yet?
    B. Has the $7,500 been spent for the freshwater well @ West Basin?

C. The warrant article to reprogram the radios has only been done for the police dept. and not yet for fire and ambulance.

D. The $2,700 for Town Hall defibrillators has not yet been done. <u>Adam said he'd follow up on that.</u>

4. The Town Accountant's 3 year reappointment was contingent on a sign off of the job description. Adam reported that the JD has been finalized between Margie and the Personnel Committee but it's different than the one the Board looked at when conditionally reappointing her back in July. <u>The Board wants to review the new JD and meet with Margie to discuss it at their 1/22 meeting before finalizing the reappointment.</u>

5. Adam needs to do follow up on a potential zoning violation involving the soda vending machines adjacent to the Aquinnah Shop.

6. Minutes from 9/18 were never accepted.

7. The overnight parking of boat trailers at West Basin has not been resolved. Beverly says the are parked boats at West Basin – <u>The Board will work with Randhi and Jay to get signage up that restricts overnight parking in that area.</u>

8. Circle area improvements still to be done –

A. Informational signage (You Are Here)…Beverly

B. Trash removal policies for Lessees and other user groups…Spencer

C. New picnic tables…Adam

D. Path landscaping to the bathroom/turfstone…Spencer

E. Informational signage for the restrooms…Beverly

F. Informational signage for the Pay Parking Lot…Jim

G. Increase in the # of free parking space…Adam/Jim

9. Regarding Tribal requests, Adam said he still hadn't heard back about the poison ivy issue up at the cliff head and he got a phone call today from Richard Randolph about the 12/5 2nd letter asking for a meeting with Tribal officials to go over the public safety agreement to more clearly define the fire chief's role for the Tribe Community. In that call, Richard said, "If the Fire Chief needs to come on the property for an inspection, just give him a call…"

10. The Selectmen's representation to the Land Bank Committee is still up in the air.

11. The issue of loss of parking space at West Basin due to truck and trailer parking was still under advisement. There was discussion about what could be done to alleviate the problem and what could be created to allow separate parking areas for truck and trailer and regular motor vehicles.

-Adam said the solar array is active at the landfill and to set a date for a ribbon cutting ceremony. It was decided that 1/22 would be a good date and to have it at 10:00 am. <u>Adam will contact Vineyard Power to let them know the date and time.</u>

-Adam will attend the MMA conference Friday, January 24th and Saturday the 25th.

-Adam had a letter from Len Butler asking to be put on the Lighthouse Committee. Spencer read the letter. There was discussion about referring Len to the committee or simply appointing him. There was discussion of how Board members voted everyone onto the committee at the last Selectmen's meeting.

<u>Spencer made a motion to add Len Butler to the Gay Head Lighthouse Committee. Jim seconded.</u>

The Board voted 3 – 0 in favor. The motion passed.

-In Other Selectmen's Business, Barbara made a request that there be an acknowledgement of Joe Gonsalves's service to the Town as a police officer. She said flowers were sent to his family when he passed away but she would like to see a town official give an acknowledgement of the years he gave dedicated service to the town at the upcoming special. She said he was well loved. Randhi was asked but didn't know if he'd be available for the special town meeting in February. <u>Spencer assured Barbara that someone from the town would speak on Joe's behalf.</u>

-Randhi reported the update of the live fingerprinting scan machine.  He said that the Town/Tribe Standard Operating Procedure Agreement is not being honored in terms of the Town having the machine vs the Tribe having it.  He was 1st told by Tribal Officials that the Town would house the machine within the police station.  Since the police already had access to state and federal registries, and the security clearance to utilize those data banks, the machine can be properly utilized at his work area.  With the machine at Tribal Headquarters, it will be underutilized since the Tribe's personnel doesn't have clearance and will need to apply for additional grants from the federal government to obtain the modems necessary to access FBI and national sex offender registries that are part of the machine's usage.  There was discussion about whether or not the police will have access to it.  Randhi said it will be under the Tribe's control and training to use it will only be for five people.  It was unknown who those five people would be.

Adam explained the SOP and the language in it that is ambiguous enough so that this machine can be located at either location.  Randhi said he'd keep the Board informed as events progressed.

-Beverly reported that she has met with Randhi and Jay over the sign issue at the beginning of the road that goes up towards the cliff shops.  She said all the existing signs will be removed and there will be only one sign stating "No Unauthorized Vehicles Between 10 am – 4 pm."

Beverly made a motion to adjourn.  Jim Seconded
The Board voted 3 – 0 in favor. The motion passed.

The meeting ended at 7:00 pm.

<u>Exhibit B</u>

Aquinnah Board of Selectmen
Minutes of Meeting 1/22/2013
Aquinnah Town Hall Selectmen's Mtg Room

Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,
Also present: Town Administrator Adam Wilson, Jamie Vanderhoop, Theresa Manning, Chief Randhi Belain, Sgt Paul Manning, Wendy Swolinzky, Vern Welch, Jimmy San Fillippo, Barbara Bassett, Moderator Mike Hebert, June Manning, and Town Accountant Margie Spitz.
-The meeting began at 5:05 pm

-1st on the agenda under old business was a review of minutes from the 1- 8 Selectmen's meeting.
-Jim made a motion to accept the minutes from January 8th. Beverly seconded.
The Board voted 3 - 0 in favor. The motion passed.

-Next under old business was a revisit of the proposal from Wendy to have her switch the current Menemsha lot she leases (Lot B) and take over the lot being vacated by Camille Rose (Lot A). With the change,
Lot A's water frontage would increase to 70' and Lot B's would be reduced to 35'. Spencer stated he was in favor of the change and just moving the lot lines. Beverly said she just doesn't want a state agency saying down the road they couldn't make these changes. Wendy said the current site plan was drawn up by Hugh (Taylor) and only the lot owned by Alfred Vanderhoop had been on the original site plan.
There was discussion about the Board's decision not to renew Camille's lease, which was for one year, expiring June 30th of this year and the existing shed being sold to Wendy. The lot created would become available to the 1st person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern.

-Jim made a motion to move the lot line so that Lot B is reduced to 35 feet and increase Lot A to be 69.9 feet. Beverly seconded. There was discussion about notifying Chip about Lot B's availability. Jimmy asked about the commercial fishing license requirement to have one of the lots.
The Board voted 3 - 0 in favor. The motion passed.

-Beverly made a motion that as of July 1st, 2013, the town will enter into a new lease agreement for Wendy to have Lot A. Jim seconded.
The Board voted 3 - 0 in favor. The motion passed.

-Next on the agenda under new business was a meeting with the Youth Task Force representatives Theresa and Jamie. Theresa gave a hand out that detailed the guidelines the Department of Public Health has initiated for the allowance of medical marijuana dispensaries. She said the legislation is written that allows for up to five dispensaries in each commonwealth county. She is seeking for all towns on the island the idea of having some precautionary measures so that when someone shows they have a state license allowing for a dispensary, the towns are prepared to deal with it. In some cases an island town can go the zoning route of just being able to say "no", or to make allowances through community review and special permitting. There was discussion about a dispensary being allowed in Aquinnah as a home based business. Two licenses are allowed: growing and selling. She said the main concern of the YTF is kids and access to drugs.
-There was discussion about how one goes about getting the drug through medical prescription. She said because marijuana is still a federal banned substance, the owner has to be non-profit, and can only deal in cash since banks are not allowed to loan to these types of businesses, set up accounts and allow for credit card sales.

-Theresa said there are already people in other towns that are on top of this and are working to get a dispensary license. She gave the Board a short history of research done showing the negative effects marijuana has on different age groups and genders.

-Theresa suggested a public consumption by-law perhaps as a tool for regulating the use. Jamie said right now the Dept of Public Health has been given a 120 day window to develop rules and regulations beginning Jan 1st. There was discussion about other towns taking action to ban the dispensaries completely and others engaging in a moratorium for a period of time to look at the DPH regulations when they do come out and decide if their guidelines are acceptable enough for the Town to engage itself in dispensary licensing.

-Jim said he'd support a moratorium, perhaps for six months. Adam said he'd talk to both the Town Clerk and Counsel on getting a moratorium question in place for the town meeting. Julie said there is already training to show people how to get this type of business started. Theresa said there's lots of different ways to sell cannabis. Products can come in many different forms and products. In states where the sale has been for varied uses, there are lots of ways to inhale or ingest to drug.

-Jim said he wants to have Jamie and Theresa as advisors to the Town as to how to proceed. There was discussion about whether or not there really is a benefit in pot smoking for medical use.

-Theresa said there are plans for them to meet with the all-island selectmen in February. She said YTF is aligned with MAPPA to establish regulations with towns now that legislation has passed allowing these types of dispensaries. Prevention groups such as YTF have been working hard since the decriminalization of pot back in '08. Theresa said that the unfortunate thing about his change in law is that no money is budgeted to see to the oversight of the change. It's a concern when a new rule goes into effect but there is no funding that should be a part of the implementation. The Board thanked Theresa and Jamie for filling them in about the issue and actions the town can take to deal with the issue.

-Next on the agenda was a recommendation from the Personnel Committee to have all employees sign off on their job descriptions (JD's). Adam reported that the committee has been working for months to update all employees JD's and have interviewed almost everyone on staff to make sure everyone's JD is current. Signing off on the job description is an acknowledgement that the job responsibilities and essential functions are accurate to each person's job.

Beverly made a motion for the Board to adopt a policy that all employees' sign off on their approved job descriptions. Jim seconded.
The Board voted 3 - 0 in favor. The motion passed.

There was a discussion about the difference in job performance and how it is evaluated versus job accountability and how one's responsibilities are spelled out in a JD.

-Next on the agenda was a review of the proposed project to fund from Community Preservation Committee's undesignated reserve fund, $5K for the Lighthouse Committee to do feasibility work. The CPC have a warrant article on the Town's second special town meeting February 5th to fund for a feasibility study. Adam stated the CPC needed a project proposal so he drafted one for the Selectmen to endorse before the CPC can vote on it.

Beverly made a motion to endorse the Gay Head Lighthouse Committee CPC Project for $5K. Jim seconded.
The Board voted 3 - 0 in favor. The motion passed.

Beverly asked if there will be a BOS meeting on the 5th in addition to the two town meetings. Adam said there'll be one since the Lighthouse Committee is slated to meet with them. Jim said that the BOS, acting as the FinCom, wants to meet as well. Jim said he also wants to meet with the Finance Team.

-Next on the agenda was the appointment of a selectperson to the Tri-Town Committee.
Spencer made a motion to reappoint Jim for another year. Beverly seconded.
The Board voted 3 - 0 in favor. The motion passed.

-Jim talked about the local rep to the Land Bank.  Adam said that Megan Ottens-Sargeant has indicated she would volunteer as the local rep.  Jim said he's been on the advisory committee for the last ten years.
Adam said he'd put the issue on the 2-5 agenda.

-In the Town Administrator's report, Adam stated that the reason MVTV was not recording tonight's meeting was because of a heavy schedule of events they were obligated to produce and that the town's regular videographer, Joanie Ames, was still recovering from the flu and they weren't able to find a replacement.
-Adam went over the budget/town report calendar. He said the difference this year is that town meeting isn't until the 14th of May, so there's more time to get everything reviewed.
-Adam had the Board sign off on the MS Bike-a-Thon in May.
-Spencer asked if any Board Member had any other business to discuss.  Hearing none…

Beverly made a motion to adjourn.  Jim seconded.
The Board voted 3 – 0 in favor. The motion passed.


The meeting ended at 6:05 pm.

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts SUPERIOR COURT DEPARTMENT County: _Dukes_ | Docket Number |
|---|---|---|

| PLAINTIFF(S) Wendy Swolinzky | DEFENDANT(S) Beverly Wonfut et al |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Robert F. Obenkotter PO Box 77, Russell Mills, MA 02714 Board of Bar Overseers number: 3753450 | ATTORNEY (if known) |

**Origin code and track designation**

Place an x in one box only:
[X] 1.  F01 Original Complaint
[ ] 2.  F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3.  F03 Retransfer to Sup.Ct. C.231,s.102C (X)
[ ] 4.  F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5.  F05 Reactivated after rescript; relief from judgment/ Order (Mass.R.Civ.P. 60) (X)
[ ] 6.  E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

| CODE NO. A08 | TYPE OF ACTION (specify) Specific Performance | TRACK (F) | IS THIS A JURY CASE? (X) Yes  ( ) No |
|---|---|---|---|

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
   1.  Total hospital expenses ........................................................
   2.  Total Doctor expenses .......................................................... $........
   3.  Total chiropractic expenses ................................................. $........
   4.  Total physical therapy expenses ......................................... $........
   5.  Total other expenses (describe) ......................................... $........

B.  Documented lost wages and compensation to date .................. Subtotal $........
C.  Documented property damages to date .................................. $........
D.  Reasonably anticipated future medical and hospital expenses ... $........
E.  Reasonably anticipated lost wages ....................................... $........
F.  Other documented items of damages (describe) ..................... $........

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe) $........

                                                    $........
                                        **TOTAL: $**........

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Complaint for Specific Performance et al as

                                      **TOTAL** $........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _Robert F. Obenkotter (BBO)_   DATE: 11/4/13

A.O.S.C. 1-2000

(TO PLAINTIFF'S ATTORNEY:                    PLEASE CIRCLE TYPE OF ACTION INVOLVED:-
                                             TORT — MOTOR VEHICLE TORT — CONTRACT —
                                             EQUITABLE RELIEF — OTHER.)

COMMONWEALTH OF MASSACHUSETTS

Dukes County, ss.                            DEPARTMENT OF THE TRIAL COURT
                                             SUPERIOR COURT
                                             CIVIL ACTION
                                             No.
                                             DuCV2013-00049

Wendy Swolinzky _____ (Plaintiff(s))

                        v.

Beverly Wright et al _____ (Defendant(s))

<div style="writing-mode: vertical">JOSEPH E. SOLLITTO, CLERK OF COURTS</div>

SUMMONS

To the above-named Defendant: Beverly Wright as she is Selectman of
the Town of Aquinnah

You are hereby summoned and required to serve upon Robert F. Oberkoetter plaintiff's
attorney, whose address is PO Box 77, Russells Mills, MA 02714, an answer to the complaint
which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of
the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded
in the complaint. You are also required to file your answer to the compliant in the office of the Clerk of
this court at Edgartown either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you
may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter
of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Edgartown, the 4th _____ day of
December, in the year of our Lord two thousand and thirteen

                                             Joseph E. Sollitto Jr.
                                             _____
                                             Clerk of Courts    FILED
                                                                SUPERIOR COURT
                                                                COUNTY OF DUKES COUNTY

                                                                DEC 05 2013

                                                                REC'D
                                                                _____ CLERK

<div style="writing-mode: vertical">NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer, within 20 days as specified herein and also file the original in the Clerk's office.</div>

<div style="writing-mode: vertical">A True Copy Attest:</div>

NOTES.
1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the
    caption. If a separate summons is used for each defendant, each should be addressed to the
    particular defendant.

## RETURN OF SERVICE

County of Dukes County, ss.                                    December 5, 2013

     I hereby certify and return that I this day served an attested copy of the within Summons, together with a copy of the Complaint for Specific Performance and Exhibits A & B in this action, upon the within named defendant, Beverly Wright as she is Selectman of the Town of Aquinnah, in the following manner: by delivering to the Town Administrator, Adam Wilson.

Fees:

| | | |
|---|---|---|
| service, in hand | 30.00 | |
| travel/auto hire | 9.60 | |
| attested copies | 5.00 | |
| return & mailing | 3.50 | |
| Total: | 48.10 | |

*Linda J Hanover*

Linda J. Hanover
Deputy Sheriff
County of Dukes County

(          , 20  . )
(                )

DUKES COUNTY, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 13-CV 2683-00349

Wendy Scoville _____ Plff.

v.

Beverly Wright et al _____ Dft.

SUMMONS

(Mass. R. Civ. P. 4)

③

(TO PLAINTIFF'S ATTORNEY:       PLEASE CIRCLE TYPE OF ACTION INVOLVED:-
                                 TORT – MOTOR VEHICLE TORT – CONTRACT
                                        EQUITABLE RELIEF – OTHER.)

## COMMONWEALTH OF MASSACHUSETTS

Dukes County, ss.                    DEPARTMENT OF THE TRIAL COURT
                                                SUPERIOR COURT
                                                CIVIL ACTION
                                            No. _DUCV 2013-00049_

_A True Copy Attest:_

_Wendy Swolinzky_ , (Plaintiff(s)

                        v.

_Beverly Wright et al_ , (Defendant(s)

JOSEPH E. SOLLITTO
CLERK OF COURTS

_Joseph E. Sollitto_

### SUMMONS

To the above-named Defendant: _Spencer Booker, as being Selectman for Town of Edgartown_

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer, within 20 days as specified herein and also file the original in the Clerk's office.

You are hereby summoned and required to serve upon _Robert F. Oberkoetter_ plaintiff's attorney, whose address is _PO Box 77, Russells Mills, MA 02714_, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Edgartown either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse    , Esquire, at Edgartown, the _4th_ day of _December_    , in the year of our Lord two thousand    and _thirteen_

_Joseph E. Sollitto Jr._

_____
Clerk of Courts

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

DEC 05 2013

REC'D
CLERK

NOTES.
1.   This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.   When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

**RETURN OF SERVICE**

County of Dukes County, ss.                                    December 5, 2013

      I hereby certify and return that I this day served an attested copy of the within Summons, together with a copy of the Complaint for Specific Performance and Exhibits A & B in this action, upon the within named defendant, Spencer Booker as he is Selectman of the Town of Aquinnah of 15 Oonouhkoi in Aquinnah, in the following manner: by delivering, in hand, to said defendant.

Fees:

| | |
|---|---|
| service, in hand | 30.00 |
| travel/auto hire | 8.65 |
| attested copies | 5.00 |
| return & mailing | 3.50 |
| Total: | 47.15 |

*Linda J Hanover*

Linda J. Hanover
Deputy Sheriff
County of Dukes County

(                                      )
(                    , 20        .  )
(                                      )

---

DUKES COUNTY, ss.

SUPERIOR COURT
CIVIL ACTION.
NO. DUCV2013-00049

_____ Plff.

v.

_____ Dfts.

SUMMONS

(Mass. R. Civ. P. 4)

(TO PLAINTIFF'S ATTORNEY:                    PLEASE CIRCLE TYPE OF ACTION INVOLVED:-
                                             TORT – MOTOR VEHICLE TORT – CONTRACT –
                                             EQUITABLE RELIEF – OTHER.)

COMMONWEALTH OF MASSACHUSETTS

Dukes County, ss.                            DEPARTMENT OF THE TRIAL COURT
                                             SUPERIOR COURT
                                             CIVIL ACTION
                                             No.
                                             DuCV0213-0049

*Wendy Sudolinzky*, (Plaintiff(s)

v.

*Beverly Wright et al*, (Defendant(s)

JOSEPH E. SOLLITTO, CLERK OF COURTS

SUMMONS

To the above-named Defendant: *James Newman, as his Selectman of the Town of Aquinnah*

You are hereby summoned and required to serve upon *Robert F. Obenkoeter* plaintiff's attorney, whose address is *PO Box 77, Roberts Duke MA 02714*, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the compliant in the office of the Clerk of this court at Edgartown either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse          , Esquire, at Edgartown, the *4th* day of *December*          , in the year of our Lord two thousand          and *thirteen*

Joseph E. Sollitto Jr.

Clerk of Courts          FILED
                         SUPERIOR COURT
                         COUNTY OF DUKES COUNTY

DEC 05 2013

REC'D _____
                                                            CLERK

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer, within 20 days as specified herein and also file the original in the Clerk's office.

NOTES.
1.   This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.   When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

## RETURN OF SERVICE

County of Dukes County, ss.

December 5, 2013

      I hereby certify and return that I this day served an attested copy of the within Summons, together with a copy of the Complaint for Specific Performance and Exhibits A & B in this action, upon the within named defendant, James Newman as he is Selectman of the Town of Aquinnah of 8 Briar Path in Aquinnah, in the following manner: by delivering, in hand, to said defendant.

Fees:

| | |
|---|---|
| service, in hand | 30.00 |
| travel/auto hire | 9.60 |
| attested copies | 5.00 |
| return & mailing | 3.50 |
| Total: | 48.10 |

*Linda - J Hanover*

Linda J. Hanover
Deputy Sheriff
County of Dukes County

(            , 20   . )
(                  )

DUKES COUNTY, ss.

SUPERIOR COURT
CIVIL ACTION
NO. DUCV 2013-00049

Wesley Sobolinsky
Pltf.

v.

Beverly Wright et al
Dfts.

SUMMONS

(Mass. R. Civ. P. 4)

(TO PLAINTIFF'S ATTORNEY:                          PLEASE CIRCLE TYPE OF ACTION INVOLVED:
                                                   TORT — MOTOR VEHICLE TORT — CONTRACT —
                                                   EQUITABLE RELIEF — OTHER.)

## COMMONWEALTH OF MASSACHUSETTS

Dukes County, ss.                                  DEPARTMENT OF THE TRIAL COURT
                                                   SUPERIOR COURT
                                                   CIVIL ACTION
                                                   No.
                                                   DuCV2013-0009

Wendy Soskinzky _____ (Plaintiff(s)

v.

Beverly Wright et al _____ (Defendant(s)

JOSEPH E. SOLLITTO JR., CLERK OF COURTS

### SUMMONS

To the above-named Defendant: Beverly Wright, in dieringaly,

    You are hereby summoned and required to serve upon Robert F. Oberkoetter plaintiff's attorney, whose address is PO Box 77, Russells Mills, MA 02714 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the compliant in the office of the Clerk of this court at Edgartown either before service upon plaintiff's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    Witness, Barbara J. Rouse _____, Esquire, at Edgartown, the _____ 4th _____ day of December _____, in the year of our Lord two thousand _____ and thirteen _____

Joseph E. Sollitto Jr.

Clerk of Courts

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

DEC 05 2013

REC'D
_____ CLERK

NOTES.
1.   This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.   When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer, within 20 days as specified herein and also file the original in the Clerk's office.

## RETURN OF SERVICE

County of Dukes County, ss.

December 5, 2013

    I hereby certify and return that I this day served an attested copy of the within Summons together with a copy of the Complaint for Specific Performance and Exhibits A & B in this action, upon the within named defendant, Beverly Wright, Individually, in the following manner:  by leaving at the last and usual place of abode of said defendant, to wit:  146 Lighthouse Road in Aquinnah and by the first class mailing of an attested copy of this Summons to said defendant at RFD 146 Lighthouse Road, Aquinnah, Ma 02535.

Fees:

| | | |
|---|---|---|
| Service, last abode | 20.00 | |
| Travel/auto hire | 9.60 | |
| Attested copies | 10.00 | |
| Return & mailing | 3.50 | |
| Total: | 43.10 | |

*Linda J. Hanover*

Linda J. Hanover
Deputy Sheriff
County of Dukes County

(                                             )

DUKES COUNTY, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 13CV 2013-00049

_____ Pltf.

v.

_____ Dft.

SUMMONS

(Mass. R. Civ. P. 4)

COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Aquinnah Board of Selectmen
Beverly Wright, individually

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

## Tracking Order Service On Defendants

I, Robert F. Oberkoetter, hereby certify that I have this 11th day of December 2013 served the tracking order published on 12/04/13 on each other party by first class mail to Daniel C. Perry, 388 County Street, New Bedford, Massachusetts o2740-4992.

Robert F. Oberkoetter, Esq.
BBO #375450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

13 2013

REC'D

CLERK



# COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

> Wendy Swolinzky d/b/a
> BookaBoat
>
> v.
>
> Beverly Wright, Spencer Booker and
> James Newman, as they are the
> Aquinnah Board of Selectmen, and
> Beverly Wright, individually

**A True Copy Attest:**

**JOSEPH E. SOLLITTO, JR. CLERK OF COURTS**

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants, Beverly Wright, Spencer Booker and James Newman, as they are members of the Aquinnah Board of Selectmen, and Beverly Wright, individually, hereby move to dismiss the Complaint under Mass.R.Civ.Proc. 12(b)(6) for failure to state a claim on which relief can be granted. As grounds therefor, defendants refer to their Memorandum in Support of their Motion to Dismiss, filed herewith.

Defendants,
By their attorneys,

Daniel C. Perry, Esq. (BBO # 395680)
Perry, Hicks and Deshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. (508) 996-8291
Fax (508) 997-2637
danperry@perryhicks.net

DATED:  December 9, 2013

**FILED**
**SUPERIOR COURT**
**COUNTY OF DUKES COUNTY**

DEC 27 2013

REC'D
_____ CLERK

The defendant's motion to dismiss is **DENIED**.  It cannot be said that the plaintiffs

have filed a legally insufficient complaint.  Nor, can it be held that it appears to a

certainty that the plaintiffs' is "entitled to no relief under any state of facts which could be

proved in support of the claim." While the defendants' arguments do have some merit,

they are best suited and should be raised during a motion for summary judgment.


Tina S. Page
Justice of the Superior Court


DATED:  15 April 2014



# COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants, the Board of Selectmen of the Town of Aquinnah (the "Board") and Beverly

Wright ("Wright") submit this memorandum in support of their Motion to Dismiss the

Complaint under Mass. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief may be

granted.  The motion should be granted because, as appears from the complaint and its exhibits,

plaintiff cannot prove the existence of an enforceable lease or an agreement to make a lease with

which to charge the defendants.  Further, plaintiff's claims under theories of promissory estoppel

and interference with contractual relationships are untenable against a municipality and its

employees as a matter of law.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

DEC 27 2013

REC'D
CLERK

## FACTUAL AND PROCEDURAL BACKGROUND

· The Complaint (including its exhibits) alleges the following facts:  Plaintiff Wendy

Swolinzky ("Swolinzky") has conducted a boat rental business in the Town of Aquinnah for the

past 14 years (Complaint, ¶ 2). She keeps the boats on piers and floats located on a small waterfront parcel that she leases from the Town of Aquinnah (the "Town"), which is sometimes referred to as Lot B[1]. She and the Town executed a five year lease for Lot B on June 20, 2012. (Id., ¶ 7). A copy of that Lease is attached to this memorandum as Exhibit A.[2]  Swolinzky has maintained an office located in a small shack located on a parcel adjacent to Lot B, also owned by the Town, known as Lot A, which Swolinzky has in the past sub-leased from one Camille Rose ("Rose"). Rose's lease with the Town prohibited subleases. (Id., ¶¶ 8-9). A copy of the plan showing the layout of these lots is attached as Exhibit B.

In December 2012, the Board advised Rose that it did not intend to renew her lease because of her violation of the covenant against subleasing. (Id., ¶ 9). Swolinzky appeared at a meeting of the Board held on January 8, 2013, and asked the Board to reconfigure the lot lines for parcels A and B, by expanding Lot A to include much of her float area, and reducing Lot B to approximately half its width, to rescind her lease and to enter into a new lease for the expanded Lot A. (Id., ¶¶ 11-12). The Board postponed action and met again on January 22, 2013, when it considered again Swolinzky's proposal.  During that meeting the Board voted to approve Swolinzky's request to reconfigure the parcels so that Lot A would be expanded in width to 69.9 feet, and, according to the minutes of the meeting, the Board took the following additional vote:

> Beverly [Wright] made a motion that as of July 1st 2013 the town
> will enter a new lease agreement for Wendy to have Lot A.

Id., Exhibit B.

---

[1] The land is one of five six small waterfront lots, designated as "A" through "F," subdivided from a  parcel conveyed to the Town by the Commonwealth pursuant to Chapter 485 of the Acts of 1965, which requires that the "land be reserved for and made available to commercial fishermen."

[2] On a motion under Rule 12(b)(6), the Court may consider exhibits to the Complaint, matters of public record and documents referred to and relied on the Complaint even though not annexed to it, without converting the motion to one under Rule 56. Schaer v. Brandeis University, 432 Mass. 474, 477 (2000); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n. (2004).

The complaint avers that, in reliance on that vote, Swolinzky entered into a written contract to "purchase the shack resting on Lot A for the sum of $30,000."[3] (Id., ¶14).

The Board and Swolinzky did not enter into the lease contemplated by the January 22 vote, and rescinded the vote to lease Lot A to Swolinzky on April 23, 2013.  (Id., ¶ 18). The minutes of the April 23, 2013 meeting (attached as Exhibit C to this memorandum) indicate that a prospective tenant complained that the reconfiguration proposed by Swolinzky rendered Lot B effectively unusable and Swolinzky was unwilling to agree to a less drastic reconfiguration.  The Board later entered into a lease of Lot A as originally configured with the next person on the "waiting list," Vernon Welch.

Based on the above averments, Swolinzky claims relief based on three theories.  In Count One, she avers that the vote of January 22, 2013 itself constituted a lease or a contract to lease the reconfigured Lot "A" "for an annual rent at $456.00," (although that figure is not mentioned in the minutes).  (Id., ¶ 19).Count One further avers that the televised tapes of the meeting and the accepted written minutes "memorialize" that agreement, and that the Board's vote of April 22, 2013 rescinding the earlier vote was a breach of that agreement.  Swolinzky prays that the Board be required to "specifically perform the agreement to lease in accord with the terms of the January 22, 2013 votes."  In Count Two, Swolinzky avers that the votes of January 22, 2013 constituted promises that reasonably induced her to expend funds and enter contractual commitments in anticipation of being in business for the summer season of 2013, and seeks to enforce those promises under a theory of promissory estoppel.  Count Three avers that defendant Beverly Wright "by her unlawful work as a government actor," tortiously interfered with

---

[3] Whether the shack is in fact personal property owned by the Tenant or is affixed to the realty and owned by the Town is currently a matter of dispute; the issue need not be resolved in the present matter.

Swolinzky's contractual and advantageous relationship with the Town, and seeks damages against both Wright and the Board on account of those actions.

## ARGUMENT

1.     The Board's Votes of January 22, 2013 Constituted Neither a Lease Nor an Enforceable Agreement to Make a Lease.

The Board's votes of January 22, 2013 did not create an enforceable contract between Swolinzky and the Town.  Although the Board did vote that "the town will enter into a new lease agreement for Wendy to have Lot A," that vote was clearly neither an offer nor an acceptance of an offer, but simply provided a procedural framework within which the parties could execute a mutually satisfactory enforceable contract. Like the vote  considered by the Court in Edge Moor Bridge Works v. County of Bristol, 170 Mass. 531, 533 (1898) the vote  "was but a step in the negotiation, and execution of the contract was an act to be done in the future." As Swolinzky well understood, being a party to one such lease, the Board as a matter of practice always entered into a formal written lease, which was an integrated document, and neither party was bound until that document was signed. (See Exhibit A to this memorandum, ¶27.)  Among other things that were still left open to be agreed upon by the parties at the time of the vote were the rent that would be paid for the expanded Lot "A," as well as the duration of the lease to be entered.  "It is firmly established in this Commonwealth that an oral agreement to create a lease is unenforceable." Whaler Motor Inn, Inc. v. Parsons, 2 Mass. App. Ct. 477, 482 (1974).  Further, duration of a lease is an essential term, and "the writing offered to satisfy the Statute of Frauds must set forth that essential element with reasonable certainty." Simon v. Simon, 35 Mass. App. Ct. 705, 709 (1994).  The deficiency cannot be supplied by implication or parol evidence. Id., 35

Mass. App. Ct. at 710. Because the records of the meeting of the Board – which are the only records that can be offered to satisfy the statute of frauds -- McManus v. City of Boston, 171. Mass. 152, 155 (1898) – fail to establish a complete agreement, plaintiff's claim under a contract theory must fail.

      2.    Promissory Estoppel is Not Available Against a Municipal Board.

Count Two, which seeks enforcement of the Board's promise despite the absence of a contract, based on a theory of promissory estoppel, requires little discussion. It is a well settled law in Massachusetts that the doctrine of promissory estoppel may not be invoked against the government. McAndrew v. School Committee of Cambridge, 20 Mass. App. Ct. 356, 360-361 (1985). And the doctrine of promissory estoppel only serves to render enforceable a promise that lacks consideration. It cannot be invoked to provide the necessary particulars for a promise that is too incomplete to be enforceable, as here. See Rhode Island Hospital Trust Bank v. Varadian, 419 Mass. 841, 848 (1995) (doctrine of promissory estoppel requires that there be an unambiguous promise).

      3.    Swolinzky's Claim Based on Interference With Contractual Relation Are Barred by the Massachusetts Torts Claim Act.

Swolinzky's claims against both Wright individually, and the Board, based on a theory of tortious interference with contractual relationship likewise must fail. Under Massachusetts Laws chapter 258, section 2:

> [n]o public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.

The acts of both Wright and the other Board members of which plaintiff complains were clearly committed in their official capacity, and the Complaint expressly so avers. Complaint, ¶ 25.

Accordingly, Count Three must be dismissed.  <u>Petricca v. City of Gardner</u>, 194 F. Supp. 2d 1 (2002).

To the extent that the Complaint can be construed to assert a claim against the Town itself, the claim is likewise barred under Chapter 258, section 10(c), which prohibits any claim under the Torts Claim Act for any claim arising out of interference with advantageous relations or interference with contractual relations," and sovereign immunity continues to bar any such claim. <u>Id.</u>

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant their motion to dismiss.

Defendants,
By their attorneys,

_____
Daniel C. Perry, Esq. (BBO # 395680)
Perry, Hicks and Deshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. (508) 996-8291
Fax (508) 997-2637
danperry@perryhicks.net

DATED:  December 9, 2013

A

# L E A S E

AGREEMENT of lease made as of June 20, 2012, by and between the TOWN OF AQUINNAH, a municipal corporation in Dukes County, Massachusetts ("Lessor"), and Wendy Swolinzky of Aquinnah, Massachusetts ("Lessee").

1.    **PREMISES:**

Lessor hereby leases to Lessee and Lessee hereby lets from Lessor, a certain parcel of real estate in the Town of Aquinnah, County of Dukes County, Massachusetts, Shown as Parcel " B " on the sketch plan attached hereto as "Plan of Lease Lots Gay Head (Menemsha) Mass – 7 July 1992" and incorporated herein by reference (the "Premises").

2.    **TERM:**

This Lease shall be for a term of five (5) years (the "Term"), commencing on June 20th, 2012   (the "Term Commencement Date") and ending on June 30, 2017.

3.    **RENT:**

Lessee shall pay to Lessor Basic Rent during the lease term at the annual rate of four hundred fifty ($450.00) Dollars for the each year of the original term.  The rent for each lease year of the term shall be paid by the 15th day of July in lawful money of the United States at the Office of the Board of Selectmen, 65 State Road, Aquinnah, Massachusetts 02535, or such other place as the Lessor may from time to time designate in writing to the Lessee.

With respect to any future lease renewal, the Lessee shall pay an annual rent which may be subject to a reasonable change as determined by the Lessor.

4.    **USE:**

Lessee shall use and occupy the premises only for marine uses permitted under the Aquinnah Zoning By-Laws or for such other uses as have been previously approved in writing by the Lessor.  No other trade, occupation, or other activity shall be carried on, in, or about the Premises, or any use made thereof which shall be offensive or contrary to

1

the laws of the Commonwealth or any ordinance or by-law for the time being in force in the Town of Aquinnah or injurious to any person, persons or property.

5.     **INSURANCE:**

Lessee shall procure, keep in force, and pay for comprehensive public liability insurance indemnifying Lessor and Lessee against all claims and demands for injury to or death of persons or damage to property which may be claimed to have occurred on the Premises in amounts which shall be not less than One Million Dollars ($1,000,000.00) combined single limit for bodily injury and property damage liability including products liability coverage.  Such insurance shall be effective with insurers qualified to do business in Massachusetts and in good standing therein insuring Lessor as well as Lessee, as their interests shall appear, against injury to persons or damage to property as provided.  Lessee shall deposit with Lessor certificates for such insurance at or prior to the Rent Payment Date and thereafter within thirty (30) days prior to the expiration of any such policies.  All such policies shall provide that they shall not be cancelled without at least ten (10) days prior written notice to each insured named therein.

6.     **UTILITIES:**

The Lessee shall pay, as they become due, all bills for utilities that may be furnished to the leased premises.

7.     **MAINTENANCE:**

Lessee shall maintain and keep the Premises in as good order and condition as the same are in at the commencement of said term, or may be put in during the continuance hereof, reasonable wear and tear or damage by fire or other unavoidable casualty only excepted.

8.     **ACCESS TO PREMISES:**

Lessor and Lessor's agents shall have the right to enter the Premises at all reasonable times, after notice to Lessee, to examine the same (and in the case of emergency at any time without notice).

9.   **LESSEE'S PROPERTY:**

It is understood and agreed that any structures and improvements and any goods or personal property owned or otherwise possessed by Lessee, and maintained by Lessee at the Premises, shall be kept there at Lessee's sole risk and without any liability whatsoever on the part of the Lessor for any loss or damage thereto. It shall be Lessee's obligation to provide any insurance for such property.

Lessee shall, during the Term hereof, keep the Premises and the area surrounding the Premises in a safe and clean manner.

10.   **ESTOPPEL CERTIFICATE:**

Upon not less than fifteen (15) days prior written request, Lessor and Lessee agree, each in favor of the other, to execute, acknowledge and deliver a statement in writing certifying that this Lease is unmodified and in full force and effect (or, if there have been any modifications that the same are in full force and effect as modified and stating the modifications), the dates to which the Basic Rent hereunder and other charges have been paid and any other information reasonably requested. Any such statement delivered pursuant to this paragraph may be relied upon by any prospective purchaser, mortgagee or lending source.

11.   **RIGHT TO TERMINATE:**

This Lease is subject to the express condition that, if Lessee shall neglect or fail to pay the Basic Rent, or any installment thereof, within ten (10) days after having been notified by Lessor in writing that such Basic Rent has not been so paid, or if Lessee shall fail to perform or to observe any of the other covenants contained herein on Lessee's part to be performed or observed, including but not limited to violation of the indemnification contained in section 5, 6 and 7 to be performed or observed for thirty (30) days after having been notified by Lessor of such failure, or if the estate hereby created shall be taken on execution or by other process of law, or if the Lessee or any entity entitled to operate any business from the Premises shall be declared bankrupt or insolvent according

3

to law, or if any assignment shall be made of Lessee's property or the property of said other entity for the benefit of creditors, then, and in any of the aforesaid cases (notwithstanding any former breach of a covenant or waiver of a benefit hereof or consent in a former instance), Lessor lawfully may, immediately or at any time thereafter, and without further demand or notice, enter into and upon the Premises, or any part thereof, in the name of the whole and repossess the same as of its former estate, and expel the Lessee and those claiming through or under Lessee and remove Lessee's effects, without prejudice to any remedies which Lessor might otherwise be used.

12.   **LESSEE'S FAILURE TO PERFORM:**

(a) If Lessee shall at any time fail, as required in this Lease, to take out, pay for, maintain or deliver the insurance policy provided for in this Lease, or shall fail to make any other payment or perform any other act on its part to be made or performed under this Lease, then Lessor, after ten (10) days written notice to Lessee, except when other notice is expressly provided for in this Lease (or without notice in case of an emergency), and without waiving or releasing Lessee from any obligation of Lessee contained in this Lease, may (but shall be under no obligation to):

(1) Take out, pay for and maintain the insurance policy provided for in this Lease; or

(2) Make any other payments or perform or cause to be performed any act on Lessee's part to be made or performed as in this Lease provided.

(b) All sums so paid by Lessor and all costs and expenses incurred by Lessor in connection with the performance of any such act, together with interest thereon at the rate of nineteen (19%) percent per annum or such lesser rate as may at the time be the maximum rate permitted by law, from the respective date of Lessor's making of such payment or incurring of each such cost and expense, shall be paid by Lessee to Lessor on demand as if the same were Basic Rent hereunder (and nonpayment of which shall have the consequences as non-payment of Basic Rent).

13.   ASSIGNMENT AND SUBLETTING:

No subletting or shared usage of lots is permitted.  The Lessee may permit a person related by blood or marriage to share the premises if such person is also an active commercial fisherman subject to the same conditions as Lessee and provided Lessee notifies the Board of Selectmen in writing prior to such shared usage.

14.   EMINENT DOMAIN:

(a) If the entire Premises shall be taken for public or quasi-public purposes, then this lease shall terminate as of the date Lessee shall be required by law to vacate the Premises and surrender them to the authority making the taking.

(b) If such portion of the Premises shall be taken so as to render the Premises unsuitable for the continuance of Lessee's use of the Premises in substantially the same manner as the same was being conducted immediately prior to such taking, then Lessee shall have the right to terminate this Lease by giving written notice to Lessor within thirty (30) days after receipt of Notice of Entry for purposes of effectuating the taking.  If the costs of repairing or restoring the Premises after a partial taking is more than twenty (20%) percent of their value immediately prior to such taking, Lessor may, at its option, terminate this Lease by written notice to Lessee within thirty (30) days after the date of the taking.

(c) If the Premises, or any part thereof, shall be rendered untenantable and this Lease is not terminated, the Basic Rent herein reserved or a just and proportionate part thereof, shall be suspended or abated according to the nature and extent of the taking from the date of such taking until the Premises shall be restored, and if after such restoration the Premises are smaller than they were prior to the taking or the utility thereof to Lessee is otherwise diminished, the annual Basic Rent shall remain in force.

(d) In the event of such taking, the proceeds thereof shall be payable to Lessor or Lessor's institutional first Mortgagee, if so required by the applicable terms of the mortgage, and Lessee shall have absolutely no right or interest in any award.  Lessee

hereby irrevocably appoints Lessor as its attorney-in-fact for the purposes of collecting any such compensation award and dealing with all governmental authorities with respect thereto. This power of attorney is coupled with an interest and hence is irrevocable.

15. **DESTRUCTION BY CASUALTY:**

If the Premises are partially damaged or destroyed by storm, fire, lightning, earthquake or other casualty, but are still usable by Lessee for the conduct of its business in substantially the same manner as it was conducted immediately prior to such damage or destruction, the rental hereunder shall be adjusted to take into account the value of any leased space lost as a result of the damage or destruction. Said rental adjustment shall apply until the damage is repaired or the destroyed areas land or plot is restored by Lessor (if Lessor opts to effect such repairs or restoration). If the damage or destruction is so extensive as to render the Premises not suitable for the said conduct of Lessee's business, this Lease shall terminate thirty (30) days after the date of such damage or destruction, unless within said thirty (30) days, Lessor, by notice to Lessee, informs Lessee of its intention to repair or restore the Premises, in which event Lessor shall have sixty (60) days measured from the date of the damage or destruction to commence repair or restoration to render the said Premises tenantable. During the period of such repairs or restoration the Basic Rent hereunder shall be abated in its entirety, except to the extent Lessee is able to use the Premises, in which event the Basic Rent shall be adjusted to reflect such use. If the Lessor shall not commence repair or restoration within said sixty (60) days or shall not thereafter diligently pursue such repair or restoration to completion or shall not complete such repairs within one hundred eighty (180) days measured from the date of the damage or destruction, Lessee shall have the right to terminate this Lease by written notice to Lessor within fifteen (15) days after the expiration of either said sixty (60) or said one hundred eighty (180) day period or of the failure (which shall then be continuing) by the Lessor to diligently pursue such repair or restoration as the case may

be. If this Lease is not terminated as provided above, Lessor shall diligently pursue repair and restoration of any such damage.

16. NOTICE:

Any and all notices given or required to be given hereunder shall be in writing and delivered in hand or by certified or registered mail, postage prepaid, addressed to the parties as follows (or to such other address as may be substituted):

To Lessor:        Town of Aquinnah
Board of Selectmen
65 State Road
Aquinnah, MA 02535

To Lessee:        Wendy Swolinzky
PO Box 634
Chilmark, MA 02535

Any and all notices shall be deemed to have been given when delivered in hand or when deposited in the mail as noted above.

17. SURRENDER:

The Lessee shall, at the expiration or other termination of this Lease, remove all Lessee's structures, improvements, personal property, goods and effects from the Premises, and Lessee shall deliver the Premises to the Lessor in the same condition as they were at the Term Commencement Date or as they were put in during the Term hereof, reasonable wear and tear and damage by fire or other casualty only excepted. In the event of the Lessee's failure to remove any of the Lessee's property from the Premises, Lessor is hereby authorized, without liability to Lessee for loss or damage thereto, and at the sole risk of Lessee to remove and store any of the property at Lessee's expense, or to retain same under Lessor's control or to sell at public or private sale, without notice, any or all of the property not so removed and to apply the net proceeds of such sale to the payment of any sum due hereunder, or to destroy such property.

18.  **QUIET ENJOYMENT:**

Lessor covenants and agrees with Lessee that, upon Lessee's paying the Basic Rent and observing and performing all the terms, conditions, and covenants on Lessee's part to be observed and performed, Lessee may peaceably and quietly enjoy the Premises hereby demised, subject, nevertheless, to the terms and conditions of this Lease.

19.  **INDEMNIFICATION AND LIABILITY:**

Lessee agrees at all times during the Term of this Lease and for such further time as Lessee occupies the Premises or any part thereof, to assume exclusive control of the Premises and all tort liabilities incident to the control or leasing thereof, and to defend, indemnify and save Lessor harmless from all injury, loss, claim or damage to or of any person or property while on the Premises, unless caused by the fault or negligence of Lessor or its agents, to indemnify and save Lessor harmless from all injury, loss, claim or damage, including reasonable attorneys' fees, to or of any person or property anywhere occasioned by any omission, fault, neglect or other misconduct of Lessee or anyone claiming under Lessee, or acting expressly or impliedly at Lessee's direction.

20.  **PAYMENTS OF LESSOR'S COST OF ENFORCEMENT:**

Lessee agrees to pay on Lessor's demand all of Lessor's costs and expenses, including reasonable attorneys' fees, incurred in enforcing any obligation of Lessee under this Lease.

21.  **RIGHT TO RENEW:**

At Lessor's option, and provided that Lessee shall not then be in default Hereunder, Lessor may offer Lessee the right to renew this lease for one or more successive additional terms of up to five (5) years (the decision as to whether one or more lease terms shall be offered being that of the Lessor, which decision shall be at the Lessor's sole discretion), each subject to the following conditions:

(a) The new lease shall provide that the Lessee shall pay to the Lessor Base Rent at a rate to be set and determined by the Lessor, in Lessor's sole discretion, at the time that each such renewal term is offered and;

(b) Lessee shall be obligated to request a renewal of the Lease in each instance, and a new lease must be signed by the parties before the expiration of the preceding lease Term.

22. **MAINTENANCE:**

Lessee shall, at Lessee's expense maintain and keep the structures and improvements located on the Premises in good repair, order and condition.

23. **CONSTRUCTION:**

In construing this Lease, feminine or masculine pronouns may be substituted for those for neuter form and vice versa, and the plural for singular and singular for plural in any place where the context may require.

24. **GOVERNING LAW AND SEVERABILITY:**

This Lease shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts. In the event any provision of this Lease shall be determined to be invalid or unenforceable under applicable law, such provision, shall, insofar as possible, be construed or applied in such a manner as will permit enforcement; otherwise this Lease shall be construed as if such provision had never been made part hereto.

25. **HEADINGS:**

The headings used herein are used only for convenience of reference and are not to be considered a part of this Lease or to be used in determining the intent of the parties hereto.

26. **BINDING EFFECT:**

This Lease shall be binding upon and inure to the benefit of all administrators, executors, personal representatives, heirs, successors and permitted assigns, including all

permitted sub-tenants of the parties hereto. Each permitted sub-tenant or assignee shall as a precondition to Lessor's Lease, execute such written instrument(s) as Lessor shall reasonably require evidencing his agreement to be bound by each and every term of this Lease, provided that such an agreement shall not, unless specifically provided, operate to release Lessee from his obligations hereunder.

27.  ENTIRE AGREEMENT:

This Lease consisting of Sections One through Twenty-Six, including any attachments hereto, constitutes the entire agreement of the parties on the subject matter hereof and may not be changed, modified, discharged or extended except by written instrument duly executed by Lessor and Lessee.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals, as of the day and year first written above.

LESSOR: THE TOWN OF AQUINNAH

By: _____
    Selectman

By: _____
    Selectman

By: _____
    Selectman

LESSEE:

By: _____ Wendy _____ 7/6/12

By: _____



"A"
113 S.F.

"B"
940 S.F.

"C"
577 S.F.

"D"
609 S.F.

"E"
671 S.F.

"F"
953 S.F.

MENEMSHA
BASIN

MENEMSHA
INLET

CHILMARK GAY HEAD

TRAVELLED ROAD

GAY HEAD CHILMARK

NORTH ROAD

PLAN OF LEASE LOTS
GAY HEAD (MENEMSHA) MASS.
SCALE: 1" = 30'      7 JULY 1992
SCHOFIELD, BARBINI & HOEHN INC.
STATE ROAD, VINEYARD HAVEN, MASS.

MV4685

C

Aquinnah Board of Selectmen
Minutes of Meeting 4/23/2013
Aquinnah Town Hall Selectmen's Mtg Room

Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright
Also present: Adam Wilson, Town Administrator, Chief Randhi Belain, Vern Welch, Jim Sanfilippo, Wendy Swolinzky, Harbormaster Brian Vanderhoop, Shellfish Chairman Buddy Vanderhoop, Carla Cuch, Berta Welch, Vern Welch, Alexandra Taylor, Hugh Taylor (via Skype), Sgt Paul Manning, Officer David Murphy, Hollis Smith, Nancy Benoit, Whitney Swolinzky,

The meeting was called to order at 5:32 pm.

-1st on the agenda was a review of minutes from the 4-2 Selectmen's meeting.
-Jim made a motion to accept the minutes from April 2nd. Beverly seconded.
There was discussion about money budgeted from the highway department for road signs.
**The Board voted 3 – 0 in favor. The motion passed.**
-Next under old business was the request from Brian Vanderhoop to reconsider the action taken by the Board on January 22nd to reduce the water frontage for Lot B to 35 feet and increase the frontage for Lot A to 70 feet. Beverly made a motion to rescind the original motion granting Wendy Lot A of the Menemsha lease lots. Jim seconded.
-The discussion began with Beverly saying it seemed like a good idea back in January to give Wendy the room she needed for her business and that she was going to have Camille's shed anyway. But when Brian requested the water space between the two lots be divided in half the whole situation got too confusing and she no longer feels comfortable with her endorsement. She also had concerns in setting the precedent of moving lot lines around to suite everyone's needs. She wants to go back to square one which is when a lot becomes available, it should go to the 1st person on the waiting list.
-Jim asked what will happen to Wendy's ownership of the shed. Wendy said she has a bill of sale. She said she bought it April 11th.
-Wendy said she thought this was all settled back in January. She talked about her use of the shed on Lot A while running her business on Lot B. She said she's been allowed the use of the shed for her business for the last six years. She said she needs the shed to be able to operate her boat rental business.
-There was discussion about how the town leaders over the years have turned a blind eye to the fact that there has been a shared usage of the two lots which conflicts with the leasing arrangement. Spencer identified the problem is that lot A has only 35' of water frontage and Wendy has 60' of dock to work with. He said to Wendy that she wants Lot A, wants the shed on Lot A, and wants the water frontage lines changed so that she can have enough room to put in 60' of dock.
-There was discussion about the site survey never being certified or registered back in 1992 and Hollis's Lot C having more frontage than what he uses. There was discussion about the cliff owners historically having to remove their buildings when their lease ends. Vern brought up the fact that another Menemsha lot is now also going to be available on June 30th. Brian said he has contacted Lynn & Susan Murphy about Lot F being available as of July 1st. He proposed to take the Murphy lot instead so as to have the water frontage he needs. Spencer and Beverly talked about the coincidence that two lots have almost simultaneously become available. Spencer said if two are available on the same day, Brian has a choice, being 1st on the wait list. After he chooses, Vern then has the option,

being next on the wait list, to take the other available lot. Vern asked what his options will be if he ends up with Lot A. He said if that is the case, he'll try and work out an arrangement with the existing structure on the property.
-There was discussion about the shed on Lot A being a valuable asset and the shared usage of all the lots down on Menemsha Creek by current leaseholders.
-Hugh spoke about the possibility of the waiting list members drawing lots for the two available. He said the Selectmen have to decide what will be each lot's frontage and how the tides can determine how much dock each tenant needs. Vern stated he wants to make a deal but he needs to know what's going to be presented to him.
-Spencer said Brian is going to have a choice of which lot he'd like to have. His preference, stated earlier in the meeting, was to have Murphy's lot. If that's the case, Vern would then have the option of leasing Lot A. Vern said he needs to know where he stands so that he could possibly cut a deal. Buddy suggested a way Wendy could run her business using only 35' of dock space. There was discussion about what was voted on back in January. Adam read the minutes from January 22nd.

"-Jim made a motion to move the lot line so that Lot B is reduced to 35 feet and increase Lot A to be 69.9 feet. Beverly seconded. There was discussion about notifying Chip about Lot B's availability...
**The Board voted 3 - 0 in favor. The motion passed.**
-Beverly made a motion that as of July 1st, 2013, the town will enter into a new lease agreement for Wendy to have Lot A. Jim seconded.
**The Board voted 3 - 0 in favor. The motion passed."**

-Nancy commented on the shed's history and the difficulty in getting it moved. Berta said the ownership of the shed was included in Alfred Vanderhoop's will. There was discussion about the sale of the shack.
Berta said if the shed can't be sold to the new leaseholder, it needs to be removed. That's the protocol with everyone else who leases business space from the town. There was discussion about tenant's rights and the retention of property. Alexandra said the blind eye scenario has made this mess but it can't be continued. She said there's got to be an effort to make it right. She added the Selectmen have to decide what to do.
-Beverly called for a vote on her motion.
**The Board voted 2 in favor (Beverly/Spencer), 0 against and 1 abstention (Jim) to approve. The motion passed.**
Board Members said they now need to discuss what to do next. Brian said he's written to the Board asking to take over the lease for the Murphy lot. Beverly re-emphasized that as of June 30th, the town owns lot A. She requested that Wendy provide a copy of the bill of sale. There was discussion about the time frame to get new lease holders in place before the summer begins. Wendy gave her story of the history of how her business has grown. She talked about the business being her livelihood and that the season is about to start. She asked for the board to consider her longevity.

-Next on the agenda was New Business. The Board took up the request to renew the taxi license for Aquinnah Taxi.
Beverly motioned to renew the Aquinnah Taxi Cab Company license for another year. Jim seconded.
**The Board voted 3 – 0 in favor. The motion passed.**

-Next on the agenda was a presentation given by Officer David Murphy on the use of tasers. Randhi explained that David will be taking an instructor's course this June to be certified in training police personnel how to use them. The presentation showed how effective the devices are and how their use has shown statistically the reduction in injury claims for both those taken into custody and police personnel. David explained that protocol allows for taser use in subduing an individual falling between pepper spray and/or baton and a service pistol. David said that for

officers working in remote rural areas, where back-up for a physical confrontation could take as long as 15 – 20 minutes, a taser needs to be available for their protection.  Randhi said that the purpose of the presentation is to gain consensus from Board Members that the police department could go forward and draft policy regulations for taser use for the Selectmen to approve.
The Board, by consensus, agreed that the police department could go forward and draft a Taser Use Policy.

-In the Town Administrator's report, Adam said that Library Director Lisa Sherman has filled the P/T position hiring Giulia Fleishman.  She is a Chilmark native and graduate of NYU.  While in New York, she worked as a page in the reference building at the main branch of the New York Public Library.
-Adam showed a contract for electrical service up to the Cliff Lot just past Berta's Store.  He said there is no power there and the Tribe is building an informational kiosk on the site.
Jim made a motion to approve the wiring contract for Ed Ferry.  Beverly seconded.
**The Board voted 3 – 0 in favor.  The motion passed.**  Spencer signed the contract.
-Adam showed another contract for an engineering survey that needs to be done to fix the culvert on Lobsterville Rd.  He said the funds will come out of Chapter 90 road funds.
Jim made a motion to approve the wiring contract for George Sourati.  Beverly seconded.
**The Board voted 3 – 0 in favor.  The motion passed.**  Spencer signed the contract.

-Spencer asked if there was any other business.  Hearing none…
A motion was made and seconded to adjourn.
**The Board voted 3 – 0 in favor.  The motion passed.**

The meeting ended at 8:00 pm.

-Theresa said there are already people in other towns that are on top of this and are working to get a dispensary license. She gave the Board a short history of research done showing the negative effects marijuana has on different age groups and genders.

-Theresa suggested a public consumption by-law perhaps as a tool for regulating the use. Jamie said right now the Dept of Public Health has been given a 120 day window to develop rules and regulations beginning Jan 1st. There was discussion about other towns taking action to ban the dispensaries completely and others engaging in a moratorium for a period of time to look at the DPH regulations when they do come out and decide if their guidelines are acceptable enough for the Town to engage itself in dispensary licensing.

-Jim said he'd support a moratorium, perhaps for six months. Adam said he'd talk to both the Town Clerk and Counsel on getting a moratorium question in place for the town meeting. Julie said there is already training to show people how to get this type of business started. Theresa said there's lots of different ways to sell cannabis. Products can come in many different forms and products. In states where the sale has been for varied uses, there are lots of ways to inhale or ingest to drug.

-Jim said he wants to have Jamie and Theresa as advisors to the Town as to how to proceed. There was discussion about whether or not there really is a benefit in pot smoking for medical use.

-Theresa said there are plans for them to meet with the all-island selectmen in February. She said YTF is aligned with MAPPA to establish regulations with towns now that legislation has passed allowing these types of dispensaries. Prevention groups such as YTF have been working hard since the decriminalization of pot back in '08. Theresa said that the unfortunate thing about his change in law is that no money is budgeted to see to the oversight of the change. It's a concern when a new rule goes into effect but there is no funding that should be a part of the implementation. The Board thanked Theresa and Jamie for filling them in about the issue and actions the town can take to deal with the issue.

-Next on the agenda was a recommendation from the Personnel Committee to have all employees sign off on their job descriptions (JD's). Adam reported that the committee has been working for months to update all employees JD's and have interviewed almost everyone on staff to make sure everyone's JD is current. Signing off on the job description is an acknowledgement that the job responsibilities and essential functions are accurate to each person's job.

Beverly made a motion for the Board to adopt a policy that all employees' sign off on their approved job descriptions. Jim seconded.
The Board voted 3 - 0 in favor. The motion passed.

There was a discussion about the difference in job performance and how it is evaluated versus job accountability and how one's responsibilities are spelled out in a JD.

-Next on the agenda was a review of the proposed project to fund from Community Preservation Committee's undesignated reserve fund, $5K for the Lighthouse Committee to do feasibility work. The CPC have a warrant article on the Town's second special town meeting February 5th to fund for a feasibility study. Adam stated the CPC needed a project proposal so he drafted one for the Selectmen to endorse before the CPC can vote on it.
Beverly made a motion to endorse the Gay Head Lighthouse Committee CPC Project for $5K. Jim seconded.
The Board voted 3 - 0 in favor. The motion passed.

Beverly asked if there will be a BOS meeting on the 5th in addition to the two town meetings. Adam said there'll be one since the Lighthouse Committee is slated to meet with them. Jim said that the BOS, acting as the FinCom, wants to meet as well. Jim said he also wants to meet with the Finance Team.

-Next on the agenda was the appointment of a selectperson to the Tri-Town Committee.
Spencer made a motion to reappoint Jim for another year. Beverly seconded.
The Board voted 3 - 0 in favor. The motion passed.

-Jim talked about the local rep to the Land Bank.  Adam said that Megan Ottens-Sargeant has indicated she would volunteer as the local rep.  Jim said he's been on the advisory committee for the last ten years. Adam said he'd put the issue on the 2-5 agenda.

-In the Town Administrator's report, Adam stated that the reason MVTV was not recording tonight's meeting was because of a heavy schedule of events they were obligated to produce and that the town's regular videographer, Joanie Ames, was still recovering from the flu and they weren't able to find a replacement.
-Adam went over the budget/town report calendar. He said the difference this year is that town meeting isn't until the 14th of May, so there's more time to get everything reviewed.
-Adam had the Board sign off on the MS Bike-a-Thon in May.
-Spencer asked if any Board Member had any other business to discuss.  Hearing none…

Beverly made a motion to adjourn.  Jim seconded.
The Board voted 3 – 0 in favor. The motion passed.


The meeting ended at 6:05 pm.

**CERTIFICATE OF SERVICE**

I, Daniel C. Perry, hereby certify on this 9th day of December, 2013, under the penalties of perjury that a true copy of the foregoing **Defendants' Motion to Dismiss and Defendants' Memorandum in Support of Their Motion to Dismiss** was served upon all parties/counsel of record by mailing same first-class mail, postage prepaid to the following:

Robert F. Oberkoetter, Esq.
P.O. Box 77
Russells Mills, MA 02714

_____

Daniel C. Perry, Esq., BBO #395680
Perry, Hicks and Deshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net



COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Aquinnah Board of Selectmen
Beverly Wright, individually

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' 12(B)(6) MOTION TO DISMISS

1. "On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom"...the complaint must contain sufficient factual matter to "state a claim for relief that is plausible on its face...The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that the defendant has acted unlawfully...A plaintiff's obligation to provide grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."" <u>Comeau v. Town of Webster</u>, Mass., 881 F.Supp.2d 177 (2012).

2. "Qualified immunity shields public officials from suit, and is not a mere defense to liability...It is therefore important for the immunity question to be resolved at the earliest stage in litigation...(immunity ordinarily should be decided by the court long before trial). "The basic thrust of the qualified immunity doctrine is to free

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

SUPERIOR COURT
DUKES COUNTY

DEC 27 2013

REC'D

1

officials from the concerns of litigation, including 'avoidance of disruptive discovery.'". Id.

3. "Plaintiffs must allege four elements: (1) the existence of a contract or a business relationship with contemplated economic benefit; (2) the defendant's knowledge of the contract or business relationship; (3) the defendant's intentional interference with the contract of business relationship for an improper purpose or by improper means; and (4) damages...In slight contrast, claims for intentional interference with advantageous relations require proof that the plaintiff had an advantageous business relationship with a third party, the defendant knowingly induced a breaking of the relationship, and the defendant's interference was improper in motive or means, causing the plaintiff harm." Id.

4. "To recover for interference with advantageous business relations, the plaintiff need not prove a binding contract, but he must show a probable future business relationship from which there is a reasonable expectancy of financial benefit...Generally, the propriety of the (defendant's) motives in a particular setting necessarily depends on the attending circumstances, and must be evaluated on a case-by-case basis." Id.

5. "Plaintiffs cannot impose liability on [a defendant] without saying how he acted beyond the scope of his duties...The plaintiff must allege acts outside the scope of the officer's authority, or that he acted in bad faith or with malice or corruption." Id.

6. "To determine whether a defendant's acts fall within the purview of [Mass. Gen. Laws c. 258] section 10(c), *the finder of fact* must consider whether the conduct complained of is the kind the employee is hired to perform...and whether "it is motivated, at least in part, by a purpose to serve the employer...If an employee "acts from purely personal motives...in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment", and immunity is not available.": Id. Emphasis supplied.

7. Here follow some of the facts in the light most favorable to the nonmoving party.

(a)  The Plaintiff has both a business relationship and a fully memorialized contract of economic benefit with the Town of Aquinnah; each of these facts are clearly averred in the complaint; paragraphs 7, 10, 11, 12, 13;

(b)  The complaint avers that the Board of Selectmen was possessed of actual knowledge of its long commercial relationship with the Plaintiff; 2, 5, 7,

(c)  The complaint, in paragraphs 17, 18, 24, 25 and 26, alleges, in combination, dishonest, malicious conduct and intentional interference with the contemplated contract of economic benefit described in 13 in a manner entirely ultra vires to the proper exercise of office, "a malignant purpose unrelated to the legitimate corporate interest", Welch v. Ciampa, 542 F.3d 927, the unmistakable inference being that of corruption, conduct not for the public welfare, but rather for the specifically targeted private welfare of Board member and chairperson Beverly Wright's employer's husband. Wright's husband is also the first cousin of her employer.

(d)  The plaintiff's loss of advantage directly resulting from the defendant's conduct is also clearly averred. 14, 20, 21, 22.  See Welch v. Ciampa, 542 F.3d 927 describing each of the aforementioned elements of proof in order to prevail on a claim for tortious interference with an advantageous relationship.

### Aquinnah's Arguments

8.  The multitude of contract memoranda found in two publically noticed meetings of Aquinnah's Board of Selectmen, one televised [January 8, 2013] and the other recorded on tape and stenographically memorialized [January 22, 2013], coupled with written and published minutes of the meetings of both meetings [see paragraph 13 of the complaint] – Aquinnah argues – "simply provided a procedural framework within which the parties could execute a mutually satisfactory enforceable contract...was but a step in the negotiation...." This argument constitutes patent rhetorical perspiration in anemic ignorance of the

long line of case law about satisfactory memoranda. But one case will suffice. SAR Group Ltd. v. E. A. Dion, Inc., 79 Mass.App.Ct. 1123 (2011).

"Whether a writing or a collection of writings satisfies the Statute of Frauds is a question of law…Thus, a writing or writings need not be a formal document intended to serve as a memorandum of the contract; but the [the writing or writings] must contain the terms of the contract agreed upon…[t]he essential elements of the contract must be in writing to meet the requirements of the statute. "the consideration of such promise, contract or agreement", however, "need not be set forth or expressed in the writing signed by the party to be charged therewith, but may be proved by any legal evidence…This means that "the undertaking sough to be enforced must be stated but the consideration for that promise need not be…Multiple writings may be considered for purposes of the statute, and parol evidence may be introduced to show that "two or more papers were so connected in the minds of the parties that they adopted all of them as indicating their purpose…"The plaintiffs have met their burden to show that these essential terms were sufficiently memorialized in writing…Because the agreement between the parties satisfied the Statute of Frauds, the plaintiffs' contract claim *survives summary judgment. Moreover, the claim for a breach of good faith and fair dealing also is not barred, as it is a covenant implied in all contracts.*" SAR Group Ltd. v. E. A. Dion, Inc., 79 Mass.App.Ct. 1123 (2011). Emphasis supplied.

9. The array of writings referred to in the preceding paragraph sets forth all essential elements of the contract, not merely with reasonable certainty, but with actual certitude. The initial negotiations with respect to the swap of leases for Lot A and Lot B, first broached on January 8, 2013, NOT by the Plaintiff as Aquinnah asserts in its motion, but by Board of Selectmen member James Newman, were then taken under advisement for the next duly noticed meeting on January 22, 2013, at which time the agreements were fully discussed and refined. This was followed by open discussion with the public, one Vernon Welch [paragraph 16 of the complaint] present, and the formal votes taken. The votes were unanimous. The minutes were confirmed on February 5, 2013.

The memoranda referred to in this pleading, in fact, establish a complete agreement. The lease format has remained virtually identical to Tab A appended to Aquinnah's motion.  The argument that it was not to be formally executed  until July 1, 2013 is pure sophistry in this circumstance for the reasons detailed in the complaint  5, 6, 7, 10, 11, 12, and 13. All leases of Menemsha lots are virtually boilerplate identical and haven't changed in many years. To have the plaintiff wait until July 1 to commence a seasonal business that starts annually in May is simply ridiculous.

The issue, in fact, is quite simple: Does a unanimous or even simple majority vote of a Board of Selectmen constitute a contract? The answer is unequivocally yes. "Whether the vote of December 22, 1896 was an acceptance of the plaintiff's offer, or was an offer to the plaintiff, it was a sufficient memorandum, under the statute of frauds. The recorded vote of the corporation, or of a committee acting upon a subject over which the committee has power, is a sufficient memorandum...the vote itself an offer to him, and, by his acceptance by the covenant to sell, the vote became a part of the contract with him." McManus v. City of Boston, 171 Mass. 152 (1898).

10. Aquinnah next argues that promissory estoppel is not available against a municipal board. First, the array of memoranda referred to in paragraph 8 above constitutes the "unambiguous promise" Aquinnah looks for in paragraph 2 of its argument, page 5.  While it is true that estoppel is not ordinarily available to private claimants in the setting of municipal litigation, 'no rule requires that municipalities be totally exempt from principles of fair dealing or to act arbitrarily'.

"Traditionally, courts have not permitted estoppel of the government. A starting point, suggested by Professor Davis, is that "the King cannot be estopped, for it cannot be presumed that the King would do wrong to any person...For a comprehensive discussion of federal cases, a criticism of the doctrine, and the discerning of "a mainstream of case law estopping the government", see 4 Davis, supra Sections 20.1- 20.6 and Section 20.12 at 43. Justifications of the tradition, other than that of sovereign immunity, are the need for protecting the public against "improper collusions." Lee v. Munroe, 11 US (7 Cranch) 366.

*Kings can be, and are frequently wrong. President Nixon exclaimed: "When the president does it, it's never illegal". In this case there is a need to protect the public against improper collusion by a board member in disregard for the public welfare in favor of the board member's employer's husband's private welfare.*

> "Although the withering of the doctrine of sovereign immunity has had some effect on the law of estoppel in Massachusetts, the courts are reluctant to apply principles of estoppel to public entities where to do so would negate requirements of law intended to protect the public interest." <u>McAndrew v. School Committee of Cambridge</u>, 20 Mass.App.Ct. 356.

Associate Justice Dreben's opinion appears to invite the legislature to alter this antediluvian doctrine. "Preservation of the processes ordered by the Legislature overrides the equities that would appropriately be considered in a purely private transaction." She added: "That the present plaintiff was treated shabbily (so far as appears on this record) cannot be gainsaid. No rule requires that agents of the defendants, *acting within the scope of their authority*, be totally exempt from the principles of fair dealing or be permitted to act arbitrarily". Italics supplied.

<u>McAndrew</u> sustained the doctrine, but Justice Dreben discretely qualified the opinion of the Appeals Court by her phrase "acting within the scope of their authority". Here, the complaint avers that this "King" in fact, acted in violation of the principles of fair dealing and acted well outside her authority when she rescinded her vote, not for the public welfare but for the corrupt purpose of blatant assistance to the husband of her employer.

Beverly Wright filed a State Ethics Commission disclosure in June 2013, but disclosure was both incomplete and made several weeks *after* the fact of the votes she undertook to coordinate  the lease rescission, a rescission wholly ineffective on its face and a nullity simply because any such rescission required the assent of the plaintiff. "A contract made by a vote of a town cannot be rescinded by the town, by a vote at a subsequent meeting, without the consent of the other party". <u>Allen v. Inhabitants of Taunton</u>, 19 Pick. 485. (1837) (Headnote No. 1). Wright failed to disclose her family relationship on the disclosure form.

Because the conflict was made patent by her too late disclosure, Beverly Wright's votes subsequent to the January 22, 2013 vote stemmed from the conflict, violated G. L. Ch. 268A, Section 19 and should be stricken as void. See Attachment A. Of course, had Beverly Wright been acting in good faith by making appropriate disclosure of her employment and family relationship prior to the rescission, the Plaintiff would have demanded immediate recusal and in the event of refusal, would have filed a mandamus action.

11. Thirdly, Aquinnah argues that the Plaintiff's contract interference claim is barred by the Massachusetts Tort Claims Act. Oddly, Aquinnah does not argue against the Plaintiffs' claims relative to tortious interference with advantageous business relations. Be that omission as it may, there is no bar in this case simply because the complaint plainly avers that defendant Wright acted well outside the scope of her office or employment. 24, 25, and 26.   See Comeau v. Town of Webster, Mass., 881 F.Supp.2d 177 (2012).  See paragraphs 2, 3, 4, 5, 6, and 7. Aquinnah ignores the municipal law detailed in Welch v. Ciampa, 542 F.3d 927 and recited in paragraph 7 above.

"Actual malice is a spiteful, malignant purpose, unrelated to the legitimate corporate interest…the district court erred in concluding that Welch could not maintain an action for tortious interference with advantageous relations against Ciampa because Ciampa, representing the town was representing the employer, a party to the employment relationship. We reverse the court's grant of summary judgment on this claim." Ciampa, Id.

12. Please see Plaintiff's affidavit verifying the averments of the complaint and correcting multiple errors in the Defendants' motion.

For the reasons detailed above, the Plaintiff respectfully requests that the Court **DENY** the Defendants' R. 12(b)(6) Motion to Dismiss.

Plaintiff requests that this motion be heard by the Court at such time convenient to the Court after January 10, 2014 as counsel for the Plaintiff will be overseas on vacation.

Robert F. Oberkoetter, Esq.
BBO #375450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

I, Robert F. Oberkoetter, hereby certify that I have on this  17th day of December 2013 served a true copy of the within **PLAINTIFF'S OPPOSITION TO DEFENDANTS' 12(B)(6) MOTION TO DISMISS** on each other party by first class mail to Daniel C. Perry, 388 County Street, New Bedford, MA 02740-4992.

Robert F. Oberkoetter, Esq.



COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Aquinnah Board of Selectmen
Beverly Wright, individually

## PLAINTIFF'S AFFIDAVIT

I, Wendy Swolinzky, on my oath do depose and state that:

1.  I have read the allegations set forth in the Complaint and  verify that they are true to the best of my knowledge, information and belief.

2.  Defendants' version of the facts is inaccurate in several particulars:

    (a) "As Swolinzky well understood, being a party on one such lease, the Board as a matter of practice always entered into a formal written lease which was an integrated document, and neither party was bound until that document was signed."

    I conducted my BookaBoat business on Lot B for eight years without a written lease, as did the other lessees of lots at Menemsha.

    (b) "Swolinzky appeared at a meeting of the Board held on January 8, 2013, and asked the Board… to rescind her lease…"

    At no time did I request or seek such a rescission.

    (c)  "Swolinzky has maintained an office located in a small shack located on a parcel adjacent to Lot B, also owned by the Town, known as Lot A, which Swolinzky has in the past sub-leased from one Camille Rose…"

I did not sublet any space from Camille Rose on Lot A, but shared a desk from which I sold her fishing tackle at her request and from which I conducted my boat rental business for fully 7 years without disturbance from the Board or anyone else. Other Menemsha lessees share their space with each other for reasons of practicality. I paid no rent to Camille Rose.

Signed this 17th day of December 2013 under the pains and penalties of perjury.

Wendy Swolinzky

Attachment A

| | |
|---|---|
| Optional:  Additional facts – e.g., why there is a low risk of undue favoritism or improper influence. | |
| If you cannot confirm this statement, you should recuse yourself. | **WRITE AN X TO CONFIRM THE STATEMENT BELOW.**<br><br>___  Taking into account the facts that I have disclosed above, I feel that I can perform my official duties objectively and fairly. |
| Employee signature: | *Beverly McWright* |
| Date:  6/7/13 | |

Attach additional pages if necessary.

Not elected to your public position – file with your appointing authority.

Elected state or county employees – file with the State Ethics Commission.

Members of the General Court – file with the House or Senate clerk or the State Ethics Commission.

Elected municipal employee – file with the City Clerk or Town Clerk.

Elected regional school committee member – file with the clerk or secretary of the committee.

Form revised July, 2012

# DISCLOSURE OF APPEARANCE OF CONFLICT OF INTEREST
## AS REQUIRED BY G. L. c. 268A, § 23(b)(3)

| PUBLIC EMPLOYEE INFORMATION | |
|---|---|
| Name of public employee: | Beverly Wright |
| Title or Position: | Selectman, Town of Aquinnah |
| Agency/Department: | |
| Agency address: | 65 State Road, Aquinnah, MA 02535 |
| Office Phone: | 508 645 - 2300 |
| Office E-mail: | aqbos@comcast.net |
| | In my capacity as a state, county or municipal employee, I am expected to take certain actions in the performance of my official duties. Under the circumstances, a reasonable person could conclude that a person or organization could unduly enjoy my favor or improperly influence me when I perform my official duties, or that I am likely to act or fail to act as a result of kinship, rank, position or undue influence of a party or person.<br><br>I am filing this disclosure to disclose the facts about this relationship or affiliation and to dispel the appearance of a conflict of interest. |
| | **APPEARANCE OF FAVORITISM OR INFLUENCE** |
| Describe the issue that is coming before you for action or decision. | Decision to award Lease on Land owned by Town known as Lot A, on Menemsha Harbor |
| What responsibility do you have for taking action or making a decision? | I vote to award the lease and execute the Lease in the name of the Town |
| Explain your relationship or affiliation to the person or organization. | The prospective tenant, Vernon Welch is married to Berta Welch, for whom I have historically worked part time in the summer.<br><br>Also, a Trust created by Alfred Vanderhoop may have a potential interest in a building on the land to be leased, which the tenant may decide to purchase. Berta Welch is one of three trustees of that Trust, and my husband's grandchildren are potential beneficiaries of that Trust |
| How do your official actions or decision matter to the person or organization? | See above |

PERRY, HICKS AND DESHAIES, LLP
ATTORNEYS AT LAW
388 COUNTY STREET
NEW BEDFORD, MASSACHUSETTS 02740-4992

DANIEL C. PERRY
MARC R. DESHAIES

AMY S. MELLO *
* ALSO ADMITTED IN R.I.

TELEPHONE
(508) 996-8291

TELECOPIER
(508) 997-2637

LEONARD E. PERRY
(1935-1996)
EDWARD D. HICKS
(1935-2002)

INFO@PERRYHICKS.NET
WWW.PERRYHICKS.NET

June 6, 2013

Beverly Wright, Selectmen
Town of Aquinnah
65 State Road
Aquinnah, MA 02535

Re:     Question of Conflict of Interest;
        Award of Lease for Lot A Menemsha

Dear Ms. Wright:

        You have asked me for my opinion, as special counsel to the Town, as to the application of the Massachusetts Conflict of Interest law, General Laws chapter 268A, to your participation as a selectman of Aquinnah in a decision to award a lease of Town owned land to Vernon Welch. I understand that two concerns have been raised. First, Mr. Welch's wife has employed you on an occasional basis. Second, a Trust of which your husbands' grandchildren are potential beneficiaries may also have a financial interest in the leased property.

        1. The Employment Issue. You advise me that Vernon Welch is married to Berta Welch, who is a partner in a business in Aquinnah for which you have historically worked part time in the summer. Although you have no specific agreement, it is likely that you will continue such work in the upcoming summer. Vernon Welch has no interest in the business.

        In my opinion, the statute does not unconditionally prohibit your participation by reason of your past or possible future employment. The pertinent section of the statute is General Laws chapter 268A, § 19, which provides that:

        (a)  Except as permitted by paragraph (b), a municipal employee who participates as such an employee in a particular manner in which to his knowledge he, his immediate family or partner, a business organization in which he is serving as officer, director, trustee, partner or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest, shall be punished by a fine of not more than $10,000, or by imprisonment

in the state prison for not more than 5 years, or in a jail or house of correction for not more than 2 ½ years, or both. (emphasis added).

I will assume for purposes of the opinion that your expectation of future employment by Ms. Welch's partnership is one that could be characterized as "an arrangement [with Ms. Welch] concerning prospective employment." However, the prohibition of section 19(a) does not extend to spouses of persons with whom you have an understanding regarding employment. Because Vernon Welch has no interest in the partnership that has occasionally employed you, the statute does not prohibit you from participating in a decision that affects his interest but not Ms. Welch's.

A second issue that you should consider is whether you're your participation runs afoul of section 23 (b) of Chapter 268A by virtue of your occasional employment by Ms. Welch. That section provides in pertinent part:

No current officer or employee of a state, county or municipal agency shall knowingly, or with reason to know:...

(3) act in a manner which would cause a reasonable person, having knowledge of the relevant circumstances, to conclude that any person can improperly influence or unduly enjoy his favor in the performance of his official duties, or that he is likely to act or fail to act as a result of kinship, rank, position or undue influence of any party or person. **It shall be unreasonable to so conclude if such officer or employee has disclosed in writing to his appointing authority or, if no appointing authority exists, discloses in a manner which is public in nature, the facts which would otherwise lead to such a conclusion**

I suggest that you file the disclosure form contemplated by this section in connection with your participation on the vote. The disclosure should be filed with the Town Clerk.

2.  The Trust Issue. The second concern that has been raised is somewhat more scomplicated.  The lease pertains to a parcel of land, known as Lot "A," with frontage on Menemsha harbor. Lot "A" is improved by a shed, historically used to support fishing. There exists a general understanding that the buildings on the lots in this area, which were owned by the Commonwealth at one time, belong to the tenants, and, on similar lots, new lessees have "purchased" the buildings from prior owners. (As you know, I have expressed some doubt about whether that assumption about the status of the buildings is accurate, given the language in the leases.)  You have advised me that a Trust established by your husband's late uncle, Alfred Vanderhoop, who once leased the lot, asserts an ownership interest in the building; there is a disagreement between the existing tenant, Camille Rose, and the Trust concerning their respective interests. If the Trust's position is correct, it may stand to profit from transfer of the building, but your decision to award the lease to a tenant will leave the question of building ownership open, and require the tenant to deal directly with any such claims.

Berta Welch, your occasional employer, is one of several trustees of the Trust, but she is not a beneficiary. The Trust provides potential financial support for higher education of the descendants of Mr. Vanderhoop's siblings. Neither your husband nor his children are potential beneficiaries of the Trust. The Trust potentially could provide financial assistance for your husband's grandchildren in connection with their higher education.

In my opinion, the interest of the Trust in the property is not disqualifying under section 19(a). It does not appear to me that the Trust itself has a financial interest in the lease.   Your decision regarding the lease has no direct consequences to the Trust; if it in fact has an interest in the building, the decision as to whether it sells the building is essentially unrelated to your decision to award a ground lease. But even if the Trust does have a financial interest, because the Trust does not financially benefit your husband or any of his children, no member of your "immediate family" as defined by Chapter 268A, (which would include your husband's children, but not his grandchildren) has a financial interest in the Trust. Nor does Ms. Welch have a financial interest in the decision. The bar applies if a financial interest is held by an organization of which **you** are a Trustee, or by a person with whom you have a prospective employment relationship, but not, without more, if a financial interest is held by an organization whose trustees include a person with whom you have a prospective employment relationship.

This is again, howver,  a situation in which your complex relationship with the Trust and the Trust's potential interest in the property may at least raise a question of whether you are subject to "undue influence" under section 23 (b). I therefore also recommend that you include the interest of the Trust in a disclosure statement under section 23(b).

Very truly yours,

DANIEL C. PERRY

DCP/tmf

cc:      Aquinnah Town Clerk
         State Ethics Commission



# Commonwealth of Massachusetts
## STATE ETHICS COMMISSION
John W. McCormack Office Building · One Ashburton Place · Room 619
Boston, Massachusetts 02108-1501

June 14, 2013

Daniel C. Perry
Perry, Hicks and Deshaies, LLP
388 County St.
New Bedford, MA 02740-4992

Re:    Beverly Wright

Dear Mr. Perry,

On June 10, 2013, the Ethics Commission received your opinion of June 6, 2013, to Beverly Wright. I have reviewed your opinion pursuant to the Commission's municipal advisory opinion regulation, 930 CMR 1.03(3), and concur with the conclusions you stated. I have enclosed a form that Ms. Wright may use for the disclosures you have recommended and which I agree she should make.

Very truly yours,

Deirdre Roney
General Counsel

cc:    Beverly Wright
Aquinnah Town Clerk

PHONE: 617/371-9500 or 888/485-4766   FAX: 617/723-5851
www.mass.gov/ethics



# COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.,
CLERK OF COURTS

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

### AFFIDAVIT OF COMPLIANCE
### RULE 9A(b)(2)

I, Daniel C. Perry, attorney for the Defendants, hereby certify that I served a copy of the **Defendants' Motion to Dismiss the Complaint** upon all counsel of record and interested parties in compliance with Superior Court Rule 9A on December 9, 2013, and that the opposition received is filed herewith.

Singed under the pains and penalties of perjury this 24th day of December, 2013.

Daniel C. Perry, Esq. (BBO # 395680)
Perry, Hicks and Deshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. (508) 996-8291
Fax (508) 997-2637
danperry@perryhicks.net

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

DEC 27 2013

REC'D
_____CLERK

# COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

---

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

---

## CERTIFICATE OF SERVICE
### Rule 9A(b)(2)

I, Daniel C. Perry, hereby certify that on this 24th day of December, 2013, in accordance with Superior Court Rule 9A(b)(2), I served copies of the following: Notice of Filing (Rule 9A(b)(2)), Document Title Page (Rule 9A (b)(2)), Affidavit of Compliance (Rule 9A(b)(2)), and this Certificate of Service (Rule 9A (b)(2)) to the following counsel of record by mailing same first-class mail, postage prepaid to:

Robert F. Oberkoetter, Esq.
P.O. Box 77
Russells Mills, MA 02714

Daniel C. Perry, Esq. (BBO # 395680)
Perry, Hicks and Déshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. (508) 996-8291
Fax (508) 997-2637
danperry@perryhicks.net



# COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

## DOCUMENT TITLE PAGE
### Rule 9A(b)(2)

1. Defendants' Motion to Dismiss the Complaint;
2. Defendants' Memorandum in Support of Their Motion to Dismiss;
3. Plaintiff's Opposition to Defendants' 12(B)(6) Motion to Dismiss
4. Affidavit of Compliance (Rule 9A (b)(2));
5. Notice of Filing (Rule 9A (b)(2); and
6. Certificate of Service (Rule 9A (b)(2)).

Defendants,
By their attorneys,

Daniel C. Perry, Esq. (BBO#395680)
Perry, Hicks and Deshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net

Dated: December 24, 2013

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

DEC 27 2013

REC'D
_____ CLERK



## COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

---

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

---

### NOTICE OF FILING
### RULE 9A(b)(2)

Notice is hereby given that on this day the documents listed on the accompanying Document Title Page were filed with the Court by counsel for the Defendants.

Defendants,
By their attorneys,

Daniel C. Perry, Esq. (BBO#395680)
Perry, Hicks and Deshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net

Dated:  December 24, 2013

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTA

A True Copy
Attest:

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

DEC 27 2013

REC'D
CLERK

(13)

# PERRY, HICKS AND DESHAIES, LLP
## ATTORNEYS AT LAW
### 388 COUNTY STREET
### NEW BEDFORD, MASSACHUSETTS 02740-4992

| | | |
|---|---|---|
| DANIEL C. PERRY | **TELEPHONE** | LEONARD E. PERRY |
| MARC R. DESHAIES | **(508) 996-8291** | (1935-1999) |
| | **TELECOPIER** | EDWARD D. HICKS |
| AMY S. MELLO* | **(508) 997-2637** | (1935-2002) |
| *ALSO ADMITTED IN R.I. | | INFO@PERRYHICKS.NET |
| | | WWW.PERRYHICKS.NET |

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

*[handwritten signature]*

December 24, 2013

Sessions Judge
Dukes County Superior Court
81 Main Street
P.O. Box 1267
Edgartown, MA 02539

Re: **Wendy Swolinzky d/b/a Bookaboat**
Vs. **Beverly Wright, Spencer Booker and James Newman, as they are the**
<u>**Aquinnah Board of Selectmen, and Beverly Wright, individually**</u>
**Dukes County Superior Court, Docket No. DUCV2013-00049**

Dear Sir or Madam:

Pursuant to Superior Court Rule 9A, defendants request that the Court permit service of a reply memorandum to plaintiff's opposition to defendants' motion to dismiss, in order to respond to arguments of law and averments of facts made therein not reasonably anticipatable from the Complaint.

Very truly yours,

*[signature]*

DANIEL C. PERRY

DCP/tmf

cc: Robert F. Oberkoetter, Esq.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

DEC 27 2013

REC'D
_____CLERK

*[handwritten left margin]* 12/31/13 Allowed, 3 Pages. Nickerson, J. R. Bombo Delivery Asst Clerk



# COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

SUPERIOR COURT DEPARTMENT
Docket No. DUCV2013-00049

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION TO DISMISS

Defendants, the Aquinnah Board of Selectmen (the "Board") and Beverly Wright ("Wright") hereby reply to the opposition of plaintiff Wendy Swolinzky ("Swolinzky") to their motion to dismiss.

1. <u>Count I should be dismissed because the Board's vote of January 22, 2013 does not evidence a contract and does not satisfy the requirements of the statute of frauds.</u>

Swolinzky attempts to sow much confusion by alluding to "a multiple of contract memoranda," which she does further identify with any particularity. However, the complaint unambiguously alleges a single event that gave rise to contractual obligations, namely, the Board's vote at its meeting January 22, 2013. (See e.g., paragraph 14, wherein she avers she "relied on [the January 22 vote] granting her substantial contractual rights.") As defendants have previously acknowledged, a board vote <u>can</u> satisfy the statute of frauds, but only if the vote memorializes a complete contract.

Application of this principle to the present case is illustrated clearly by two venerable cases cited by the parties in their memoranda, Edge Moor Bridge Works v. County of Bristol, 170 Mass. 528 (1898) and McManus v. City of Boston, 171 Mass. 152 (1898), coincidentally decided within two months of each other.  In McManus, relied on by Swolinzky, the plaintiff offered an identified parcel of land to the Street Commissioners of Boston (who had been directed by the School Committee vote to acquire land for a school) for the specific sum of $9500 at a meeting of the Commissioners. The trial court found that the Commissioners passed a vote "to purchase the land for the city for school purposes of the plaintiff for $9500." That same day, the plaintiff signed a written agreement under seal to sell the land for that specific sum. The

FILED
SUPERIOR COURT
DUKES COUNTY

JAN 1 0 2014

REC'D
CLERK

Court found that an offer and acceptance had occurred, and that the Commissioner's vote satisfied the statute of frauds. 171 Mass. at 156.

In contrast, in Edge Moor Bridge Works, the Bristol County Commissioners solicited proposals for building a portion of the Fairhaven Bridge, and the instructions to bidders made clear that the County Commissioners and the successful bidder would, after award, execute a written contract.  The Commissioners voted to award the contract to plaintiff based upon its bid, and plaintiff sought to enforce a contract on the strength of that vote.  The Court held that, because the vote of award specifically contemplated a future written contract, the vote itself did not create such a contract, stating:

> Especially where the supposed contract is found in only in a vote formed by boards of public officers, which looked to the preparation and execution of a formal contract in the future, care must be taken not to hold that to be a contract which was intended only to signify an intent to enter into a contract.

170 Mass. at 528.

This case is governed by Edge Moor.  The vote of the selectmen by its terms contemplated execution of a formal contract in the future; it was only to "enter into a new lease agreement," unlike McManus, where the vote was "to purchase," and where the vote contained all material terms of the contract, identifying the land and the purchase price.  Here, neither the vote nor any of the discussion recorded in the minutes specified any of the material terms that would have to be part of a lease, including rental or the term of the lease.  Plaintiff's failure to discuss or distinguish the case of Simon v. Simon, 35 Mass. App. Ct. 705, 709 (1994), cited by defendants in their original motion, which held that failure of a memorandum to identify the term of the lease is fatal, is telling.

2.    The doctrine of promissory estoppel cannot convert a promise that was not intended to be legally binding to one that binds the promissor, and Count II must therefore be dismissed.

Regardless of whether promissory estoppel can be claimed against the town, plaintiff's failure to allege a complete, enforceable promise is equally fatal to the promissory estoppel claim in Count II. As stated clear by the Supreme Judicial Court in Rhode Island Hospital Trust National Bank v. Varadian, 419 Mass. 841, 850 (1995):

> [A]n action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the elements of a contract other than consideration. . . .  It is a settled principle of contract law that a promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract.

3.    <u>The Complaint Does not state a cause of action for tortious interference against Wright,</u> <u>because she acted exclusively in an official capacity.</u>

   Count III of the Complaint, whether characterized as interference with "contractual" relationship or interference with an "advantageous" relationship, seeks relief exclusively based on Wright's making a motion and vote as a selectmen concerning the disposition of town-owned property. The determination of whether and on what terms to lease town property is committed exclusively to the discretion of the selectmen under Massachusetts General Laws chapter 40, section 3:

     A town . . . may by its selectmen let or lease for not more than
     years, on such terms as the selectmen determine, a public building
     or part thereof.

Under these circumstances, it does not matter whether the complaint is characterized as against Wright in her individual capacity or as a member of the board of selectmen, she is entitled to immunity because her actions were taken in her official capacity. <u>Comeau v. Webster</u>, 881 F. Supp. 2d 177, 191 (2012)  To the extent that there is any exception to such immunity when Wright is taking action that is committed to her discretion, at the very least actual malice must be alleged. <u>Id.</u> Despite Swolinzky's repeated reference to malice and ill will in her memorandum, -- those terms are nowhere used in the complaint – the only allegation for Wright's motive is that she wanted to award the lease to another person who was married to someone with whom she had a past employment relationship;[1] there is no averment of ill will towards Swolinzky.  That is not a sufficient allegation of malice to survive dismissal of a complaint based on official action; a spiteful or malignant purpose is necessary.  <u>Wright v. Shriner's Hospital for Crippled Children</u>, 412 Mass. 464, 469 (1992). A desire for personal gain is not enough to satisfy the improper motive requirement. <u>King v. Driscoll</u>, 418 Mass. 576, 587 (1994).

       Defendants,
       By their attorneys,

       _____
       Daniel C. Perry, Esq. (BBO#395680)
       Perry, Hicks, Deshaies and Mello, LLP
       388 County Street, 2nd Floor
       New Bedford, MA 02740
       Tel. No. (508) 996-8291
       Fax No. (508) 997-2637
DATED: January 9, 2014   danperry@perryhicks.net

---

[1] The State Ethics Commission approved town counsel's opinion that the relationship was not disqualifying under the Conflict of Interest Law.  And to the extent that Swolinzky seeks rescission of the vote on conflict of interest grounds, that remedy is only available to the town and only after the State Ethics Commission has found a violation after an adjudicatory proceeding. M.G.L. ch. 269A, § 21(a).



## COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

**SUPERIOR COURT**
No. DUCV2013-00049



*A True Copy Attest:*

*JOSEPH E. SOLLITTO, JR.*
*CLERK OF COURTS*

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

*2/20/14 Allowed Page 18 Copy to 4/14/14 /s/ Bender-Attorney Asst Clerk*

### <u>Joint Motion To Reschedule 12(b)(6) Motion</u>

The parties jointly request that the hearing on the captioned motion presently scheduled for February 26, 2014 be rescheduled on either April 10, 11, or 12 at the convenience of the Court and as reasons therefor state: *Frcdy 2:00 PM*

1. Counsel for the Defendants is otherwise engaged on important family matters out of the Commonwealth from February 20 to March 7, 2014.
2. Counsel for the Plaintiff is otherwise engaged on February 26, 2014 on trial in Bristol County Probate & Family Court, *Malone v. Russo*, No. 08-D-1829-DVI.
3. Counsel for the Plaintiffs will be on vacation from March 4, to March 31, 2014.
4. Counsel for the parties conferred on February 13, 2014 and each is available on April 9, 10, or 11, 2014.

**FILED**
SUPERIOR COURT
COUNTY OF DUKES COUNTY

FEB 18 2014

REC'D
_____ CLERK

WHEREFORE, the Parties jointly and respectfully request that the Court reschedule the captioned motion on either April 9, 10, or 11, 2014 or at such other time convenient to the Court.

Defendants,
By their attorneys,

Daniel C. Perry, Esq. (BBO#395680)
Perry, Hicks, Deshaies and Mello, LLP
388 County Street, 2d Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net

Plaintiff,
By her attorney,

Robert F. Oberkoetter, Esq. (BBO#375450)
Post Office Box 77
Russells Mills, MA 02748
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net



# COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

### First Motion to Amended Complaint For Specific Performance

The Plaintiff moves that the Court permit her to amend her compliant in accordance with the terms of the attached ***First Amended Complaint for Specific Performance***, in short,  by adding a necessary party and new Count 4, the Defendants' unconstitutional taking of Plaintiff's property

By the Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 3753450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

APR 10 2014

REC'D

_____ CLERK

baro@comcast.net

I hereby certify that I have this 31st day of March 2014 served a true copy of the within
Motion to Amend on each other party by delivering it and related papers in hand to the
office of Daniel C. Perry, 388 County Street, New Bedford, MA 02740 in cored with Rule
9(A).

Robert F. Oberkoetter, Esq.



# COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049-A



A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Aquinnah Board of Selectmen
Beverly Wright, individually

### Law Summary & Distinguishing Memorandum In Support Of
### The First Motion to Amend the Complaint For Specific Performance

1. "Standard of review. In reviewing a motion to dismiss under rule 12(b(1) or (6), we accept the factual allegations in the plaintiff's complaint, as well as any favorable inferences reasonable drawn from them, as true." <u>Sullivan v. Chief Justice for Admin. And Management of Trial Court</u>, 448 Mass. 15 (2006)

2. All essential lease terms are replete in the record: fixed duration, price, precise leasehold description; there are five (5) memoranda in full satisfaction of the statute of frauds: (1) the video tape of the Board meeting of January 8, 2013; the January 8 minutes approved by the board on January 22, 2013; the tape transcription of the January 22, 2013 meeting of the board; the January 22, 2013 minutes approved on February 5, 2013.

3. The January 22, 2013 minutes form the contract and the transcript of the meeting contain all essential terms of the contract. Price, $450, January 22, 2013 transcript, p. 10, LL 20-22; duration, 5 years, transcript, p. 15, L 11; leasehold description, transcript, p. 14, LL 6-24 Therefore, nothing was left to be done with the sole exception of the simple passage of time, simply because Wendy was

FILED
SUPERIOR COURT
DUKES COUNTY

APR 10 2014

REC'D
CLERK

barred from having two lease lots pursuant to #11, Section II of the Menemsha Creek Agreement between Gay Head and Chilmark: #11. No more than one lot shall be leased to an individual. This is not a lease provision.

4. "In the case of a lease or an agreement to lease, the duration of the leasehold interest is central to that undertaking. It is an essential element in a lease for a term that there be a demise for a period definitely fixed or at least capable of definite ascertainment. The writing offered to satisfy the Statue of Frauds must set forth that central element with reasonable certainty." Simon. All Menemsha leaseholds have the very same duration and price terms. Moreover, these very terms are clearly provided by the Board during their deliberations.  See lease terms in preceding paragraph numbered 3.

5. "A memorandum to satisfy the statute of frauds need not be a formal document intended to serve as a memorandum of the contract; but it must contain terms of the contract agreed upon by the parties, the locus (if an interest in real estate is dealt with), in some circumstances the price…and it must be signed by the party to be charged or by someone authorized to sign on his behalf…Moreover, it is well established that the memorandum need not consist of one document, but may consist of several documents, which, taken together, contain the necessary information." Donahue v. Heritage Property Inv. Trust, Inc. 21 Mass.L.Rptr.488

6. The issue presented here is whether these memoranda sufficiently document the existence of the agreement.  See Welch v. Welch, 74 Mass.Ap-.Ct. 1127 (2009)

7. "Whether the vote of December 22, 1896, was an acceptance of the plaintiff's offer, or was an offer to the plaintiff, it was a sufficient memorandum, under the statute of frauds. The recorded vote of a corporation, or of a committee acting upon a subject over which the committee has power, is a sufficient memorandum." McManus v. City of Boston, 171 Mass. 152 (1898). Here, no committee is involved and the vote,  after two separate Board meetings on January 8, 2013 and January 22, 2013,  was unanimous. "The vote became a part of the contract with him… the vote itself imports a contract of [lease] by its own terms, and it must, we think, be construed as a binding agreement…" Id.

8. In <u>Ridgeley Management Corp. v. Planning Board of Gosnold</u>, 82 Mass.App.Ct. 793 (2012), Associate Justice Sikora wrote: "Finally, we must respect the deeply rooted rule and policy prohibiting the estoppel of a governmental body's performance of its public health, safety, and welfare duties…The courts cannot estop the conduct of a governmental officer or agency, as they might a private actor, because the public interest in the lawful work of the governmental actor overrides the unfairness or injury to the private complainant."

Here, we have a corrupt governmental actor, Beverly Wright, engaged in unlawful work on behalf of the private, individual welfare of her employer's husband. The "bad motive" referred to by Associate Justice Sikora is ablaze on the billboard of Res Ipsa Loquitor. This case is not about the sort of bad faith alluded to by Justice Sikora, but rather about the abject disregard of the <u>public</u> welfare in favor of the <u>private</u> welfare of just one individual, the governmental actor's boss's husband. The conflict could not be more manifest. Accordingly, since the complaint alleges corruption, or bad motive, estoppel should apply in this case of first impression.

9. "The theory of promissory estoppel, as embodied in the Restatement of Contracts Section 90 (1932), permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise…Attention is to be focused upon the reasonableness of that reliance."<u>Loranger Construction Corporation v. E.F. Hauserman Company</u>, 6 Mass.App.Ct. 152.

10. After 14 years of developing her business, and following two publically noticed meeting of the Board of Selectmen culminating in the promise of a new lease commencing on July 1, 2013 with fresh lot lines establishing retention of the shed from which  she was conducting her business for the preceding 7 years, Wendy purchased  the shed for $30,000. The reasonableness of her reliance is demonstrated by the formality of the two Board meetings, the multiple memoranda of her contract with the Board, and the rapidly approaching summer

season. These matters reasonably induced Wendy to purchase the shed and to forbear from making plans to move it.

### Nothing Left to Be Done

11. The Board's contention seems to be that notwithstanding the plain content of the Board's meetings of January 8 and January 22, 2013 and their unanimous votes granting a new lease to Wendy, and despite the multiple memoranda setting forth all necessary leasehold terms, and notwithstanding Wendy's having entered into a contract to purchase the shed for $30,000, there is no enforceable agreement for the sole reason that the Board has not executed the lease. This contention ignores the realities of the multiple memoranda, namely the contract, and Wendy's reliance.

12. By February 5, 2013 when the minutes of the January 22, 2013 meeting were approved, also unanimously, "everything necessary to the creation of a contract, as distinguished from its performance, had occurred. All that remained to be done was for the defendant to perform what it had agreed to perform." Whiting v. Com., 370 Mass. 664 (1976) The implied contention is that at any time up until June 30, 2013, the Board had the unilateral right to "change its mind, rescind the vote, as it purported to do, and call the whole deal off, in which event the plaintiff would be without enforceable right or remedy" [Id] is absurd and illogical. The Board "reserved no such right to cancel or rescind the deal in any of the documents" [Id] of record "and no such right is stated or implied in the applicable statutes". [Id].

13. Moreover, "(a) contract made by a vote of a town cannot be rescinded by the town, by a vote at a subsequent meeting, without the consent of the other party." Allen v. Inhabitants of Taunton, 19 Pick. 485 (1837). Having no such consent from Wendy, the rescission of April 23, 2013 is a nullity.

### Beverly Wright Has No Municipal Immunity

14. Wright's blatant rescission had nothing to do with any discretionary act concerning the <u>public</u> welfare, but rather, her motive was entirely improper because it was intended for the exclusive private welfare of just one individual, her employer's husband. "Massachusetts Tort Claims Act's discretionary function exception to governmental liability is narrow, providing immunity only for discretionary conduct that involves policy making or planning." <u>Comeau v. Town of Webster</u>, Mass., 881 F.Supp.2d 177 (2012). Here, on the one hand, there are plain memoranda in satisfaction of the statute of frauds documenting a complete contract with nothing left to be done. On the other hand, even if the Court were to move to another count, "[u]nder Massachusetts law, the notable difference between the torts of intentional interference with contractual relations and intentional interference with an advantageous business relationship is the existence of a contract; to recover for interference with advantageous business relations, the plaintiff need not prove a binding contract, but he must show a probable future business relationship from which there is a reasonable expectancy of financial benefit." Id.

15. "Under Massachusetts law, the improper motive required by the torts of intentional interference with contractual relations and intentional interference with an advantageous business relationship is actual malice, a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Id. No legitimate municipal interest exists where a contract, the subject of two Board meetings culminating in unanimous votes, is rescinded with no reason other than to benefit the husband of Beverly Wright's employer. "[I]f (Beverly Wright) acts from purely personal motives in no way connected with (Aquinnah's) interests, [s]he is considered in the ordinary course to have departed from h(er) employment, and immunity is not available. M.G.L.A. c. 258, Section 10(c). " <u>Comeau.</u>

16. Each element of the torts is alleged in the complaint. "To state such a claim, Plaintiffs must allege four elements: (1) the existence of a contract or a business relationship with contemplated economic benefit; (2) the defendant's knowledge of the contract or business relationship; (3) the defendant's intentional

interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages." Id.

17. The complaint's paragraphs 13, 14, 19, 21 and 24 allege the existence of a contract or business relationship with contemplated economic benefit;. Paragraphs 13, 19, 21 and 24 allege the defendant's knowledge of a contract or business relationship. Paragraphs 17, 18, 24, and 25 describe the interference and improper motive, and paragraph 20 states damages.

18. "Usual rule for damages in a breach of contract case is that the injured party should be put in the position that would have in had the contract been performed…And the award of expectancy damages in breach of contract action may include lost profits." Situation Management Systems, Inc. v. Malouf, Inc., 430 Mass. 875 (2000).

19. "Determination of whether there were material terms yet to be negotiated between the parties, so that enforceable contract did not exist, is generally reserved for the jury." Situation Management Systems, Inc.

20. The facts stated in paragraph 17 and the acts of Beverly Wright described in paragraphs 24, 25 and 26 are clearly stated to be, or implied to be, "outside the scope of her authority, or, that (s)he acted in bad faith or with malice or corruption." Comeau.

21. Vernon Welch is added as a necessary party pursuant to G. L. Ch. 79 Sections 22 and 27.

22. The amended compliant averring an unconstitutional taking meets the time standards of G. L. Ch. 79, Section 18..

23. Compounding the Board's capricious and unlawful behavior is their subsequent unconstitutional taking of the shed without notice or compensation to Wendy on December 3, 2013. Please see paragraphs 29 – 42 of the First Amended Complaint for Specific Performance.

24. Flailing continued on February 5, 2014 when the Board used a lapsed lease provision to take possession of the shed, at a time it actually knew that Wendy's application to the Planning Board was pending. Please see paragraph 41 of the First Amended Complaint.

For the Plaintiff,

Robert F. Oberkoetter, Esq.
BBO #375450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108

baro@comcast.net

I certify that I have this 31st day of March 2014 served each other party with a true copy of the within Law Summary and Distinguishing Memorandum on each other party by in hand deliver to Daniel C. Perry, counsel for the Defendants.

Robert F. Oberkoetter, Esq.



# COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

## DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST MOTION TO AMEND COMPLAINT

Defendants, Beverly Wright, Spencer Booker and James Newman, hereby respond to the motion of Wendy Swolinzky to amend the complaint.

Defendants request that the Court strike paragraphs 1 through 20 of plaintiffs "Law Summary & Distinguishing Memorandum in Support of the First Motion to Amend the Complaint for Specific Performance." The first twenty paragraphs of plaintiff's memorandum are unrelated to the request to amend the complaint, and make no mention of the new paragraphs of the complaint. Rather, that portion of the memorandum is a transparent attempt to supplement plaintiff's original opposition to the motion to dismiss the complaint, which motion is pending before the Court and scheduled to be argued on April 11, 2014, and in particular, to sur-reply to defendants' reply memorandum filed on January 9, 2014, pursuant to leave of this Court granted on December 31, 2013. Superior Court Rule 9A(a)(3) specifies the circumstances under which sur-reply memoranda may be filed, and states:

> In view of the limitations upon a reply memorandum, a sur-reply is strongly discouraged and may not be filed without leave of court sought within 5 days of service of the reply.

Plaintiff having failed to request or secure leave of court to file a sur-reply memorandum in accordance with Rule 9A, paragraphs 1 through 20 should be stricken.

Plaintiff does not require leave of court to amend the complaint. Rule 15(a) permits plaintiff to amend his pleading once as a matter of right before a responsive pleading is served,

and prior to entry of a judgment of dismissal. Defendants' pending motion to dismiss is not considered a responsive pleading. See Reporters Notes to Massachusetts Rule of Civil Procedure Rule 15, third paragraph, and Massachusetts Rule of Civil Procedure 7(a). Plaintiff may therefore serve the amended complaint without leave of court.

Defendants,
By their attorney,

Daniel C. Perry, Esq. (BBO # 395680)
Perry, Hicks, Deshaies and Mello, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. (508) 996-8291
Fax (508) 997-2637
danperry@perryhicks.net

DATED: April 3, 2014

## CERTIFICATE OF SERVICE

I, Daniel C. Perry, hereby certify on this 3rd day of April 2014, under the penalties of perjury that an original and a true copy of the foregoing **Defendants' Response to Plaintiff's First Motion to Amend Complaint** was served upon the Plaintiff by mailing same first-class mail, postage prepaid to her attorney:

Robert F. Oberkoetter, Esq.
P.O. Box 77
Russells Mills, MA 02714

and by e-mail to: baro@comcast.net

Daniel C. Perry, Esq., BBO #395680
Perry, Hicks, Deshaies and Mello, LLP

(19)

# COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

**SUPERIOR COURT**
No. DUCV2013-00049



Wendy Swolinzky
D/B/A *BookaBoat*


        v.


Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually
Vernon Welch, individually

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

APR 10 2014

REC'D

CLERK

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

### <u>Plaintiff's Opposition To Defendants' Request To Strike</u>

1. The Defendants' sole  response to Plaintiff's first motion to amend complaint and related motions   is an entirely misplaced analysis of rules 15(a) and 9(A) culminating is a request to strike portions of a memorandum of law.

2. The Defendants do not object to the amended complaint nor do they object to the motion to consolidate the amended complaint for contemporaneous hearing of the 12(b)(6) scheduled for April 11, 2014.

3. There is nothing extant in the jurisprudence of the Commonwealth rendering R. 15(a) the *exclusive* method by which a complaint may be amended.  Indeed, the rule itself employs the term "may", which provides the moving party with an election.

4. Rule 9(A)(a)(1) employs the term "shall" – "A moving party shall serve with the motion a separate memorandum…"

5. The Plaintiff's Law Summary and Distinguishing Memorandum was served in compliance with Rule 9(A)(a)(1) in support of, and justification for, the content of the amended complaint.

6. Defendants' discomfiture about the content of a memorandum of law is no basis for striking portions of it for the strained, spurious and entirely misplaced reasons cited by the Defendants.

7. Moreover and finally, it is odd indeed that Defendants' counsel wrote on January 17, 2014 about filing a sur-reply: "You may indicate that I have no objection". Therefore, the current change in direction has only to do with the content of the memorandum, which so obviously and amply supports denial of the 12(b)(6).

By the Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 3753450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

I hereby certify that I have this 7th day of April 2014 served a true copy of the within Plaintiff's Opposition To Defendants' Request to Strike on each other party by first class mail to the office of Daniel C. Perry, 388 County Street, New Bedford, MA 02740.

Robert F. Oberkoetter, Esq.



## COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

**SUPERIOR COURT**
No. DUCV2013-00049

A True Copy
Attest:

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually



JOSEPHE E. SOILLITO, JR.
CLERK OF COURTS
FILE
SUPERIOR COURT
COUNTY OF DUKES COUNTY
APR 1
REC'D

### Motion To Consolidate Plaintiff's Motion To Amend Complaint with Defendants' 12(b)(6) Hearing Scheduled For Hearing on April 11, 2014

The Plaintiff moves that the Court permit her to consolidate her First Motion To Amend Complaint with Defendants' 12(b)(6) motion scheduled for hearing on April 11, 2014 and respectfully request that both motions be heard simultaneously.

By the Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 3753450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

I hereby certify that I have this 31st day of March 2014 served a true copy of the within Motion to Consolidate on each other party by delivering it and related papers in hand to the office of Daniel C. Perry, 388 County Street, New Bedford, MA 02740 in cored with Rule 9(A).

Robert F. Oberkoetter, Esq.



# COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049



Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually
Vernon Welch, individually

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

APR 18 20

## 9(A)(b)(2) Package Document List and Affidavit

REC'D

CLERK

(1) First Motion To Amend Complaint;
(2) Motion to Consolidate;
(3) First Amended Complaint For Specific performance
(4) Law Summary and Distinguishing Memorandum;
(5) Defendants' Response to Plaintiff's First Motion Amend Complaint; and
(6) Plaintiff's Opposition to Defendants' Request to Strike.

Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 3753450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

In accord with R. 9(A)(b)(2), I hereby certify that I have this 7th day of April served the above-listed documents on each other party by first class mail to Daniel C. Perry, 388 County Street, New Bedford, MA. 02740-4992.

Robert F. Oberkoetter



## COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049



Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually
Vernon Welch, individually

### First Amended Complaint For Specific Performance

The Parties

1. Plaintiff Wendy Swolinzky, hereinafter "Wendy", resides in Dukes County, P.O.
   Box 634, Aquinnah, MA 02535.

2. For the period of 14 years preceding this complaint, Wendy has single handedly
   conducted an annual/seasonal boat renting business called "BookaBoat" located
   on land owned by the Towns of Aquinnah and Chilmark.

3. Defendants Beverly Wright, Spencer Booker and James Newman each reside in
   Aquinnah, MA and together constitute the Aquinnah Board of Selectmen,
   hereinafter "the Board", which conducts its business in Dukes County at 65 State
   Road, Aquinnah, MA 02535.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

APR 22 2014

REC'D
_____ CLERK

4. Defendant Beverly Wright is the Chair Person of the Board, was formerly the President of the Wampanoag Tribe, is a resident of Dukes County and resides in both Aquinnah, MA 02535 and Charleston, West Virginia 25321.

5. The Defendants know that Wendy's BookaBoat business is seasonal and that a significant volume of her business is conducted annually from late Spring to Labor Day.

6. BookaBoat is a summer boat rental business conducted by Wendy for the last 14 years.

7. As of the start of the 2013 season, Wendy held a valid 5-year lease with the Board. This lease of Lot B commenced on July 1, 2012.

8. For the past seven (7) years, the Board of Aquinnah and the small community of Menemsha lessees were actually aware that Wendy conducted her business from a small office in a shed owned by Camille Rose, which shed rests on Lot A the majority of which real estate lies in the Town of Chilmark.

9. There is a provision in all Board leases of the waterfront Menemsha lots prohibiting shared usage, however the Board had neither employed nor enforced the provision until December 2012, when the provision was used as a reason not to renew the Lease of Lot A, held by Camille Rose.

10. In her preparation for the 2013 season, Wendy appeared at a duly noticed meeting of the Board on January 8, 2013 to present her business plan.  A true and accurate copy of the minutes of that meeting are attached as Exhibit A.

11. On January 8, 2013,  Board member James Newman suggested that there be a switch of lots,  that the Board  permit Wendy  to swap  her existing lease of Lot B for the existing lease of Lot A, which Lot A had been improved in circa. 1920 by a small shack that survived the hurricane of 1938. Lot A's lessee, Camille Rose, had permitted Wendy to use the shack to conduct her business for the last 7 years without disturbance by the Board or anyone else.

12. The Board took Wendy's plan and its own suggestion under advisement until the next Board meeting, January 22, 2013.

13. On January 22, 2013, the Board formally accepted the minutes of the January 8, 2013 meeting and did so unanimously. The January 22, 2013 relevant minutes are as follows:

"Aquinnah Board of Selectmen
Minutes of Meeting 1/22/2013
Aquinnah Town Hall Selectmen's Mtg Room
Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,
Also present: Town Administrator Adam Wilson, Jamie Vanderhoop, Theresa Manning, Chief Randhi Belain, Sgt Paul Manning, Wendy Swolinzky, Vern Welch, Jimmy San Fillippo, Barbara Bassett, Moderator Mike Hebert, June Manning, and Town Accountant Margie Spitz.
-The meeting began at 5:05 pm
-1st on the agenda under old business was a review of minutes from the 1- 8 Selectmen's meeting.
-Jim made a motion to accept the minutes from January 8th. Beverly seconded.
**The Board voted 3 - 0 in favor. The motion passed.**
-Next under old business was a revisit of the proposal from Wendy to have her switch the current Menemsha lot she
leases (Lot B) and take over the lot being vacated by Camille Rose (Lot A). With the change,
Lot A's water frontage would increase to 70' and Lot B's would be reduced to 35'. Spencer stated he was in favor
of the change and just moving the lot lines. Beverly said she just doesn't want a state agency saying down the road
they couldn't make these changes. Wendy said the current site plan was drawn up by Hugh (Taylor) and only the
lot owned by Alfred Vanderhoop had been on the original site plan.
There was discussion about the Board's decision not to renew Camille's lease, which was for one year, expiring
June 30th of this year and the existing shed being sold to Wendy. The lot created would become available to the 1st
person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern.
-Jim made a motion to move the lot line so that Lot B is reduced to 35 feet and increase Lot A to be
69.9 feet. Beverly seconded. There was discussion about notifying Chip about Lot B's availability. Jimmy asked
about the commercial fishing license requirement to have one of the lots.
**The Board voted 3 - 0 in favor. The motion passed.**
-Beverly made a motion that as of July 1st, 2013, the town will enter into a new lease agreement for Wendy to have
Lot A. Jim seconded.
**The Board voted 3 - 0 in favor. The motion passed."**

14. Wendy relied on these unanimous votes granting her substantial contractual rights and following the January 22, 2013 Board meeting, she entered into a written contract with Camille Rose to purchase the shack resting on Lot A for the sum of $30,000.

15. Full faith and credit to a "waiting list" policy of the Board was amply discussed in public during the January 22, 2013 Board Meeting and was repeated in the minutes: "The lot created would become available to the 1st person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern." Vern is Vernon Welch, Berta Welch's husband. "There was discussion about notifying Chip about Lot B's availability."  See minutes of the meeting of January 22, 2013, a full, true and accurate copy of which is memorialized in paragraph 13 above.

16. Neither Wendy nor Camille Rose were on the wait list because each held a valid lease. The Board's concept of the lot swap did nothing to derogate from the wait-list policy. It was specifically addressed and honored during the January 22, 2013 meeting, and since Vernon Welch was present and participating, he was placed on public notice that Lot B was open and available on July 1, 2013 first to Brian Vanderhoop and then to him should Mr. Vanderhoop decline.

17. Defendant Beverly Wright has in the recent past been, and currently is, an employee of Berta Welch and they have known each other and worked together and have been best friends for many years. Beverly Wright's husband is Berta Welch's first cousin.

18. Despite the fact that Beverly Wright actually knew that Wendy had relied on the January 22, 2013 vote and that Board members Booker and Newman admitted during public Board meetings that rescission would likely put Wendy out of business, on April 23, 2013, the Board rescinded the January 22, 2013 unanimous votes by a vote of 2 to 0, member James Newman abstaining, and later awarded a lease of Lot A to Vernon Welch, with full knowledge that Wendy owned the shack.

19. Vernon Welch is domiciled in Dukes Country and resides at 10 Raymonds Hill Lane, Aquinnah. Mr. Welch is married to Berta Welch, Defendant Wright's employer.

## *COUNT ONE*

### Breach of Contract

20. On January 22, 2013, the Board of Selectmen of Aquinnah entered into an agreement with the Plaintiff, whereby the defendant Board agreed to lease to the Plaintiff and the Plaintiff agreed to rent the premises described as follows:   Lot A with frontage increased to 69.9 feet, lease to commence July 1, 2013 at the annual rent of $450.00 for a term of five years. The written minutes of the January 22, 2013 meeting were confirmed unanimously on February 5, 2103. The audio  tape and transcript  of the January 22, 2013 meeting memorialized the agreement as did the confirmation of the written minutes. See paragraph 13.

21. By its rescission vote of April 23, 2013, the Board of Selectmen of Aquinnah breached its agreements with Wendy and damaged her in several particulars, specifically including, but not limited to, the $30,000 she committed in reliance on the January 22, 2013 votes of the Board of Selectmen of Aquinnah, and substantial losses in business during her 2013 Summer season.

## **COUNT TWO**

### Promissory Estoppel

22. Following two properly noticed and constituted public meetings of the Board of Selectmen of Aquinnah, namely the public meetings of January 8 and January 22, 2013, the unanimous votes of the Selectmen constituted promises to Wendy which reasonably induced her actions to enter into binding contracts in preparation for the nearing Summer season of 2013, and also induced Wendy's forbearance from moving a shed, which she purchased following the Board's votes and in addition induced Wendy's forbearance from seeking alternative business sites.

23. Wendy's reliance on the promises defined by the unanimous votes of the Selectmen on January 22, 2013 were not only commercially reasonable, they

were made four months before the start of the Summer season. Her reliance constitutes an independent and sufficient basis for enforcing the promises.

24. Rescission of the January 22, 2013 unanimous votes occurred on April 23, 2013, a mere seven (7) days before the start of the 2013 Summer season.

## COUNT THREE

### Interference With Contractual and Advantageous Business Relationships

25. Defendant Beverly Wright, in concert with third parties, by and with continuing improbity, intentionally interfered with both the contractual and advantageous business relationships between Wendy and the Town of Aquinnah by proactively and wrongfully coordinating a rescission of the Board's unanimous vote of January 22, 2013.

26. On April 23, 2013, Defendant Wright, by her unlawful work as a government actor, achieved her goal of rescission, her baseless reasons on full display during televised recordings of the Board's several public meetings, culminating in the award of Wendy's Lot A lease to Vernon Welch, the spouse of Berta Welch, Defendant Wright's employer as well as Wright's husband's first cousin.

27. On April 23, 2013, the Board wrongfully rescinded its prior vote, breached the covenant of good faith and fair dealing with Wendy, anticipatorily breached the promised lease, refused to execute and deliver to Wendy a formal indenture of lease for the said premises, and at the present time continues to refuse to deliver and execute the lease and has caused Wendy multiple damages.

28. Wendy is ready, willing and able to do and perform all acts and things necessary by her to be done under the terms if the agreement set forth in the public meeting votes of the Aquinnah Board of Selectmen of January 22, 2013.

## COUNT FOUR - Unconstitutional Takings

29. On September 3, 2013, Aquinnah's Board of Selectmen and Aquinnah's Planning Board conducted a joint public meeting for the specific purpose of

discussing Wendy's shack, its removal from Lot A, and the rights of all lessees of Menemsha lots.

30. As of September 3 , 2013, the Board actually knew that Wendy's Planning Board application was not merely pending but also complex and would become the subject of multiple further permit requirements.

31. Sometime shortly before the Board meeting of December 3, 2013, without notice to Wendy or in compliance with Aquinnah's Open Meeting Law, Defendant Wright had sua-sponte asked the Town Administrator to place an item on the meeting agenda  regarding the "status" of Wendy's permit applications.

32. Board member Newman is the Board's representative to the Aquinnah Planning Board and was at all relevant times cognizant of Wendy's applications, which remain pending to this date. He was a proactive participant in the joint meeting of the Select and Planning board on September 3, 2013, paragraph 29 above.

33. No notice pursuant to G. L. Ch. 30A, Section 20(c) was given to Wendy or to the public that a taking of the shed was to be considered.

34. In multiple meetings of the Board of Aquinnah subsequent to the January 22, 2013 votes, the Board acknowledged Wendy's ownership of the shed.

35. At all relevant times, the Board was actually aware that Wendy had purchased the shed  on April 11, 2013 and has a copy of her bill of sale in its Town Office..

36. On  May 28, 2013, the Board's attorney corresponded and acknowledged Wendy's ownership of the shed.

37. On May 28, 2013, the Board's attorney corresponded and suggested that Wendy sell the shed to Vernon Welch.

38.  On December 3, 2013, the Board voted to take the shed as town property and did so without notice to Wendy.

39. In violation of the Open Meeting Law of Massachusetts, G. L. Ch. 30A, Section 20(c) by failing to provide appropriate notice to the public of which Wendy is a

part, the Board lacked the authority to unilaterally amend the agenda from "status" to a "taking".

40. The Board's vote of December 3, 2013 was arbitrary, capricious, and violated Wendy's constitutional right to the free and unfettered access to her personal property by taking that property without notice, and by ignoring the requisite steps to seize personal property in accord with the law of eminent domain.

41. In a wrongful attempt and with the intent to justify or explain the Board's misconduct of December 3, 2013, on February 5, 2014, entirely without legal justification or precedent, the Board employed Section 17 of a lapsed lease with Camille Rose (lapsed as of June 30, 2013)   to take possession of the shed in 2014.

42. On December 3, 2013, in violation of the open meeting law, G. L. Ch. 30A, Section 20(c) by failing to notify anyone in the Town of Aquinnah or in the Town Chilmark by customary posting in advance of a public meeting of any agenda item by which the Board intended to discuss Wendy's property, without notice to Wendy pursuant to her Massachusetts constitutional rights, the Town of voted a public taking, without compensation, of personal property of the Plaintiff, property situated not in the Town of Aquinnah but in the Town of Chilmark.


WHEREFORE, The Plaintiff respectfully requests:

a. That the Defendant Board be required to specifically perform the agreement to lease in accord with the terms of the January 22, 2013 votes;

b. That if specific performance is not granted,   judgment enter in favor of the Plaintiff and against the Defendants, jointly and severally in an amount to be decided by a jury;

c. That the Court declare that Wendy is the lawful owner of the shed;

d. That the Court order the Town of Aquinnah to fairly and reasonably compensate her for the shed, for losses in her business and associated costs; and

e. That payment of costs be made by the Defendants.

By the Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 3753450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

I hereby certify that I have this 31st day of March 2014 served a true copy of the within
Amended Complaint on each other party by delivering it in hand to the office of Daniel
C. Perry, 388 County Street, New Bedford, MA 02740.

Robert F. Oberkoetter, Esq.

(23)

(TO PLAINTIFF'S ATTORNEY:          PLEASE CIRCLE TYPE OF ACTION INVOLVED:-
                                    TORT – MOTOR VEHICLE TORT – CONTRACT –
                                         EQUITABLE RELIEF – OTHER.)

COMMONWEALTH OF MASSACHUSETTS

Dukes County, ss.                       DEPARTMENT OF THE TRIAL COURT
                                        SUPERIOR COURT
                                        CIVIL ACTION
                                        No.  DUCV2013-00049

A True Copy Attest:

JOSEPH E. SOLLITTO, CLERK OF COURTS

                    Wendy Swolinzky
                    D/B/A BookaBoat
                    ──────────────────── , (Plaintiff(s)

                                v.
                    Beverly Wright, Spencer Booker
                    and James Newman, as they , (Defendant(s)
                    are the Aquinnah Board of Selectmen,
                    and Beverly Wright, individually, and
                    Vernon Welch, individually

                           SUMMONS

To the above-named Defendant:

    You are hereby summoned and required to serve upon Robert F. Oberkoetter
attorney, whose address is PO Box 77, Russells Mills, MA* , an answer to the complaint
which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of
the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded
in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of
this court at Edgartown either before service upon plaintiff's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you
may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter
of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    Witness, Barbara J. Rouse           , Esquire, at Edgartown, the_____day of
_____, in the year of our Lord two thousand    and   fourteen

*02714

                    FILED
                SUPERIOR COURT
            COUNTY OF DUKES COUNTY          ──────────────────────
                                            Clerk of Courts

                   APR 28 2014

                     REC'D
            ──────────── CLERK

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer, within 20 days as specified herein and also file the original in the Clerk's office.

NOTES.
1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

**RETURN OF SERVICE**

County of Dukes County, ss.                                            April 28, 2014

    I hereby certify and return that I this day served an attested copy of the within Summons together with a copy of the First Amended Complaint for Specific Performance in this action, upon the within named defendant, Vernon Welch, in the following manner: by leaving at the last and usual place of abode of said defendant, to wit:  10 Raymond's Hill Lane in Aquinnah and by the first class mailing of an attested copy of this Summons to said defendant at 10 Raymond's Hill Lane, Aquinnah, Ma  02535.

Fees:

| | |
|---|---|
| Service, last abode | 20.00 |
| Travel/auto hire | 9.60 |
| Attested copies | 10.00 |
| Return & mailing | 3.50 |
| Total: | 43.10 |

Linda J. Hanover
Deputy Sheriff
County of Dukes County

✳ Spoke with his wife Gorta regarding Summons
(                    , 20    . )
(                         )

SUPERIOR COURT
CIVIL ACTION
NO. _____

Plff.

v.

Dft.

SUMMONS
(Mass. R. Civ. P. 4)

DUKES COUNTY, ss.



# COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

---

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

---

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

## DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR SPECIFIC PERFORMANCE

Defendants Beverly Wright, Spencer Booker and James Newman, as the Board of Selectmen of Aquinnah (the "Board") and defendant Beverly Wright, individually ("Wright"), for their answer to plaintiff's first amended complaint, answer and aver as follows:

### The Parties

1.    Admitted

2.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph.

3.    Admitted.

4.    Wright denies that she is a "resident" of Charleston, West Virginia, although she admits she lives there seasonally.  Otherwise, admitted.

5.    Defendants deny knowledge of the details of plaintiff's business.

6.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph.

7.    Defendants admit that the Board entered into a written lease with plaintiff pertaining to a small lot of waterfront property on Menemsha Creek known as Lot B, with a term of July 1, 2012 through June 30, 2017.

8.    Defendants admit that they became aware over time that plaintiff was either subletting or sharing usage of so-called Lot A with Camille Rose in violation of Rose's lease and the

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

APR 3 0 2014

_____ CLERK

1

terms and conditions of the deed from the Commonwealth of Massachusetts conveying the property to the Town of Aquinnah, and that a portion of Lot A is in Chilmark. Otherwise, denied.

9.    Defendants admit that in compliance with the provisions of Chapter 486 of the Acts of 1965, and the terms and conditions of the deed from the Commonwealth of Massachusetts conveying the premises in question, recent leases of the so-called Menemsha Creek lots have contained provisions prohibiting subletting or shared usage, and that the Town did not renew a lease with Camille Rose for Lot A of the Menemsha Creek lots, because she was unable to demonstrate that she intended to use the property for purposes permitted by that deed. Otherwise, denied.

10.    Defendants admit that plaintiff appeared before the Board to discuss possible lease arrangements, and that Exhibit A is a copy of the minutes of that meeting. Otherwise, denied.

11.    Defendants admit that the Board and plaintiff discussed a possible switch of leased lots, that plaintiff requested reconfiguration of those lots, and that plaintiff has used the shack on lot A by arrangement with its lessee Camille Rose in violation of the terms of Rose's lease and the conditions under which the Town acquired the Menemsha Creek lots. Otherwise, denied.

12.    Defendants admit that the Board decided to continue its consideration of the proposals made by plaintiff at the January 8, 2013 meeting until its January 22, 2013 meeting.

13.    Defendants admit that paragraph 13 is an accurate excerpt from the minutes of the Board's meeting on January 22, 2013.

14.    Defendants deny that plaintiff relied on the actions taken by the Board at is January 22, 2013 meeting and lack knowledge or information sufficient to form a belief as to the truth of the remaining averments.

15.    Defendants admit that the wait list policy was discussed at the January 22, 2013 meeting. Otherwise, denied.

16.    Defendants admit that neither plaintiff nor Camille Rose were on the "wait list," and that the Board discussed application of its "wait list" policy to the proposed swap of lots with plaintiff during the January 22, 2013 meeting. Otherwise, denied.

17.    Defendants admit that Wright has worked part-time on a seasonal basis for a business in which Berta Welch is a partner for many years, and that her husband is a first cousin of Berta Welch, and that they are social friends.

18.    Defendants admit that the Board rescinded its vote of January 22, 2013, and that it later awarded a lease of Lot A to Vernon Welch. Defendants deny that plaintiff owns the "shack" and deny that their vote would likely put plaintiff out of business. Further answering, defendants aver that plaintiff continued her business without interruption after the vote.

19.   Admitted.

20.   Denied.

21.   Denied.

22.   Denied.

23.   Denied.

24.   Denied.

25.   Denied.

26.   Denied.

27.   Denied.

28.   Defendants deny that an agreement was created by the vote of January 22, 2013, and lack knowledge or information sufficient to form a belief as to what plaintiff is ready, willing and able to do and perform.

29.   Defendants admit that the Board meet with the Planning Board Plan Review Committee on September 3, 2013 and discussed the feasibility of removal of the shed from Lot A, and the question of ownership of the shed. Otherwise, denied.

30.   Defendants admit that removal of the shed from Lot A is a procedurally complex process, and perhaps impossible. Otherwise, denied.

31.   Defendants admit that the Board considered the issue of the status of the shed at its meeting of December 3, 2013. Otherwise, denied.

32.   Defendants admit that Newman sits on the "Planning Board Plan Review Committee," an advisory board that reports to the Planning Board and participated in the September 3, 2013 meeting. Defendants lack knowledge or information sufficient to form a belief as to the truth of the averments concerning "Wendy's permit applications," which are not further identified or explained.

33.   Defendants deny that there has been a "taking" of the shed, or that such an action was considered, and deny that Chapter 30A, section 20(c) requires notice of a public meeting to be given to individuals or that the agenda included in the public notice posted announcing the meeting limits the matters that may be discussed by the Board.

34.   Denied.

35.   Defendants admit that plaintiff purported to purchase the shed, but deny that plaintiff now holds or ever held any ownership interest therein.

36.     Denied.

37.     Denied.

38.     Defendants admit that on December 3, 2013, the Town exercised its express right, under section 17 of its lease with Camille Rose, to assume control over whatever property interest she had in the shed on Lot A because of Rose's failure to renew the same after termination of its lease.  Otherwise, denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.


## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim on which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the statute of frauds.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff is estopped by her wrongful conduct from recovery for the matters averred in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's proposed lease of the property would violate the provisions of Chapter 485 of the Acts of 1965, and is therefore illegal.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing to assert claims under Massachusetts General Laws chapter 30A, section 20, because she has not complied with the provisions of Massachusetts General Laws chapter 30A, section 23(e).

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff has unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff has not been denied any right to which she had a legitimate expectation and therefor has no claim for a taking.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by applicable statutes of limitation.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by waiver.

WHEREFORE, Defendants pray that plaintiff take nothing by her complaint, that the Complaint be dismissed, and that defendants be awarded their costs and attorney's fees pursuant to General Laws chapter 231, section 6F.

Defendants,
By their attorneys,

Daniel C. Perry, Esq. (BBO#395680)
Perry, Hicks and Deshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net

DATED:  April 29, 2014

### CERTIFICATE OF SERVICE

I, Daniel C. Perry, hereby certify on this 29th day of April, 2014, under the penalties of perjury that a true copy of the foregoing **Defendants' Answer to Plaintiff's First Amended Complaint for Specific Performance** was served upon all parties/counsel of record by mailing same first-class mail, postage prepaid to the following:
Robert F. Oberkoetter, Esq.
P.O. Box 77
Russells Mills, MA 02714

Daniel C. Perry, Esq.

5



COMMONWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT DEPARTMENT
C.A. DUCV2013-00049

```
WENDY SWOLINSKY                          )
DBA BOOKABOAT,                           )
                    Plaintiff            )
v.                                       )
                                         )
BEVERLY WRIGHT, SPENCER BOOKER AND       )
JAMES NEWMAN, AS THEY ARE THE            )
AQUINNAH BOARD OF SELECTMEN, AND         )
BEVERLY WRIGHT, INDIVIDUALLY,            )
VERNON WELCH, INDIVIDUALL,               )
                    Defendants           )
```

**ANSWER, COUNTERCLAIM AND CROSS CLAIM OF VERNON WELCH
TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR SPECIFIC PERFORMANCE**

The Defendant Vernon Welch ("Welch") hereby answers the

Complaint of the Plaintiff as follows

1.   Welch is without knowledge or information sufficient to
form a belief as to the truth of the allegations contained in
paragraph 1.

2.   Welch is without knowledge or information sufficient to
form a belief as to the truth of the allegations contained in
paragraph 2.

3.   Welch is without knowledge or information sufficient to
form a belief as to the truth of the allegations contained in
paragraph 3.

4.   Admit.

**FILED**
SUPERIOR COURT
COUNTY OF DUKES COUNTY

MAY 23 2014

REC'D
_____ CLERK

1

5.    Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5.

6.    Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6.

7.    Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

8.    Welch admits that Plaintiff used the shed that rests on Lot A.  As to the remaining allegations contained in paragraph 8, Welch is without knowledge or information sufficient to form a belief as to their truth.

9.    Welch admits that there a provision in Menemsha lot leases that prevents shared usage, as to the remaining allegations contained in paragraph 9, Welch is without knowledge or information sufficient to form a belief as to their truth.

10.  Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10.

11.  Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.

12.  Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12.

13.  Welch states that upon information and belief, and to the extent the minutes accurately reflect the meeting, the Aquinnah Selectmen minutes speak for themselves, and otherwise Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13.

14.  Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14.

15.  Welch admits that he is married to Berta Welch.  Further Answering, Welch states that upon information and belief, and to the extent the minutes accurately reflect the meeting, the Aquinnah Selectmen minutes speak for themselves, and otherwise Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15.

16.  Welch admits that he was second on the wait list behind Brian Vanderhoop for a Menemsha lot, as for the remaining allegations contained in paragraph 16, they contain legal conclusions that require no response and to the extent that paragraph 16 alleges facts, Welch is without information sufficient to form a belief as to their truth.

17.   Welch admits that his wife is related to Beverly Wright. Further answering Welch states that Aquinnah is a small community and many are friends and/or relatives.

18.   Welch admits that he was awarded the lease for Lot A.  As to the remaining allegations contained in Paragraph 18 Welch is without knowledge or information sufficient to form a belief as to their truth.

19.   Admitted.

20.   Welch states that upon information and belief, and to the extent the minutes accurately reflect the meeting, the Aquinnah Selectmen minutes speak for themselves, and otherwise Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

21.   Paragraph 21 contains legal argument and conclusions of law that require no response.  To the extent that Paragraph 21 alleges facts, they are denied.

22.   Paragraph 22 contains legal argument and conclusions of law that require no response.  To the extent that Paragraph 21 alleges facts, they are denied.

23.   Paragraph 23 contains legal argument and conclusions of law that require no response.  To the extent that Paragraph 21 alleges facts, they are denied.

24.  Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.

25.  Paragraph 23 contains legal argument and conclusions of law that require no response.  To the extent that Paragraph 25 alleges facts, Welch is without knowledge or information sufficient to form a belief as to their truth.

26.  Welch admits that he is married to Berta Welch and she is related to Beverly Wright but denies any implication Plaintiff may suggest.  The remaining allegations contained in paragraph 26 contains legal argument and conclusions of law that require no response and to the extent that Paragraph 26 alleges facts, they are denied.

27.  Paragraph 27 contains legal argument and conclusions of law that require no response.  To the extent that Paragraph 27 alleges facts, they are denied.

28.  Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28.

29.  Upon information and belief the Board of Selectmen held a meeting on September 3, 2013.  Welch is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 29.

30.   Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

31.   Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

32.   Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32.

33.   Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33.

34.   Denied.

35.   Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35.

36.   Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36.

37.   Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

38.  Welch is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38.

39.  Paragraph 39 contains legal argument and conclusions of law that require no response.  To the extent that Paragraph 39 alleges facts, Welch is without knowledge or information sufficient to form a belief as to their truth.

40.  Paragraph 40 contains legal argument and conclusions of law that require no response.  To the extent that Paragraph 40 alleges facts, Welch is without knowledge or information sufficient to form a belief as to their truth.

41.  Paragraph 41 contains legal argument and conclusions of law that require no response.  To the extent that Paragraph 41 alleges facts, Welch is without knowledge or information sufficient to form a belief as to their truth.

42.  Paragraph 42 contains legal argument and conclusions of law that require no response.  To the extent that Paragraph 42 alleges facts, Welch is without knowledge or information sufficient to form a belief as to their truth.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The answers contained herein are incorporated by reference as an affirmative defense

### SECOND DEFENSE

The Plaintiff's action is barred under doctrines of waiver and/or laches

### THIRD DEFENSE

The Plaintiff's action is barred under the equitable doctrine of estoppel

### FOURTH DEFENSE

Plaintiff commences this action with unclean hands

### FIFTH DEFENSE

Plaintiff's action or inaction contributed to cause, in whole or in part, the damage alleged thereby barring recovery in whole or in part, or subject to dimunition.

### SIXTH DEFENSE

The Plaintiff's claims are barred in whole or in part insofar as the Plaintiff has failed to mitigate the alleged costs, damages and expenses for which the Plaintiff seeks to recover.

### SEVENTH DEFENSE

The Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

### EIGHTH DEFENSE

This action was not brought in accordance with the applicable statute of limitations

## NINTH DEFENSE

The Defendant reserves the right to raise additional affirmative defenses identified in this matter

## TENTH DEFENSE

The Plaintiff has failed to state a claim for which relief can be granted

## ELEVENTH DEFENSE

Any reliance by Plaintiff was not reasonable

## TWELFTH DEFENSE

Any agreement is unenforceable for want of certainty and definiteness

## THIRTEENTH DEFENSE

Agreements between the parties lack Consideration

## FOURTEENTH DEFENSE

Agreement between the parties is impractical or impossible in its performance

## FIFTEENTH DEFENSE

The Agreement between the parties is void for illegality

## SIXTEENTH DEFENSE

The Plaintiff assumed the risk of her actions.

## SEVENTEENTH DEFENSE

The Plaintiffs claims are barred by the statute of frauds

## EIGHTEENTH DEFENSE

The Plaintiff assumed the risk of her actions and assumptions

## COUNTERCLAIM

Defendant in the above action hereby asserts the following claim, as a counterclaim, against the plaintiff, Wendy Swolinsky (**"Swolinsky"**) in the above action:

1.    The Plaintiff-in-Counterclaim is Vernon Welch (**"Welch"**) and the Defendant-in-Counterclaim is Wendy Swolinsky.

2.    Welch resides at 10 Raymonds Hill Lane, Aquinnah.

3.    Upon information and belief, Swolinsky resides in Aquinnah, Massachusetts.

4.    Sometime in the year 2000 Welch placed his name on a waiting list maintained by the Aquinnah Board of Selectmen (**"Aquinnah Selectmen"**) for a lease to use a Menemsha lot from which to conduct his fishing business.

5.    Swolinsky possessed, and upon information and belief continues to possess, a lease for a Menemsha lot identified as Lot B (**"Lot B"**) on a "Plan of Lease Lots Gay Head, Menemsha, Mass." (the **"Menemsha Plan"** annexed hereto as Exhibit 1).   Lot B is, upon information and belief, located in the Town of Chilmark, not Aquinnah.

6.    Swolinsky has been operating a boat rental business from Lot B and the adjacent Lot A, shown on the Menemsha Plan (**"Lot A"**), for several years.

7.    Upon information and belief, Swolinsky rented Lot A from
Camille A. Rose ("**Rose**"), Personal Representative of the Estate
of Alfred A. Vanderhoop, while concurrently leasing the adjacent
Lot B.

8.    Sometime in December 2012 the Town of Aquinnah did not
renew Rose's lease for Lot A because she had been in breach of
its terms by failing to conduct a commercial fishing endeavor
and by subletting the Lot A to Swolinsky to operate a boat
rental business.

9.    In January, 2013 Swolinsky requested that the Aquinnah
Board of Selectmen allow her to replace her lease for Lot B,
with a lease for Lot A, and further that the lot lines between
Lot A and Lot B be adjusted so she could take some of the
frontage from Lot B with her over to Lot A, making Lot A much
bigger than Lot B.

10.   Upon information and belief, shortly after Swolinsky's
request to the Aquinnah Board of Selectmen, she promised Rose
$30,000.00 for the Shack located on Lot A.

11.   Swolinsky executed a promissory note with Rose before
executing a lease for Lot A; without insuring that the Aquinnah
Selectmen would or could lawfully replace her current lease with
a new lease for Lot A; without verifying that the Board of
Selectmen would or could lawfully adjust lot lines between lots
A and B, and; upon information and belief, when Swolinsky knew

that Lot A was already involved in a Dukes County Probate Court dispute involving the Estate of Alfred A. Vanderhoop.

12.   On or about July 1,2013 Welch was awarded the a lease for Lot A by the Aquinnah Board of Selectmen.  Welch executed a lease with Aquinnah, paid Aquinnah rent for Lot A, and procured insurance for Lot A.

13.   Swolinsky knew of Welch's lease for Lot A.

14.   Thereafter Swolinsky failed and refused to deliver up Lot A to Welch or to the Town of Aquinnah and prevented Welch from entering upon Lot A to conduct his fishing business while continuing to operate her boat rental business from both Lot A and Lot B, for profit.

15.   Swolinsky, asserting a variety of reasons and claims has prevented the Town of Aquinnah from delivering possession of Lot A to Welch

<div align="center">

**COUNT I**
**INTERFERENCE WITH ADVANTAGEOUS RELATIONS**

</div>

16.   Welch incorporates by reference the allegations contained in paragraphs 1 - 15 as if fully set forth herein.

17.   Welch has a fully executed, valid and enforceable lease with the Town of Aquinnah for Lot A to operate an income producing commercial fishing business.

18.   Swolinsky had knowledge of this contractual relationship.

19.  Swolinsky intentionally and maliciously has caused the Town of Aquinnah to breach the lease for Lot A, while she continued to accumulate a financial advantage by using both Lot A and Lot B.

20.  Swolinsky's conduct is wrongful and improper.

21.  Welch has been harmed by being prevented from enjoying the benefit of the Lot A lease and continues to suffer losses of fees, costs and profits as a direct result of Swolinsky's interference with Welch's lease with the Town of Aquinnah.

## COUNT II
### CONVERSION

22.  Welch incorporates by reference the allegations contained in paragraphs 1 - 21 as if fully set forth herein.

23.  Swolinsky has converted Lot A for her own use and financial gain while depriving Welch of his lawful use thereof.

24.  Swolinsky's actions have caused Welch loss of the use of Lot A and the economic advantages thereof.

## COUNT III.
### TRESPASS

25.  Welch incorporates by reference the allegations contained in paragraphs 1 - 24 as if fully set forth herein.

26.  Welch has lawful possession of Lot A pursuant to a valid and enforceable lease.

27.  Throughout 2013 Swolinsky without lawful authority, entered upon Lot A and committed a trespass thereon.

Wherefore, Welch respectfully requests that this Court:

1.    Enter Judgment in his favor on his counterclaim against Swolinsky for all damages including consequential and expectation damages, together with interest and costs.
2.    Enjoin Swolinsky from entering upon Lot A and from preventing Welch from entering upon Lot A.

<div align="center">

**CROSS CLAIM**
**AGAINST Beverly Wright, Spencer Booker, and James Newman in their capacity as Selectmen for the Town of Aquinnah**

</div>

Welch hereby cross claims against Aquinnah Board of Selectmen for all or part of the claim asserted against him by Swolinsky and as follows:

1.    The Plaintiff-in-Crossclaim is Vernon Welch ("Welch").

2.    Welch resides at 10 Raymonds Hill Lane, Aquinnah.

3.    The Defendants-in-Cross claim are Beverly Wright, Spencer Booker, and James Newman in their capacities as members of the Aquinnah Board of Selectmen.(the **"Selectmen"**)

4.    Sometime in the year 2000 Welch placed his name on a waiting list maintained by the Aquinnah Board of Selectmen (**"Aquinnah Selectmen"**) for a lease to use a Menemsha lot to conduct his fishing business from.

5.    Swolinsky possessed, and upon information and belief continues to possess, a lease for a Menemsha lot identified as Lot B (**"Lot B"**) on a "Plan of Lease Lots Gay Head, Menemsha, Mass." (the **"Menemsha Plan"** annexed hereto as Exhibit 1).  Lot B

is, upon information and belief, located in the Town of Chilmark, not Aquinnah.

6.   Swolinsky has been operating a boat rental business from Lot B and the adjacent Lot A, shown on the Menemsha Plan ("**Lot A**"), for several years.

7.   Upon information and belief, Swolinsky rented Lot A from Camille A. Rose ("**Rose**"), Personal Representative of the Estate of Alfred A. Vanderhoop, while concurrently leasing the adjacent Lot B.

8.   Sometime in December 2012 the Town of Aquinnah did not renew Rose's lease for Lot A because she had been in breach of its terms by failing to conduct a commercial fishing endeavor and by subletting the Lot A to Swolinsky to operate a boat rental business.

9.   In January, 2013 Swolinsky requested that the Aquinnah Board of Selectmen allow her to replace her lease for Lot B, with a lease for Lot A, and further that the lot lines between Lot A and Lot B be adjusted so she could take some of the frontage from Lot B with her over to Lot A, making Lot A much bigger than Lot B.

10.  Upon information and belief, shortly after Swolinsky's request to the Aquinnah Board of Selectmen, she promised Rose $30,000.00 for the Shack located on Lot A.

11.   Swolinsky executed a promissory note with Rose before executing a lease for Lot A; without insuring that the Aquinnah Selectmen would or could lawfully replace her current lease with a new lease for Lot A; without verifying that the Board of Selectmen would or could lawfully adjust lot lines between lots A and B, and; upon information and belief, when Swolinsky knew that Lot A was already involved in a Dukes County Probate Court dispute involving the Estate of Alfred A. Vanderhoop.

12.   On or about July 1, 2013 Welch was awarded the a lease for Lot A by the Aquinnah Board of Selectmen.  Welch executed a lease with Aquinnah, paid Aquinnah rent for Lot A, and procured insurance for Lot A.

13.   The Selectmen executed said lease with Welch for Lot A and have not repudiated same.

## COUNT I
### Breach of the Lease

14.   Welch incorporates by reference the allegations contained in paragraphs 1 - 13 as if fully set forth herein.

15.   In accord with the terms of the lease for Lot A Welch tendered rent for Lot A and secured insurance pursuant to the terms of the lease for Lot A and has requested possession of Lot A, but the Selectmen have failed and refused to deliver up possession.

16.   The Selectmen have breached the Lease with Welch by failing to deliver up access to Lot A, or to eject, evict or oust Swolinsky from Lot A which has prevented Welch from entering upon Lot A to conduct his fishing business for profit.

17.   Welch continues to be harmed and suffer damages as a result of the Selectmen's breach.

<div align="center">

**COUNT II**

**REFORMATION**

</div>

18.   Welch incorporates by reference the allegations contained in paragraphs 1 - 17 as if fully set forth herein.

19.   Welch was duly placed on the Menemsha lot waiting list in 2000.

20.   Welch believing that executing a lease for Lot A would allow possession of Lot A as understood by the parties to said Lease and in reliance thereon, executed a lease for Lot A and was induced to allow his name to be taken off the waiting list for a Menemsha lot lease.

21.   Welch is ready, willing and able to perform pursuant to the terms of the lease but the Selectmen have failed to deliver up possession of Lot A.

21.   Welch requests that the waiting list be reformed so as to place his name in first position on said list.

Wherefore, Welch respectfully requests that this Court:

1.    Enter Judgment in favor on his crossclaim against the Selectmen for all damages including consequential and expectation damages, together with interest and costs.
2.    That the Selectmen be ordered to specifically perform the terms of the lease for Lot A.
3.    That the list be reformed so that Welch is placed in the first position on the Menemsha lot list.

                         Respectfully Submitted
                         Vernon Welch
                         By his attorney



                         Marilyn H. Vukota (BBO#633225)
                         McCarron, Murphy & Vukota, LLP
                         282 Upper Main St, PO Box 1270
                         Edgartown, MA 02539
                         (508) 627-3322
                         MHV@Edgartownlaw.com

Dated:  May 20, 2014



N

MENEMSHA
BASIN

CHILMARK
GAY HEAD

"A"
113 S.F.

"B"
940 S.F.

MENEMSHA
INLET

"C"
577 S.F.

TRAVELLED

ROAD

"D"
609 S.F.

"F"
953 S.F.

"E"
671 S.F.

26.0'

21.7'

GAY HEAD
CHILMARK

PLAN OF LEASE LOTS
GAY HEAD (MENEMSHA) MASS.
SCALE: 1" = 30'    7 JULY 1992
SCHOFIELD, BARBINI & HOEHN INC.
STATE ROAD, VINEYARD HAVEN, MASS.

NORTH
ROAD

M9685

## CERTIFICATE OF SERVICE

I, MARILYN H. VUKOTA, hereby certify that I caused a copy of Defendant, Vernon Welch's Answer, Counterclaim and Cross Claim upon the following via regular mail this 23rd day of May, 2014.

Robert F. Oberkoetter, Esq.
PO Box 77
Russells Mills, MA 02714

Daniel C. Perry, Esq.
Perry, Hicks and Deshaies, LLP
388 County Street
New Bedford, MA 02740

5.23.2014
Date

MARILYN H. VUKOTA



# COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049



Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually
Vernon Welch, individually

## Plaintiff's Answer to Defendant Welch's Counterclaim

1. Admitted. "Swolinsky" is properly spelled Swolinzky.

2. Admitted.

3. Admitted.

4. Plaintiff Swolinzky does not have sufficient information to admit or deny the allegations averred in paragraoph 4 of the counterclaim.

5. Admitted.

6. Admitted.

7. Denied.

8. Denied.

9. Denied. And further answering, it was not Swolinzky but rather Selectman James Newman who first suggested the lot swap by which Lot A would be increased in size. Please see to the minutes of the January 8, 2013 and January 22, 2013 meetings of the Aquinnah

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

MAY 3 0 2014

REC'D
_____CLERK

Board of Selectmen. Defendant Welch present, on January 22, 2013, the Board of Aquinnah voted unanimously to permit the lot swap, the definition of Lot A defined by both the tape of the meeting and the meeting minutes, which were unanimously approved on February 5, 2013.

10. Denied.

11. Denied.

12. Denied.

13. Admitted only that Swolinzky was aware of various actions and omissions of the Aquinnah Board insofar as those acts and omissions illegally provided political favors to defendant Welch, the husband of former selectperson's employer, Berta Welch.

14. Denied.

15. Denied.

16. Admitted and denied as above.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Admitted and denied as above.

23. Denied.

24. Denied.

25. Admitted and denied as above.

26. Denied.

27. Denied.

By the Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 3753450

Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

I hereby certify that I have this 28th day of May 2014 served a true copy of the within **Plaintiff's Answer to Defendant Welch's Counterclaim** on each other party by first class mail to the office of Daniel C. Perry, 388 County Street, New Bedford, MA 02740 and to Marilyn H. Vukota, 282 Upper Main Street, Post Office Box 1270, Edgartown, MA 02539

Robert F. Oberkoetter, Esq.



# COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

SUPERIOR COURT DEPARTMENT
C.A. NO. DUCV2013-00049

WENDY SWOLINZKY, D/B/A BOOKABOAT,  )
    Plaintiff,  )
      )
VS.  )
      )
BEVERLY WRIGHT, SPENCER BOOKER and  )
JAMES NEWMAN, as they are the  )
AQUINNAH BOARD OF SELECTMEN, and  )
BEVERLY WRIGHT, Individually,  )
    Defendants.  )
      )

## NOTICE OF APPEARANCE

    Kindly enter my appearance as counsel for the defendants, Aquinnah Board of Selectmen and Beverly Wright, Individually, in the above-captioned matter.

               The Defendants,
               AQUINNAH BOARD OF SELECTMEN &
               BEVERLY WRIGHT, Individually,
               By their Attorneys,

               PIERCE, DAVIS & PERRITANO, LLP

               John J. Davis, BBO #115890
               90 Canal Street
               Boston, MA 02114
               (617) 350-0950

Dated: June 11, 2014

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

JUN 16 2014

REC'D
_____ CLERK

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of this document was served upon each attorney of record/pro se plaintiff via first class mail/electronic mail/fax/hand delivery.

6/11/14
Date    Attorney



# COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

<table>
<tr><td>

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

</td></tr>
</table>

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURT

## NOTICE OF WITHDRAWAL OF APPEARANCE

Daniel C. Perry, Esq. of Perry, Hicks, Deshaies and Mello, LLP, of 388 County Street, 2nd Floor, New Bedford, MA 02740, hereby withdraws as counsel for the Defendants in the above-captioned matter. Defendants have retained Attorney John Davis to represent them in this action.

Respectfully submitted,

Daniel C. Perry, Esq. (BBO#395680)
Perry, Hicks, Deshaies and Mello, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net

**FILED**
SUPERIOR COURT
COUNTY OF DUKES COUNTY

JUN 23 2014

DATED:  June 10, 2014

REC'D

_____CLERK

1



# COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

**SUPERIOR COURT**
**No. DUCV2013-00049**

Wendy Swolinzky
D/B/A *BookaBoat*

    v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually
Vernon Welch, individually

### Plaintiff's Motion To Determine Insufficiency

The Defendants misconstrue Rule 36.  "The purpose of admissions pursuant to Mass.R.Civ.P.36 is to define and limit the matters in controversy between the parties…The rule promotes both economy and judicial administration. By admitting to facts which will not be disputed at trial, parties are relieved of the cost or proving such facts. More importantly, admissions reduce the time necessary to try the case and may render trial unnecessary if the matter can be resolved by summary judgment."  <u>Cabana v. Board of Directors of the Massachusetts Housing Finance Agency</u>, 399 Mass. 492, 505 N.E. 2d 510

Rule 36 is not a "discovery" rule but rather, a "<u>procedural</u> rule", " the purpose of which is to assist the parties in their preparation for trial by facilitating proof with respect to issues that cannot be eliminated from the case and by narrowing the issues by eliminating those that can be."  <u>Reynolds Aluminum Bldg. Prods. Co. v. Leonard</u>, 395 Mass. At 261;  <u>Houston v. Houston</u>, 64 Mass.App.Ct. 529. Moreover, "any matter conclusively established [under <u>rule 36]</u> is treated as a judicial admission not as an evidentiary admission…Judicial admissions 'conclusively determine an issue [and] they relieve the other party of the necessity of presenting evidence on that issue." <u>General Electric Company v.</u>

COUNTY OF DUKES COUNTY
FILED
JUL 16 2014
REC'D
CLERK

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

7/30/14  filed from the Bench allowed as to #10, all the rest denied, Chin J.

P.Blenski, Secretary
Asst Clerk

Assessors of Lynn, 393 Mass. 591; Liacos, Massachusetts Evidence 275-276 (5th ed. 1981; Houston v. Houston. 64 Mass.App.Ct. 529, at 535.

A discrete examination of the rule itself demonstrates that Aquinnah's repetitive caviling centered on "general statements of law" is inapt, incorrect, and misconstrues the rule.

<div align="center">The Rule</div>

The defendants are obligated by Rule 36 to admit or deny "statements or opinions of fact *or the application of law* to fact". Emphasis supplied.

"A formal agreement as to facts can trim down litigation time in two ways: first, by limiting the number issues to be tried; and second, by reducing the time needed to prove facts necessary to resolve those issues that are actually in dispute…Rule 36, which governs the mechanics for establishing undisputed facts and genuineness of documents, is really not a discovery rule; by its terms it assumes the "discovering" party's knowledge of the facts (or possession of the document) and consequent desire to establish the point cheaply and quickly…failure to respond to a request for admissions is conceptually similar to failure to disclose facts, and will face similar discipline." Massachusetts Practice Series TM Current through the 2008-2009 Pocket Part, Smith & Zobel, 6 Mass. Prac. Rules Practice §36.1 (2d).

In summary, an admission is the far better evidence of a fact because it elevates it from standard pleading and establishes the matter conclusively and obviates trial of it. The Rule is meant to advance the trial and is not "a paper tiger". Reynolds, at 261.

As to Aquinnah's rhetorical perspiration about "general statements of law" the Board attempts by their caviling to incorrectly and wrongfully sidestep its rule based obligation. The Selectmen should not be permitted to employ spurious argument to frustrate facts and their application to law into judicial admission.

Plaintiff's requests are propounded not to cause annoyance, oppression, or unnecessary burden or expense, but rather for the reasons of eliminating issues of fact, narrowing issues for trial and thereby saving the parties and the Court undue time and expense.

Response numbered #10:  The Defendants having admitted Request for Admission numbered #11, it is axiomatic that Section II of the Menemsha Creek Agreement speaks for itself, is accurately quoted, and is in no way "devoid of context". Wheezing about grammar is no basis for caviling by the defendants.

Requests numbered 19, 20, 21, 22, 23, 24, 25, and  27,  are plainly *not* "*general statements of law*"  but rather specific, cited case-borne law of the Commonwealth applicable to facts of this case. If the Defendants take the position that Donahue v. Heritage, 21 Mass.L.Rptr., McManus v. City of Boston, 171 Mass. 152, Loranger Construction Corp.v. E.F. Hauseman Company,  6 Mass.App.Ct, 152, Whiting v. Com., 370 Mass, 664 and Situation Management Systems, Inc. v. Malouf, Inc., 430 Mass. 875 are not applicable to the facts of this case, let them deny the applicability instead of evasive statements that the requests are not proper subjects for a request under Rule 36.

The rule itself defines the proper subjects: "… any matter…that relates to statements or opinions of fact or **of the application of law to fact.**" The      rule limits the scope to "for purposes of the pending action only" and thus the law of the cases cited specifically apply to the pending case as defined by the amended complaint. If the cases specific citations are not applicable, the Defendants should so state by denial. The Plaintiff will then  prove not only their applicability but their control of this matter at trial and move for the fees necessary for the proof.

WHEREFORE, the Plaintiff requests hearing of this motion and that the Court declare Aquinnah's objections insufficient and compel the Board of Selectmen to respond to each request and to do so in accord with the rule.

By Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO #375450
P. O. Box 115

Russells Mills, Massachusetts 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

### Certificate of Service

I, Robert F. Oberkoetter, Esq., hereby certify that I have this 29th day of May 2014 served a true copy of the foregoing Motion to Determine Insufficiency of Defendants' Objections and To Compel Defendants' Responses to Requests For Admission on each other party by first class mail to Daniel C. Perry, 388 County Street, New Bedford, MA 02740 and to Marilyn H. Vukota, 282 Upper Main Street, Post Office Box 1270, Edgartown, MA 02539.

Robert F. Oberkoetter, Esq.

36

# COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

SUPERIOR COURT DEPARTMENT
C.A. NO. DUCV2013-00049

WENDY SWOLINZKY, D/B/A BOOKABOAT,   )
    Plaintiff,   )
       )
VS.   )
       )
BEVERLY WRIGHT, SPENCER BOOKER and   )
JAMES NEWMAN, as they are the   )
AQUINNAH BOARD OF SELECTMEN, and   )
BEVERLY WRIGHT, Individually,   )
    Defendants.   )
       )

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S "MOTION TO DETERMINE INSUFFICIENCY" OF DEFENDANTS' OBJECTIONS TO PLAINTIFF'S REQUESTS FOR ADMISSION

The defendants, Beverly Wright, Spencer Booker and James Newman, collectively in their official capacity as the Aquinnah Board of Selectmen, and Beverly Wright, individually, hereby oppose the Plaintiff's "Motion to Determine Insufficiency"[1] of the defendants' objections to certain Requests for Admission propounded by the plaintiff. The plaintiff's Motion should be denied for failure to comply with the procedural requirements related thereto, and because, in any event, the subject Requests do not relate to matters that are properly within the scope of Massachusetts Rule of Civil Procedure 36(a); therefore, defendants' original objections are sufficient.

## I.   THE SUBJECT REQUESTS AND OBJECTIONS

The plaintiff propounded two sets of Requests for Admission pursuant to Massachusetts Rule of Civil Procedure 36(a) upon the defendants. The first set, including Requests No. 1-27, was served

**FILED**
SUPERIOR COURT
COUNTY OF DUKES COUNTY

JUL 10 2014

REC'D
CLERK

---

[1] Massachusetts Rule of Civil Procedure 36(a) permits a party who has requested admissions to "move to determine the *sufficiency* of the answers or objections." See Mass. R. Civ. P. 36(a) (emphasis added). The title of the Plaintiff's Motion improperly assumes that the Defendants' responses are insufficient and misconstrues the Court's role in evaluating those responses.

on April 17, 2014. See Plaintiff's First Rule 36 Requests for Admission, attached hereto as **Exhibit A**. The defendants served their response to Requests No. 1-27 on May 8, 2014. See Defendants' Response to Plaintiff's First Rule 36 Requests for Admission, attached hereto as **Exhibit B**. In their response, the defendants objected to Requests No. 10, 19, 20, 21, 22, 23, 24, 25 & 27, and either admitted or denied all other Requests. See id.

Request No. 10 asked defendants to admit "[t]hat pursuant to Section II of the Menemsha Creek Agreement between Gay Head [Aquinnah] and Chilmark: #11. No more than one lot shall be leased to an individual." See Ex. A, Req. #10. The defendants objected to Request No. 10 on the grounds that "it is ungrammatical and ambiguous and... it extracts a quote from a document that is devoid of context required to understand its meaning." See Ex. B, Resp. No. 10. Notably, no copy of the Creek Agreement was attached to plaintiff's First Rule 36 Requests.

Meanwhile, Requests No. 19, 20, 21, 22, 23, 24, 25 & 27, all asked defendants to admit "[t]hat the law applicable to the facts of this case includes" certain statements of law as quoted from various Massachusetts cases cited in each respective Request. See Ex. A, Req. Nos. 19-25 & 27. For example, Request No. 19 consists of the following:

> 19.  That the law applicable to the facts of this case includes: "A memorandum to satisfy the statute of frauds need not be a formal document intended to serve as a memorandum of the contract; but it must contain terms of the contract agreed upon by the parties, the locus (if an interest in real estate is dealt with), in some circumstances the price... and it must be signed by the party to be charged or by someone authorized to sign on his behalf... Moreover, it is well established that the memorandum need not consist of one document, but may consist of several documents which, taken together, contain the necessary information." Donahue v. Heritage Property Inv. Trust, Inc., 21 Mass.L.Rptr.488.

Id., No. 19. Requests No. 20, 21, 22, 23, 24, 25 and 27 are similarly formatted, with each quoting a portion of text taken from various Massachusetts case decisions, some of which may not be applicable on the facts of this case. The defendants objected to each such Request on the grounds

that it "does not call for the application of law to particular facts, but rather is a general statement of

law, which is not a proper subject for a request under Mass. R. Civ. Proc. 36." See Ex. B, Resp.

Nos. 19-25 & 27.

The Plaintiff's Second Rule 36 Requests for Admission, including Requests No. 28-40, were

served on April 16, 2014 (the very next day after service of plaintiff's First Set of Requests). See

Plaintiff's Second Rule 36 Requests for Admission, attached hereto as **Exhibit C**. The defendants

served their response to these Requests on May 8, 2014, along with their response to the Plaintiff's

First Requests. See Defendants' Response to Plaintiff's Second Rule 36 Requests for Admission,

attached hereto as **Exhibit D**. In their response, the defendants objected to Requests No. 36, 38 and

40, and either admitted or denied all other Requests. See id.

However, in her "Motion to Determine Insufficiency," the plaintiff, seemingly, does not

contest defendants' objections to Requests No. 36, 38 & 40, given that she does not refer to, or

discuss, the same in her Motion.[2]  Instead, the plaintiff challenges only defendants' objections to

Requests No. 10, 19, 20, 21, 22, 23, 24, 25 & 27 in her first set of Requests.

## II. ARGUMENT

Rule 36(a) of the Massachusetts Rules of Civil Procedure, provides, in pertinent part, as

follows:

> **A party may serve upon any other party a written request for admission,** for
> purposes of the pending action, only, of the truth of any matters within the scope of
> Rule 26(b) set forth in the request that **relate to statements or opinions of fact or of**
> *the application of law to fact*...

---

[2] Just as they objected to Requests No. 19, 20, 21, 22, 23, 24, 25, and 27, the Defendants objected to Requests No. 36, 38 and 40 on the grounds that each Request "does not call for application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Pro. 36." See Ex. D, Resp. # 36, 38, 40. Thus, to the extent that the Plaintiff *does* contest Defendants' objections to Requests No. 36, 38 and 40, the sufficiency of these objections should be evaluated and sustained pursuant to the same analysis applicable to Objections No. 19, 20, 21, 22, 23, 24, 25 and 27 as set forth herein.

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission either (1) a written statement signed by the party under the penalties of perjury specifically (i) denying the matter or (ii) setting forth in detail why the answering party cannot truthfully admit or deny the matter; or (2) a written objection addressed to the matter, signed by the party or his attorney…
>
> **The party who has requested the admissions may move to determine the sufficiency of the answers or objections.** Unless the court determines that an objection is justified, it shall order that an answer be served…. The court may, in lieu of these orders, determine that final disposition of the request be made at a pre-trial conference or at a designated time prior to trial….

Mass. R. Civ. P. 36(a) (emphasis added). Massachusetts Rule 36(a) is patterned after Rule 36 of the Federal Rules of Civil Procedure and, therefore, cases interpreting the Federal Rule 36 are frequently relied upon by Massachusetts courts to interpret the state counterpart. See, e.g., Mass. Highway Dept. v. Smith, 51 Mass. App. Ct. 614, 618 (2001).

As set forth above, the proper subject of requests for admission is the undisputed *facts* underlying the case. See Mass. R. Civ. P. 36(a). Indeed, Rule 36(a) explicitly limits the requests to those that "relate to statements or opinions **of fact** or of the application of law **to fact**." Id.; see also Campana v. Bd. of Directors of Mass. Hous. Fin. Agency, 399 Mass. 492, 503 (1987) ("[Rule 36(a)] promotes both economy and judicial administration. **By admitting to** *facts* which will not be disputed at trial, **parties are relieved of the cost of proving such** *facts*.") (emphasis added); McLaughlin v. Drackett Products Co., 1975 WL 166107, at *1 (D. Mass. 1975) ("Rule 36 is not designed to discover facts, but rather it is designed to **circumscribe contested** *factual* **issues** in the case so that issues which are disputed might be clearly and succinctly presented to the trier of facts.") (emphasis added).

Accordingly, requests that call for conclusions of law divorced from specific undisputed facts, or which call for conclusions of law based upon facts that are obviously in dispute, are improper under Rule 36(a). See, e.g., U.S. ex. rel. Dyer v. Raytheon Co., 2013 WL 5348571, at *6 (D. Mass. 2013); Iantosca v. Benistar Admin Servs., Inc., 2012 WL 220224, at *2 (D. Mass. 2012). Therefore, "[r]equests for admissions should be thoughtfully structured to settle before trial issues as to which there may be no real contest.  It is an abuse to deluge an opposing party with successive banks of requests for admissions hoping that he may inadvertently give away his case." Caron v. Gen. Motors Corp., 37 Mass. App. Ct. 744, 747 n.5 (1994).

Unless a Rule 36(a) request is expressly admitted, the matter set forth therein is not deemed admitted unless the party to whom the request is directed fails to provide a response within the allotted time. See Mass. R. Civ. P. 36(a). "A party requesting an admission may, if [s]he feels [the] requirements [of rule 36(a) ] have not been met, move to determine the sufficiency of the answer, to compel a proper response, or to have the matter ordered admitted." Mass. Highway Dept., 51 Mass. App. Ct. at 618-19 (quoting Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1246-47 (9th Cir. 1981). "However, the imposition of the severe sanction of a binding admission will be imposed only when the answering party has 'intentionally disregarded the obligations imposed by Rule 36(a).'" Mass. Highway Dept., 51 Mass. App. Ct. at 618 (quoting Asea, Inc., 669 F.2d at 1246-47; Han v. Food and Nutrition Serv. of the United States Dept. of Agric., 580 F. Supp. 1564, 1566 (D.N.J.1984)).

"A denial of a request for admission is not a statement of fact; it simply indicates that the responding party is not willing to concede the issue and, as a result, the requesting party must prove the fact at trial." Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 414 (2002) (citing Am. Comm. Telecomm., Inc. v. Commerce N. Bank, 691 S.W.2d 44, 48 (Tex. Ct. App.1985) (refusal to

admit answers to requests for admission affirmed because denial is "nothing more than a refusal to admit a fact")). Accordingly, denials or objections to requests for admission are inadmissible at trial. Gutierrez, 437 Mass. at 414. Instead, "The sanction for improperly responding to a request for admission is the shifting of the award of incurred expenses." Id.

### a. The Plaintiff's Motion Must Be Denied Because She Has Failed To Satisfy the Procedural Prerequisites of the Superior Court

Massachusetts Superior Court Rule 30A provides, in relevant part, that:

> All motions arising out of a party's response to… [a] request for admission… shall be accompanied by a brief. With respect to each… request at issue, the brief shall set forth separately and in the following order (1) the text of the… request, (2) the opponent's response and (3) an argument. Alternatively, the text of the… or request and the opponent's response may be contained in an appendix to the brief.

Mass. Super. Ct. R. 30A.

In this case, the plaintiff has neither set forth the text of the subject requests and objections in her brief in support of her "Motion to Determine Insufficiency," nor has she attached the subject materials as an appendix to her brief. Plaintiff's failure to comply with the requirements of Superior Court Rule 30A, standing alone, is independent and adequate grounds for the denial of her Motion. See, e.g., Wood v. Dennehy, 2009 WL 483125, at *1 (D. Mass. 2009) (where plaintiff filed a motion to compel, in which he argued that the defendants' responses to his requests for admissions were non-responsive or incomplete, the court denied the plaintiff's motion because he "fail[ed] to comply with Local Rule 37.1(B), requiring that a party moving to compel discovery must set forth within the supporting memorandum the texts of both the request at issue and of the response(s) deemed inadequate").

**b. The Plaintiff's Motion Must Be Denied Because The Defendants' Objections Are Proper**

*i. The Defendants Properly Objected to Request No. 10*

Requests under Rule 36(a) may properly seek an admission regarding the authenticity of a document, or regarding the interpretation of a document. See, e.g., U.S. ex. rel. Dyer, 2013 WL 5348571, at *6; Kavlakian v. Pinette Grp., LLC, 2011 Mass. App. Div. 230, at *3 (Mass. Dist. Ct. 2011). However, requests that merely ask the respondent to declare the contents of certain documents are improper because "[t]he documents themselves are the appropriate evidence of their contents." U.S. ex. rel. Dyer, 2013 WL 5348571, at *5 (citing Lakehead Pipe Line Co. v. American Home Assur. Co., 177 F.R.D. 454, 457 (D. Minn. 1997) (sustaining an objection to a rule for admission that seeks "a synoptic characterization of the documents, or a gloss as to their intendment" because the responding party admitted to the authenticity of the document but refused to summarize the contents of the document)).

Here, Plaintiff's Request No. 10 asked the defendants to admit "[t]hat pursuant to Section II of the Menemsha Creek Agreement between Gay Head [Aquinnah] and Chilmark: #11. No more than one lot shall be leased to an individual." See Ex. A, Req. No. 10. The defendants admitted that the copy of the Menemsha Creek Agreement attached to the Plaintiff's First Rule 36 Request was a true, complete and accurate copy of its original counterpart. See Ex. B., Resp. No. 11. Having done so, the defendants are not obligated to respond to a request seeking them to admit to a summation of one provision of the Agreement, divorced from other potentially qualifying provisions. Request No. 10 is improper because it simply asks the defendants to admit that a document provided contains the statement in question. See U.S. ex. rel. Dyer, 2013 WL 5348571, at *6. Accordingly, the defendants' objection to Request No. 10 should be sustained as sufficient.

ii. *The Defendants Properly Objected to Requests No. 19, 20, 21, 22, 23, 24, 24 & 27 on The Grounds That They Seek Conclusions of Law Beyond the Scope of Rule 36(a).*

Requests for admission that seek pure conclusions of law, divorced from underlying facts, are not permitted under Rule 36(a). See Mass. R. Civ. P. 36(a); Iantosca, 2012 WL 220224, at *2. Similarly, requests which are employed as a means of establishing facts which are obviously in dispute, or which seek an interpretation which would require the respondent to assume disputed facts, are likewise impermissible. See U.S. ex. rel. Dyer, 2013 WL 5348571, at *6 (citing Lakehead Pipe Line Co., 177 F.R.D. at 458 ("[R]equests for admission are not to be employed as a means 'to establish facts which are obviously in dispute...'")).

In this case, plaintiff's Requests No. 19, 20, 21, 22, 23, 24, 25 & 27 all asked the defendants to admit that certain quotes lifted from various Massachusetts court decisions constitute "the law applicable to the facts of this case." See Ex. A, Req. No. 19-25 & 27. These Requests seek compound legal conclusions, not facts or the application of law to facts. First, they require the defendants to conclude that the case law is still good law, and that the principle quoted has not been reversed, expanded, narrowed, or qualified in any way. Second, they require the defendants to conclude that the law, assuming it is correct as quoted, controls the "facts" of the instant case, which facts have not been conclusively established. These requests, seeking pure legal conclusions, are improper under Rule 36(a), because they do not serve the Rule's purpose of "circumscrib[ing] the contested *factual* **issues** in the case so that issues which are disputed might be clearly and succinctly presented to the trier of facts." McLaughlin, 1975 WL 1661107, at *1 (emphasis added).

The Plaintiff contends that Requests No. 19, 20, 21, 22, 23, 24, 25 & 27 constitute requests that relate to "the application of law to fact" within the scope of Rule 36(a). See Pl.'s Mtn. to Determine Insufficiency, at 3. However, the Requests do not ask the defendants to apply legal

principles to certain, undisputed facts, but rather seek defendants' agreement to various legal principles themselves as set forth in particular cases.    There is a difference between asking a defendant to define the contours of a law on a particular topic, as the Plaintiff does here, and asking a defendant to apply the law, having already defined its contours, to the specific, uncontested facts of a case of a particular case.   The difference is that the former is a purely legal question, which is not permitted under Rule 36(a). See Mass. R. Civ. P. 36(a); Iantosca, 2012 WL 220224, at *2; see also Black's Law Dictionary (9th ed. 2009), "Legal Conclusion" (defining a "legal conclusion" as "[a] statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result"); id., "Conclusion of Law," (defining a "conclusion of law" as "[a]n inference on a question of law, made as a result of a factual showing, no further evidence being required; a legal inference").

The plaintiff's vague reference in the Requests to "the facts of this case" do not transform the Requests into questions regarding "the application of law to fact" because many of the underlying facts of this case continue to remain in dispute. See U.S. ex. rel. Dyer, 2013 WL 5348571, at *6 (citing Lakehead Pipe Line Co., 177 F.R.D. at 458). An admission that a certain legal principle applies to "the facts of this case" is meaningless where the parties do not agree on the facts of the case in the first place. See Northboro Inn, LLC v. Treatment Plant Bd. of Westborough, 58 Mass. App. Ct. 670, 677 (2003). With these Requests, the plaintiff is, in effect, improperly asking the defendants to adopt an interpretation of the law which would implicitly require them to make an admission as to certain facts – some of which the defendants previously denied in their Answer and in response to other Requests for Admission. See U.S. ex. rel. Dyer, 2013 WL 5348571, at *6. The plaintiff is not permitted to use Requests under Rule 36(a) as a means of cajoling the defendants into inadvertently giving away their case. Caron, 37 Mass. App. Ct. at 747 n.5 (1994). Accordingly, the defendants' objections to Request No. 19, 20, 21, 22, 23, 24, 25 & 27 should be sustained as

sufficient, and the plaintiff's Motion should be denied.

### III. CONCLUSION

Wherefore, the defendants respectfully request that this Court rule that their objections to plaintiff's Requests for Admission No. 10, 19, 20, 21, 22, 23, 24, 25 & 27 are sufficient, and deny the plaintiff's "Motion to Determine Insufficiency."

The Defendants,

AQUINNAH BOARD OF SELECTMEN &
BEVERLY WRIGHT, Individually,
By their Attorneys,

PIERCE, DAVIS & PERRITANO, LLP

John J. Davis, BBO #115890
90 Canal Street
Boston, MA 02114
(617) 350-0950

Dated: June 26, 2014

CERTICATE OF SERVICE

I hereby certify that on this day a true copy of
this document was served upon each attorney of
record/pro se plaintiff via first class mail/electronic
mail/fax/hand delivery.

6/26/14
Date    Attorney

# EXHIBIT "A"



## COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS                                    SUPERIOR COURT
                                             No. DUCV2013-00049


Wendy Swolinzky
D/B/A *BookaBoat*


        v.


Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually
Vernon Welch, individually


## <u>PLAINTIFF'S FIRST RULE 36 REQUESTS FOR ADMISSION</u>


        Pursuant to Rule 36 of the   Rules of Civil Procedure, Plaintiff requests the
Defendants, for the purposes of the pending action only,  admit the truth of the matters
set forth below that relate to statements or opinions of fact or the application of law to
the facts of this case, including the genuineness of the attached documents.


1.  That  on January 4, 2013, Aquinnah's Board of Selectmen, hereinafter "Board",
    acting pursuant to G. L. Ch. 30A, Section 20(c), posted public notice of the
    Board's agenda for a public meeting to be held on January 8, 2013.
2.  That  Schedule 1, attached hereto, is a true, accurate and complete copy of its
    original counterpart referred to in preceding request for admission numbered 1.



received
04-18-14

3. That on January 18, 2013, the Board, acting pursuant to G. L. Ch. 30A, Section 20(c), posted public notice of its agenda for a public meeting to be held on January 22, 2013.

4. That Schedule 2, attached hereto, is a true, accurate, and complete copy of its original counterpart referred to in preceding request for admission numbered 3.

5. That Schedule 3, attached hereto, is a true, accurate, and complete copy of its original counterpart Minutes of the Meeting of the Board of January 8, 2014.

6. That Schedule 4, attached hereto, is a true, accurate, and complete copy of the Minutes of the Meeting of the Board of January 22, 2013.

7. That on January 22, 2013, the Board voted unanimously to approve and accept the Minutes of the Meeting of the Board of January 8, 2013.

8. That Schedule 5, attached hereto, is a true, accurate, and complete copy of its original counterpart.

9. That on January 8, 2013 January 22, 2013, the Board was empowered by G. L. Ch. 40, section 3 to make such orders as it deems necessary or expedient for the use of its property,  to lease, and otherwise control the real estate of Aquinnah.

10. That pursuant to Section II of the Menemsha Creek Agreement between Gay Head [Aquinnah] and Chilmark: #11. No more than one lot shall be leased to an individual.

11. That Schedule 6, The Menemsha Creek Agreement, is a true, complete, and accurate copy of its original counterpart.

12. That on September 3, 2013, the Board and Aquinnah's Planning Board Plan Review Committee conducted a joint public meeting for the purpose of discussing the shack situated on Lot A,  Easterly of the Menemsha Inlet.

13. That Board member James Newman is the Board's representative at meetings of Aquinnah's Planning Board.

14. That Board member James Newman was present and participating at the joint meeting of the Board and Aquinnah's Planning Board Plan Review Committee referred to in preceding request for admission numbered 12.

15. That as of May 21, 2013, the Board was in possession of the contract dated April 11, 2013 between the Plaintiff and Camille Rose for the sale of the shack on Lot A to the Plaintiff.

16. That no posting by the Board pursuant to G. L.Ch 30A, Section 20(c) prior to its meeting on December 3, 2013 included any agenda item with respect to a taking of the shack by the Board.

17. That on February 5, 2014, the Board employed section 17 of thre lease between Camille Rose and the Town of Aquinnah to take possession of the shack situated on Lot A, potions of which lot are on both Aquinnah and Chilmark real estate.

18. That Schedule 7, attached hereto, is a true, accurate, and complete copy of its original counterpart, Menemsha Basin, Site Plan,  prepared for the Aquinnah Board of Assessor's  by Schofield, Barbini, & Hoehn, Inc. Land Surveying & Civil Engineering company, dated  November 12, 2013.

19. That the law applicable to the facts of this case includes: "A memorandum to satisfy the statute of frauds need not be a formal document intended to serve as a memorandum of the contract; but it must contain terms of the contract agreed upon by the parties, the locus (if an interest in real estate is dealt with), in some circumstances the price…and it must be signed by the party to be charged or by someone authorized to sign on his behalf…Moreover, it is well established that the memorandum need not consist of one document, but may consist of several documents, which, taken together, contain the necessary information." Donahue v. Heritage Property Inv. Trust, Inc. 21 Mass.L.Rptr.488.

20. That the law applicable to the facts of this case includes: "Whether the vote of {January 22, 2013] was an acceptance of the plaintiff's offer, or was an offer to the plaintiff, it was a sufficient memorandum, under the statute of frauds. The recorded vote of a corporation, or of a committee acting upon a subject over which the committee has power, is a sufficient memorandum… The vote became a part of the contract with him… the vote itself imports a contract of [lease] by its own terms, and it must, we think, be construed as a binding agreement…" McManus v. City of Boston, 171 Mass. 152 (1898).

21. That the law applicable to the facts of this case includes: "The theory of promissory estoppel, as embodied in the Restatement of Contracts Section 90 (1932), permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise…Attention is to be focused upon the reasonableness of that reliance."Loranger Construction Corporation v. E.F. Hauserman Company, 6 Mass.App.Ct. 152.

22. That by February 5, 2013, the law applicable to the facts of this case includes "everything necessary to the creation of a contract, as distinguished from its performance, had occurred. All that remained to be done was for the defendant to perform what it had agreed to perform." Whiting v. Com., 370 Mass. 664 (1976)

23. That the law applicable to the facts of this case is that the Board had no unilateral right to "change its mind, rescind the vote, as it purported to do, and call the whole deal off, in which event the plaintiff would be without enforceable right or remedy". Whiting v. Com., 370 Mass 664 (1976)

24. That the law applicable to the facts if this case is that the Board "reserved no such [Whiting] right to cancel or rescind the deal in any of the documents of record… and no such right is stated or implied in the applicable statutes". Whiting v. Com, 370 Mass 664 (1976).

25. That the law applicable to the facts of this case is "(a) contract made by a vote of a town cannot be rescinded by the town, by a vote at a subsequent meeting, without the consent of the other party." Allen v. Inhabitants of Taunton, 19 Pick. 485 (1837).

26. That the Board's April 23, 2013 rescission of its January 22, 2013 vote was made without the consent of the Plaintiff.

27. That the law applicable to the facts of this case includes the "(u)sual rule for damages in a breach of contract case is that the injured party should be put in the position that would have in had the contract been performed…And the award

of expectancy damages in breach of contract action may include lost profits."
<u>Situation Management Systems, Inc. v. Malouf, Inc.,</u> 430 Mass. 875 (2000).

By the Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 3753450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

I hereby certify that I have this 17th day of April 2014 served a true copy of the within
<u>PLAINTIFF'S FIRST RULE 36 REQUESTS FOR ADMISSION</u> on each other party by
first class mail to the office of Daniel C. Perry, 388 County Street, New Bedford, MA
02740.

Robert F. Oberkoetter, Esq.





Board of Selectmen
Spencer Booker, Chairman
Beverly Wright
Jim Newman

Adam Wilson
Town Administrator

Meeting of the Board of Selectmen

Tuesday,
January 8, 2013
Selectmen's Meeting Room
65 State Road

## AGENDA

**Call to Order 5:00 PM**
**I. Old Business**
1. Review of minutes from 12-18 BOS Meeting

**II. New Business**
1. Meeting with W. Swolinzky – Menemsha Lease lots
2. Warrant article review and approval – 2nd special town meeting February 5th
3. Meeting with F. Croft – Commercial Bay Scallop application.
4. Ratification of Library Director's Contract.

**III. Town Administrator's report**
1. Look back on 2012 – BOS continued/unfinished business
2. Landfill Solar Array Grand Opening
3. MMA Conference Jan 24th – 25th
4. FinCom Meeting Schedule
5. Len Butler Letter to BOS
6. IHT 20 State Rd Papers.
7. MEMA Contract

**IV. Other Selectmen's business**

**V. Adjourn**

*Schedule 2*



Board of Selectmen
Spencer Booker, Chairman
Beverly Wright
Jim Newman

Adam Wilson
Town Administrator

Meeting of the Board of Selectmen

Tuesday,
January 22, 2013
Selectmen's Meeting Room
65 State Road

### AGENDA

**Call to Order 5:00 PM**
**I. Old Business**
1. Review of minutes from 1 - 8 BOS Meeting
2. Menemsha Lease Lots

**II. New Business**
1. Meeting with Island Youth Task Force – Medical Marijuana dispensaries
2. Personnel Committee recommendation on Job Description sign offs.
3. Gay Head Lighthouse Planning & Feasibility Study proposal
4. Selectperson's appointment to Tri-Town Committee

**III. Town Administrator's report**
1. Review Budget/Annual Town Meeting calendar

**IV. Other Selectmen's business**

**V. Adjourn**

**Posted 1/18/2013**

Schedule 3

Aquinnah Board of Selectmen
Minutes of Meeting 1/08/2013
Aquinnah Town Hall Selectmen's Mtg Room

Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,
Also present: Town Administrator Adam Wilson, Town Moderator Mike Hebert, Police Chief Randhi Belain, Sgt Paul Manning Wendy Swolinzky, Isaac Taylor, Fred Croft, Barbara Bassett, June Manning.

-The meeting began at 5:00 pm

-1st on the agenda under old business was a review of minutes from the 12- 18 Selectmen's meeting.
-Jim made a motion to accept the minutes from December 18th. Beverly seconded.
The Board voted 3 - 0 in favor. The motion passed.
Under New Business was a meeting with Wendy about the lease lot she and Camille (Rose) have worked together. She handed out a site map showing the lots as they are mapped out on the Chilmark side of the Menemsha Creek. She explained how she has shared the use of Camille's abutting lot for her rental boat business.
-Spencer read into the record an e-mail from Camille stating that she intends to sell the shed that is on her leased lot to Wendy.
-Jim made the suggestion that there be a switch of lots. Wendy would take over the lease on Camille's lot + have the building as well. The Town would take control of the lot Wendy currently has. Wendy said Camille's lot only has 35' of water frontage and her lot has 78'. All the lots have 54' along the land except Camille's which is 36'. Wendy stated she uses 60' of dock, which wouldn't fit in Camille's lot. She suggested that she slide her whole operation down 35 feet and free up space between her and Lot C which is operated by Hollis Smith. There was discussion on whether or not the survey could be changed and who would change it. Wendy said the current survey's water frontage was done by Hugh (Taylor), to accommodate every lease holder's business needs.
The Board, by consensus, decided to take Wendy's proposed idea under advisement until the next Selectmen's meeting (1/22).

-Next on the agenda is the approval of the warrant for the 2nd special town meeting planned for Tuesday, February 5th. Mike reviewed the warrant, which has only two warrant articles related to the acquisition and relocation of the Gay Head Lighthouse. Adam explained that there will be two meetings that night; the first covering the articles in a special that had to be postponed due to a lack of a quorum in November and the second a ½ hour later taking up the lighthouse issue. Jim asked if the $5K request for feasibility and planning would offset administrative costs for the Lighthouse Committee. Adam said the language in the Community Preservation Act allows this type of spending to occur for administrative purposes.
Beverly made a motion to approve the warrant as presented. Jim seconded.
The Board voted 3 – 0 in favor. The motion passed.
The Selectmen signed the warrant.

-Next on the agenda was a meeting with Fred Croft over the issue of obtaining a commercial bay scallop license. Spencer said that Fred's application for the license had not been recommended by the Shellfish Committee. He said the initial submission of the application was returned to Fred because it was incomplete; it lacked necessary signatures from two commercial fishermen. When that was accomplished and then resubmitted, it was turned down for recommendation again due to a lack of proof that Fred had resided in Aquinnah for 12 consecutive months.

Adam explained that anyone who has been turned down for any kind of license or permit has the right to appeal. In this case the remedy for a denied commercial scallop license would go to the Board.

-Beverly said the time frame for residency is November of 2011 to November of 2012. She saw there was a gap in documentation from February 15th to the 1st of April. Fred said he spent two weeks of that time on his boat. When he found out that living on one's boat is against Town By-Laws, he made other arrangements. He produced an e-mail statement from Isaac Taylor that he lived with him for the month of March. Since April he has stayed at 81 Lighthouse Rd.

-Spencer read a statement from Town Clerk Carolyn Feltz that Fred was a registered voter in the town. He then read a letter from Buddy Vanderhoop (Shellfish Chairman) apologizing for not attending due to off island medical appointments and that his Committee still doesn't have proof of 12 month residency. He said that until proof is met, no license should be issued. Spencer read the shellfish regulations regarding the requirements of residency proof for 12 months in order to get a commercial bay scallop license.

-Beverly asked if the proof given by Fred has been determined unacceptable to the Shellfish Committee. Adam said there are documents being presented tonight that seem to close the residency gap. Isaac produced a letter signed by him and his wife stating that Fred had lived with them for the month of March. He said the committee knows that Fred has lived in town for a year. Fred also produced 3 vehicle excise tax bills he has received from the Town of Aquinnah for the last three years.

-Adam said if this information is being produced now, the shellfish committee should see it so they can reconsider recommending the license. Beverly said there's no language in the regulations for the Shellfish Committee to act on appeals. Fred said the only unaccounted time he was not in Aquinnah is the last week of February. He was away on vacation.

-Beverly said there can be an allowance in the residency requirement to have a vacation. Spencer said the black and white of residency proof is here in front of them. Adam looked at the long form and stated that the application seeks recommendation from the Shellfish Committee but license authorization comes from the Selectmen.
-Beverly made the motion to approve a commercial scallop license for Fred Croft for 2013. Jim seconded.
Jim said it should be approved. He's satisfied with statements from Sarah, Isaac and Hugh that Fred has lived in Aquinnah for a full year.
**The Board voted 3 – 0 in favor. The motion passed.**

-Next on the agenda was the ratification of the Library Director's contract. Adam explained that the Library Trustees had worked diligently with Judy (Jardin, Town Benefits Administrator), and the personnel by-laws in crafting a contract that ties in with the different aspects of the benefits available and the classification of the position.
There was discussion about the role the Personnel Committee plays in hiring and oversight of human resources management.
Jim made a motion to ratify the contract as presented. Beverly seconded.
**The Board voted 3 – 0 in favor. The motion passed.**

-In the Town Administrator's report. Adam read his review of unfinished/continued business for the Board for 2012:
1. Jim's appointment to the Tri-Town Committee expires Jan 17th. The Board will take up another reappointment at their 1/22 meeting;
2. There are other appointments to the up-island regional refuse district that will need reappointing in February;
3. Going back over the warrant articles from last May's ATM & STM –
      A. Has the $50K for the landfill repair happened yet?
      B. Has the $7,500 been spent for the freshwater well @ West Basin?

C. The warrant article to reprogram the radios has only been done for the police dept. and not yet for fire and ambulance.

D. The $2,700 for Town Hall defibrillators has not yet been done. Adam said he'd follow up on that.

4. The Town Accountant's 3 year reappointment was contingent on a sign off of the job description. Adam reported that the JD has been finalized between Margie and the Personnel Committee but it's different than the one the Board looked at when conditionally reappointing her back in July. The Board wants to review the new JD and meet with Margie to discuss it at their 1/22 meeting before finalizing the reappointment.

5. Adam needs to do follow up on a potential zoning violation involving the soda vending machines adjacent to the Aquinnah Shop.

6. Minutes from 9/18 were never accepted.

7. The overnight parking of boat trailers at West Basin has not been resolved. Beverly says the are parked boats at West Basin – The Board will work with Randhi and Jay to get signage up that restricts overnight parking in that area.

8. Circle area improvements still to be done –
   A. Informational signage (You Are Here)…Beverly
   B. Trash removal policies for Lessees and other user groups…Spencer
   C. New picnic tables…Adam
   D. Path landscaping to the bathroom/turfstone…Spencer
   E. Informational signage for the restrooms…Beverly
   F. Informational signage for the Pay Parking Lot…Jim
   G. Increase in the # of free parking space…Adam/Jim

9. Regarding Tribal requests, Adam said he still hadn't heard back about the poison ivy issue up at the cliff head and he got a phone call today from Richard Randolph about the 12/5 2nd letter asking for a meeting with Tribal officials to go over the public safety agreement to more clearly define the fire chief's role for the Tribe Community. In that call, Richard said, "If the Fire Chief needs to come on the property for an inspection, just give him a call…"

10. The Selectmen's representation to the Land Bank Committee is still up in the air.

11. The issue of loss of parking space at West Basin due to truck and trailer parking was still under advisement. There was discussion about what could be done to alleviate the problem and what could be created to allow separate parking areas for truck and trailer and regular motor vehicles.

-Adam said the solar array is active at the landfill and to set a date for a ribbon cutting ceremony. It was decided that 1/22 would be a good date and to have it at 10:00 am. Adam will contact Vineyard Power to let them know the date and time.

-Adam will attend the MMA conference Friday, January 24th and Saturday the 25th.

-Adam had a letter from Len Butler asking to be put on the Lighthouse Committee. Spencer read the letter. There was discussion about referring Len to the committee or simply appointing him. There was discussion of how Board members voted everyone onto the committee at the last Selectmen's meeting. Spencer made a motion to add Len Butler to the Gay Head Lighthouse Committee. Jim seconded. The Board voted 3 – 0 in favor. The motion passed.

-In Other Selectmen's Business, Barbara made a request that there be an acknowledgement of Joe Gonsalves's service to the Town as a police officer. She said flowers were sent to his family when he passed away but she would like to see a town official give an acknowledgement of the years he gave dedicated service to the town at the upcoming special. She said he was well loved. Randhi was asked but didn't know if he'd be available for the special town meeting in February. Spencer assured Barbara that someone from the town would speak on Joe's behalf.

-Randhi reported the update of the live fingerprinting scan machine. He said that the Town/Tribe Standard Operating Procedure Agreement is not being honored in terms of the Town having the machine vs the Tribe having it. He was 1st told by Tribal Officials that the Town would house the machine within the police station. Since the police already had access to state and federal registries, and the security clearance to utilize those data banks, the machine can be properly utilized at his work area. With the machine at Tribal Headquarters, it will be underutilized since the Tribe's personnel doesn't have clearance and will need to apply for additional grants from the federal government to obtain the modems necessary to access FBI and national sex offender registries that are part of the machine's usage. There was discussion about whether or not the police will have access to it. Randhi said it will be under the Tribe's control and training to use it will only be for five people. It was unknown who those five people would be.

Adam explained the SOP and the language in it that is ambiguous enough so that this machine can be located at either location. Randhi said he'd keep the Board informed as events progressed.

-Beverly reported that she has met with Randhi and Jay over the sign issue at the beginning of the road that goes up towards the cliff shops. She said all the existing signs will be removed and there will be only one sign stating "No Unauthorized Vehicles Between 10 am – 4 pm."

Beverly made a motion to adjourn. Jim Seconded
**The Board voted 3 – 0 in favor. The motion passed.**

The meeting ended at 7:00 pm.

Schedule 4

Aquinnah Board of Selectmen
Minutes of Meeting 1/22/2013
Aquinnah Town Hall Selectmen's Mtg Room

Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,
Also present: Town Administrator Adam Wilson, Jamie Vanderhoop, Theresa Manning, Chief Randhi Belain, Sgt
Paul Manning, Wendy Swolinzky, Vern Welch, Jimmy San Fillippo, Barbara Bassett, Moderator Mike Hebert, June
Manning, and Town Accountant Margie Spitz.
-The meeting began at 5:05 pm

-1st on the agenda under old business was a review of minutes from the 1- 8 Selectmen's meeting.
-Jim made a motion to accept the minutes from January 8th. Beverly seconded.
**The Board voted 3 – 0 in favor. The motion passed.**

-Next under old business was a revisit of the proposal from Wendy to have her switch the current Menemsha lot she
leases (Lot B) and take over the lot being vacated by Camille Rose (Lot A). With the change,
Lot A's water frontage would increase to 70' and Lot B's would be reduced to 35'. Spencer stated he was in favor
of the change and just moving the lot lines. Beverly said she just doesn't want a state agency saying down the road
they couldn't make these changes. Wendy said the current site plan was drawn up by Hugh (Taylor) and only the
lot owned by Alfred Vanderhoop had been on the original site plan.
There was discussion about the Board's decision not to renew Camille's lease, which was for one year, expiring
June 30th of this year and the existing shed being sold to Wendy. The lot created would become available to the 1st
person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern.

-Jim made a motion to move the lot line so that Lot B is reduced to 35 feet and increase Lot A to be
69.9 feet. Beverly seconded. There was discussion about notifying Chip about Lot B's availability. Jimmy asked
about the commercial fishing license requirement to have one of the lots.
**The Board voted 3 – 0 in favor. The motion passed.**

-Beverly made a motion that as of July 1st, 2013, the town will enter into a new lease agreement for Wendy to have
Lot A. Jim seconded.
**The Board voted 3 – 0 in favor. The motion passed.**

-Next on the agenda under new business was a meeting with the Youth Task Force representatives Theresa and
Jamie. Theresa gave a hand out that detailed the guidelines the Department of Public Health has initiated for the
allowance of medical marijuana dispensaries. She said the legislation is written that allows for up to five
dispensaries in each commonwealth county. She is seeking for all towns on the island the idea of having some
precautionary measures so that when someone shows they have a state license allowing for a dispensary, the towns
are prepared to deal with it. In some cases an island town can go the zoning route of just being able to say "no", or
to make allowances through community review and special permitting. There was discussion about a dispensary
being allowed in Aquinnah as a home based business. Two licenses are allowed: growing and selling. She said the
main concern of the YTF is kids and access to drugs.
-There was discussion about how one goes about getting the drug through medical prescription. She said because
marijuana is still a federal banned substance, the owner has to be non-profit, and can only deal in cash since banks
are not allowed to loan to these types of businesses, set up accounts and allow for credit card sales.

Schedule 5

Aquinnah Board of Selectmen
Minutes of Meeting 2/05/2013
Aquinnah Town Hall Selectmen's Mtg Room

Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,
Also present: Town Administrator Adam Wilson,  Town Moderator Mike Hebert, Chief Randhi Belain, Sgt Paul Manning, Asst Assessor Angela Cywinski, Liz Witham, Elise Lebovit, Richard Skidmore, Anne Vanderhoop, Kathy Newman, Jim San Filippo, Elaine Vanderhoop, Harbormaster Brian Vanderhoop, Len Butler and Betsey Mayhew,
-The meeting began at 5:06 pm

-1st on the agenda under Old Business was a review of minutes from the 1- 22 Selectmen's meeting.
-Jim made a motion to accept the minutes from January 8th. Beverly seconded.
The Board voted 3 - 0 in favor. The motion passed.
-1st item under new business was a request from two Aquinnah residents wanting to join the Gay Head Lighthouse Advisory Committee.  Kathy Newman and Ken Wentworth submitted correspondence to Adam indicating their interest to serve.  Elise said everyone is welcome to join but their roles will probably be delegated to subcommittee's being formed handling the different aspects of saving the lighthouse.
Beverly made a motion to appoint Kathy Newman to the Lighthouse Committee.  Spencer seconded.
The Board voted 2 – 0 – 1 in favor.  The motion passed.
Jim made a motion to appoint Ken Wentworth to the Lighthouse Committee.  Beverly seconded.
The Board voted 3 – 0 in favor.  The motion passed.

-Next on the agenda was a report from Gay Head lighthouse Committee Chairman Elise Lebovit.  She said the committee has not yet approved a mission statement but is still working on it.  She stated there has been a 5 person subcommittee created with to deal with the aspect of fundraising.  She said the goals they have come up with so far are:
1. Ownership;
2. Site identification;
3. Geology;
4. Movers;
5. Fundraising and Grants;
6. Establishment of a 501C-3 Non-profit group;
7. Restoration;
8. Maintenance and operation of the lighthouse after it has been moved;
-Elise said the committee has met twice and had other meetings with International Chimney, a possible mover, and one fundraising meeting with another one scheduled for Feb 7th.  She said she's had discussions with the Sconset Trust, an organization that was in charge of moving the Sankaty Lighthouse on Nantucket.
-Elise stated that Adam will be doing the ownership application and has a copy of the recent Edgartown application for their lighthouse acquisition.  She said the last meeting of the GHLC dealt with Site location and important criteria.  The criteria established is:
1. To get as far from the cliff area as possible – hope to gain a 100 year window before having to move again;
2. Orientation of the Lighthouse so that it is still seen from various points on the island and across the Vineyard Sound;
3. Cost analysis for different locations;

4. Elevation Drop – keeping it as close as possible to the current elevation;

5. Continued use as a maritime beacon;

6. Geology and the strongest area of clay to relocate.


-The Board was shown a visual of the different properties that are available for acquisition (see attached). The 1st was Lot 23, which directly abuts the Gov't land the Lighthouse is located on. She said that part of Helen Manning's house is on the lot and she has an easement to it. This property would allow the structure to be moved 160' from its current location and 230' away from the cliff side. The property is valued at $16,300. The elevation drop would be approximately 6'.

-Elise moved onto Lots 25.1 & 25.2, the Manning/Murray properties. A move there would distance the lighthouse 195' from current location and 260' from the cliff side and have an elevation drop of approximately 12'. Those properties are for sale with an asking price of $989,000 and a valuation of 1,000,806.

-Elise then talked about moving the lighthouse into the Aquinnah Circle (Lot 17). She said the distance from current location would be 234' and 315' from the cliff side and there would be an elevation drop of approximately 20'.

-The last lot for consideration would be Lot 24. She said the Manning/Murray guest house is on the lot.

-Elise made the case for lot 23 being the best option because it's closest and has the least elevation drop. She stated options for the other lots that had structures and what could be done with them besides moving the lighthouse to the lot. She made the case that moving to the circle was the least favorable option, including an overall greater cost.

-The presentation moved onto the pricing to do engineering work. Elise said 3 off island firms would bid to do the borings and analysis in a price range from $18K – 28K. There was discussion about creating a 501C-3 that could alleviate the public procurement process. Elise talked about International Chimney's successful track record moving other lighthouses and that they are currently working on Chappy moving a house there. She talked about a time frame in October to start the moving process. It takes 3 months to set everything up, a few days for the move and then another 6 months to put everything back together.

-Elise said that anticipated cost would be somewhere around 2 million for everything. She said buying property will be the deciding factor as to how much it will cost. She said there will also be some grant money opportunities and to ask the island CPC's for historic preservation money similar to what the County has done with every town and the courthouse window restoration project. Elise spoke of different fundraising activities that could be planned. She said there's a web site domain name called "Friends of the Gay Head Light" and the Committee's name is "Save the Gay Head Light."

-Elise said the committee has done a straw poll and they favor lot 23 as the lot to move the lighthouse to.

-There was discussion about acquiring more than one lot for ancillary purposes. Jim said there shouldn't be a consideration for additional parking; the Town wants to fully utilize its pay parking lot. Elise stated that acquiring both 23 & 24 would be beneficial in the long run. There was discussion of the circle's road already being close to the cliff drop off and a time will come when it will have to be moved back.

-Jim asked if there's access to lot 23. Elise said there's an easement but the Manning house is on it as well. She said if the house isn't removed, there won't be room for the lighthouse.

-Spencer asked if the committee is thinking about recommending purchasing Lot 23, 25.1 & 25.2. Elise said, "and I think eventually 24 or possibly having the Land Bank purchase it because it could in the future connect to their loop trail. But I think 24 is part of this whole vision." Elise said she thought all the properties could be obtained for $800K and she figured that into the overall 2 million dollar cost.

-There was discussion about who would buy the land. Board members wanted to ensure the town maintains control. There was a discussion about having a separate entity so that donors can specifically give to its cause. Jim asked the status of the Marsh Hawk Trust. Elise said its use will end once there is an establishment of a lighthouse trust fund for people to put their money into. Spencer thanked Elise for her presentation.

-Next on the agenda was a meeting with TJ Hegarty and his review of the County Integrated Pest Control Program. He said the program has now fully shifted its cost to each of the towns since it has become a non-mandated program. The proposed budget for rodent control island wide is $95K. Of that, TJ does private business that brings in $28k in revenue and gets the remaining funds from each town acting as their rodent control officer. Of the $67K due, Aquinnah's share is 2.84% or $1,903.40. He said last year he received a ½ dozen calls from the town. There was discussion about the rodent problem that has recently been reported at the library.

-There was discussion about the mosquito trapping program and the loss of funding from the state. He said each Board of Health has to request the program and pay its share. Richard Skidmore reported that the Town did not approve the program last year because they did not receive information on the program and its costs from TJ, just a proposed bill.

-Next on the agenda was the request from Philip Weinstein of 5 Sandcastle Ln to buy a town owned piece of land that abuts his property. Jim said this one piece of property has been agreed in the past to be sold at its assessed value. There is an opinion from Town Counsel on the matter of the town selling this parcel of land. There was discussion about the Weinstein's coming to the town for this request. Questions were asked as to who, besides the Weinstein's, could bid on the parcel. There was discussion as to what the town would do with the revenue from the sale. Adam was asked to follow up with Rappaport's office as to how to establish a price and how to advertise the parcel's availability.

-In the Town Administrator's report Adam let the Board know that the Town had received a gift from the Aquinnah/Gay Head Community Association of a new conference call machine. The device is timely because the Board had just passed a remote participation by-law and the machine allows people to listen in on meetings clearly and effectively.
Jim made a motion to accept the gift of a Panasonic conference call telephone on behalf of the Town of Aquinnah. Beverly seconded.
**The Board voted 3 – 0 in favor. The motion passed.**
-Adam had a thank you letter prepared and Beverly, Jim and Spencer signed it.
-Adam next showed an amendment page to the recently ratified Library Director's contract. He said the contract had to be amended because benefits that is in the Town's personnel by-laws (bereavement, family sick and maternity leave), were not included in the contract.
Beverly made a motion to ratify the amended changes to Lisa Sherman's personal services contract. Jim seconded.
**The Board voted 3 – 0 in favor. The motion passed.**
-Adam asked that if the Town votes later in the evening the warrant article to support acquiring, renovating and moving the lighthouse, should he seek a nomination of the structure as an Endangered Historic Places List.
By consensus, the Board agreed to pursue the option should the town vote to save the Gay Head Light.
-Adam told everyone that there's a meeting at the Tribal Administration building with the Army Corps of Engineers next Tuesday at 3:00 pm to discuss the technical service they are now providing with a new grant the Tribe has secured for the resource enhancement and protection of Squibby, Stonewall and Menemsha Ponds.

-In Selectmen's Other Business, it was announced that Richard Skidmore resigned as BOH representative to the Land Bank Advisory Committee. Spencer thanked Richard for his many years of service. Jim said he had been seeking someone to replace him on the committee and had gotten word that Woody Vanderhoop had permission from the Tribe to become a member. Jim said because of Richard's resignation, he would stay on the committee.

-Jimmy San Fillippo made a statement that all people who are on the waiting list for the Menemsha lease lots be informed when a lot becomes available. Board members informed Jimmy that the 1st person on the waiting list was

informed that a lot had become available. Brian Vanderhoop's letter from 2000 asking to put on a waiting list was the 1st one received after all the lots had been taken. Brian asked if the northern most lot (Lot A) had become available, why didn't he get it. It was explained that Wendy (Swolinzky) was acquiring the shed that was part of Lot A and that it made sense for her to slide her operation over and have Lot B become the available lot. Brian asked why the lot lines were being changed. Jim said it was because Lot A only had 35' of water frontage and Wendy's two docks measure 65' in total length. Brian asked if the Selectmen are allowed to move the lot lines.
-There was discussion about the existing survey of the creek area owned by the Town and the lot lines put on them. Angela said it was done by Scofield, Barbini & Hoehn 20 years ago but it was never recorded at the Registry of Deeds. Brian said he would prefer Lot A because it was easier to dock in a heavy tide. Jim pointed out that Brian, as Harbormaster, has always enjoyed being able to tie up his boat to the town dock over at West Basin.
Brian said it would be a hardship for him to have only 35 feet to work with in Lot B. He asked that the Selectmen, if town counsel advises that a new survey be done for all the lots, consider splitting right down the middle the frontage lot lines for A & B. That way he would have enough room for a dock big enough to handle his operation. The Board took the request under advisement.

-Spencer asked if any Board Member or those in the audience had any other business to discuss. Hearing none...

Beverly made a motion to adjourn. Jim seconded.
The Board voted 3 – 0 in favor. The motion passed.

The meeting ended at 7:00 pm.

Schedule 6

Menemsha Creek Agreement                                November, 1995

Whereas the state, by Chapter 485 Acts of 1965, transferred and conveyed to the Towns of Gay Head and Chilmark, so much of the land at Menemsha located along the southwesterly side of Menemsha Basin and running along the northwesterly side of Menemsha Creek, as lies within the said respective towns, being the land excepted from the original petition under Land Court Case No. 7706 because of its status as land of the commonwealth,  and

Whereas the aforesaid land at Menemsha was authorized to be conveyed to the towns of Gay Head and Chilmark with the directive that it shall be reserved for and made available to commercial fishermen and shall in no event be sold or conveyed, and

Whereas commercial fishing is an important element in the structure of both towns, and

Whereas the towns, through zoning and Master Plans, have made many efforts to preserve and encourage the growth of commercial fishing as a viable local industry,

Therefore, the Boards of Selectmen of the towns of Gay Head and Chilmark agree to henceforth manage said lands subject to the following definition and conditions,

I.      For the purposes of this agreement a commercial fisherman is any person who for profit, cultivates, harvests, catches or takes or attempts to cultivate, harvest, catch or take any fish or shellfish for purpose of sale, barter or exchange.

II.   1.   Lessee shall be a legal voting resident, for at least ten months per year, of the town in which the lot is located.

      2.   Lessee shall be a bona fide commercial fisherman and shall have engaged in that activity for at least three years prior to application for a lot lease.

      3.   Lessee shall actively use the premises in commercial fishing for not less than six months of each year.

      4.   No subletting or shared usage of lots is permitted, except as provided below.

      5.   Lessee may permit a person related by blood or marriage to share the premises if such person is also an active commercial fisherman subject to the same conditions as Lessee and provided Lessee notifies the Boards of Selectmen in writing prior to such shared usage.

      6.   If the Lessee has succeeded to a lot previously held by another commercial fisherman who no longer meets the conditions set forth, such previous Lessee may be permitted to share the usage with the consent of the Lessee and written notice of such to the Boards of Selectmen.

      7.   Other passages of this agreement not withstanding, lots presently in use by commercial fishermen, who have used them for the last three years or held a state lease (or their fathers held state leases) may keep them under the new lease.

      8.   In considering applications for lots, children of the prior Lessee will be

considered before other applicants, provided that they are actively engaged in commercial fishing and meet all the conditions.

9.   No signs or billboards are to be allowed on buildings other than trade name.

10.  No sleeping quarters are allowed on the premises.

11.  No more than one lot shall be leased to an individual.

12.  Any place of business shall be kept free of litter.

13.  Lessee shall not make or suffer to be made alterations on a lot but with the approbation of the Board of Selectmen, of the town in which the lot exists, thereto in writing having first been obtained.

14.  A Lessee being considered for the renewal of a lease must have fulfilled the above requirements for the last three years or said Lessee shall not be considered for renewal.  The non-conforming lease issued prior to September 11, 1995 shall not be subject to this section, (see section 18 below).

15.  Upon cessation of fishing activity, as outlined above, the lot shall be returned to the town for lease to another qualified commercial fisherman.

16.  Violation of any of these conditions or town regulations shall be deemed sufficient cause for cancellation of a lease.

17.  The Lessor may enter to view and to make improvements and to expel the Lessee if he shall fail to pay the rent or in case of a breach of any conditions on the part of the Lessee.

18.  When currently leased lots with non-conforming uses are abandoned by the Lessee, or not renewed by the town, they shall be made available to commercial fishermen subject to the above conditions.

19.  a.   The Board of Selectmen of each town shall have the authority to veto the issuance of a new lease by the Board of Selectmen in the other town if such veto is based on a deviation from these agreed upon conditions.

     b.   Each new lease after acceptance by the issuing board of selectmen shall, within three days, be forwarded by certified U.S. Mail to the reviewing board of selectmen in the other town.

     c.   This board shall have ten days from the date of receipt in which to review this new lease and take action to veto its execution.

     d.   If the reviewing board fails to veto the lease within the ten days the lease stands and may then be executed by the other board and the applicant, unless a request for more information is made pursuant to section 19 (e) below.

     e.   Should the reviewing board feel more information is required to determine whether or not a lease is deviating from these agreed upon conditions, they shall so inform the issuing board in writing by certified U.S. Mail within ten days after receipt of the proposed lease.  This notification shall include the specific reasons for requesting more information.  The issuing board and/or the applicant shall supply such information in writing to the reviewing board in a timely manner by certified U.S. Mail.  The reviewing board shall have ten additional days

from the receipt of the requested information to review, veto or take no action.

20.  All leases issued by either board of selectmen for a lot in this area shall include on the bottom of such lease a dated certification of review and action taken by the reviewing board of selectmen.  This certification shall be signed by the chairman of the reviewing board of selectmen before said lease is legal and binding.

**Gay Head Board of Selectmen**

David E. Vanderhoop          Russell H. Smith          Walter E. Delaney

Commonwealth of Massachusetts
County of Dukes County, ss.      April 1996
    On this the 8th day of December, 1995, before me personally appeared the Honorable David E. Vanderhoop, Chiarman; Hon. Russell H. Smith; and the Hon. Walter E. Delaney, known to me to be the members of the Gay Head Board of Selectmen described in the foregoing instrument, and acknowledged that they executed the same in their capacity as Selectmen and for the purposes therein contained.
    In witness thereof I hereunto set my hand and official seal.
                                            Notary Public: _____
                                            My Commission expires
                                            June 30, 2000

**Chilmark Board of Selectmen**

Pamela S. Goff          Herbert R. Hancock          Alexander H. Preston

Commonwealth of Massachusetts
County of Dukes County, ss.
    On this the 30th day of November, 1995, before me personally appeared the Honorable Pamela S. Goff, Chiarman; Hon. Herbert R. Hancock; and the Hon. Alexander H. Preston, known to me to be the members of the Chilmark Board of Selectmen described in the foregoing instrument, and acknowledged that they executed the same in their capacity as Selectmen and for the purposes therein contained.
    In witness thereof I hereunto set my hand and official seal.
                                            Notary Public: _____

                                            MY COMMISSION EXPIRES JUNE 28, 2002



\WP6\DOC\CREEKAGR.WPD

Schedule 7



Lease Lot Areas:

A   53 square feet ± (27 s.f. under building)
B   739 square feet ±
C   568 square feet ±
D   597 square feet ±
E   782 square feet ±
F   946 square feet ±
G   497 square feet ± building footprint in Aquinnah
     131 square feet ± building footprint in Chilmark

Menemsha Basin

Menemsha Inlet

floating dock & ramp were existing on September 24, 2013, had been removed by October 16, 2013

floating dock & ramp were existing on September 24, 2013, had been removed by October 16, 2013

North Road

Site Plan
Aquinnah, Mass.
Prepared For
the Aquinnah
Board of Assessor's
Scale: 1" = 20'   November 12, 2013
Schofield, Barbini & Hoehn Inc.
Land Surveying ⊕ Civil Engineering
12 Surveyor's Lane, Box 339
Vineyard Haven, Mass.
508-693-2781
www.sbhinc.net
MV 4684

Notes:
1. UP = utility pole
2. Rip rap extends from line denoted
   as .......... into and below
   observed high water.
3. ○ = wood piling

# EXHIBIT "B"

# COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

---

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST
## RULE 36 REQUESTS FOR ADMISSION

Defendants, the Board of Selectmen of the Town of Aquinnah and Beverly Wright, hereby respond and object to Plaintiff's First Rule 36 Requests for Admission as follows:

1.      That on January 4, 2013, Aquinnah's Board of Selectmen, hereinafter "Board", acting pursuant to G. L. Ch. 30A, Section 20(c), posted public notice of the Board's agenda for a public meeting to be held on January 8, 2013.

**Response No. 1:** Admitted.

2.      That Schedule 1, attached hereto, is a true, accurate and complete copy of its original counterpart referred to in preceding request for admission numbered 1.

**Response No. 2:** Admitted.

3.      That on January 18, 2013, the Board, acting pursuant to G. L. Ch. 30A, Section 20(c), posted public notice of its agenda

**Response No. 3:** Admitted.

4.      That Schedule 2, attached hereto, is a true, accurate, and complete copy of its original counterpart referred to in preceding request for admission numbered 3.

**Response No. 4:** Admitted.

12.     That on September 3, 2013, the Board and Aquinnah's Planning Board Plan Review Committee conducted a joint public meeting for the purpose of discussing the shack situated on Lot A, Easterly of the Menemsha inlet.

**Response No. 12:**  Admitted that the Board of Selectmen and the Planning Board Review Committee met on September 3, 2013 for the purpose of discussing the Menemsha Creek lots. Otherwise, denied.

13.     That Board member James Newman is the Board's representative at meetings of Aquinnah's Planning Board.

**Response No. 13:** Denied.

14.     That Board member James Newman was present and participating at the joint meeting of the Board and Aquinnah's Planning Board Plan Review Committee referred to in preceding request for admission numbered 12.

**Response No. 14:** Admitted.

15.     That as of May 21, 2013, the Board was in possession of the contract dated April 11, 2013 between the Plaintiff and Camille Rose for the sale of the shack on Lot A to the Plaintiff.

**Response No. 15:** Denied.

16.     That no posting by the Board pursuant to G. L. Ch. 30A, section 20(c) prior to its meeting on December 3, 2013 included any agenda item with respect to a taking of the shack by the Board.

**Response No. 16:** Admitted.

17.     That on February 5, 2014, the Board employed section 17 of thre [sic] lease between Camille Rose and the Town of Aquinnah to take possession of the shack situated on Lot A, potions [sic] of which lot are on both Aquinnah and Chilmark real estate.

**Response No. 17:**  Defendants admit that on February 5, 2014, the Board through its counsel advised Camille Rose and Wendy Swolinzky that it was exercising its option under Section 17 of its lease with Camille Rose, dated June 20, 2012, to retain the structure on Lot A under the Town's control, and that Lot A is located in Chilmark and Aquinnah.  Otherwise, denied.

18.     That Schedule 7, attached hereto, is a true, accurate, and complete copy of its original counterpart, Menemsha Basin, Site Plan, prepared for the Aquinnah Board of Assessor's by Schofield, Barbini & Hoehn, Inc. Land Surveying & Civil Engineering Company, dated November 12, 2013.

**Response No. 18:** Admitted.

19.     That the law applicable to the facts of this case includes:  "A memorandum to satisfy the statute of frauds need not be a formal document intended to serve as a memorandum of the contract; but it must contain terms of the contract agreed upon by the parties, the locus (if an interest in real estate is dealt with), in some circumstances the price . . . and it must be signed by the party to be charged or by someone authorized to sign on his behalf . . . Moreover, it is well established that the memorandum need not consist of one document, but may consist of several documents, which, taken together, contain the necessary information."  Donahue v. Heritage Property Inv. Trust, Inc., 21 Mass.L.Rptr.488.

**Response No. 19:**  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

20.     That the law applicable to the facts of this case includes:  "Whether the vote of [January 22, 2013] was an acceptance of the plaintiff's offer, or was an offer to the plaintiff, it was a sufficient memorandum, under the statute of frauds.  The recorded vote of a corporation, or of a committee acting upon a subject over which the committee has power, is a sufficient memorandum. . . The vote became a part of the contract with him. . . the vote itself imports a contract of [lease] by its own terms, and it must, we think, be construed as a binding agreement. . ."  McManus v. City of Boston, 171 Mass. 152 (1898).

**Response No. 20:**  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

21.     That the law applicable to the facts of this case includes:  "The theory of promissory estoppel, as embodied in the Restatement of Contracts Section 90 (1932), permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise. . . Attention is to be focused upon the reasonableness of that reliance."  Loranger Construction Corporation v. E.F. Hauseman Company, 6 Mass.App.Ct. 152.

**Response No. 21:**  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

22.     That by February 5, 2013, the law applicable to the facts of this case includes "everything necessary to the creation of a contract, as distinguished from its performance, had occurred.  All that remained to be done was for the defendant to perform what it had agreed to perform."  Whiting v. Com., 370 Mass. 664 (1976).

**Response No. 22:**  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

23.     That the law applicable to the facts of this case is that the Board had no unilateral right to "change its mind, rescind the vote, as it purported to do, and call the whole deal off, in which event the plaintiff would be without enforceable right or remedy."  Whiting v. Com., 370 Mass. 664 (1976).

**Response No. 23**:  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

24.     That the law applicable to the facts if this case if that the Board "reserved no such [Whiting] right to cancel or rescind the deal in any of the documents of record. . . and no such right is stated or implied in the applicable statutes."  Whiting v. Com., 370 Mass. 664 (1976).

**Response No. 24**:  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

25.     That the law applicable to the facts of this case is "(a) contract made by a vote of a town cannot be rescinded by the town, by a vote at a subsequent meeting, without the consent of the other party."  Allen v. Inhabitants of Taunton, 19 Pick. 485 (1837).

**Response No. 25**:  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

26.     That the Board's April 23, 2013 rescission of its January 22, 2013 vote was made without the consent of the Plaintiff.

**Response No. 26**:  Defendants admit that the Board did not request or receive express consent from Wendy Swolinzky before voting on April 23, 2013 to rescind its vote taken on January 22, 2013.  Otherwise, denied.

27.     That the law applicable to the facts of this case includes the "(u)sual rule for damages in a breach of contract case is that the injured party should be put in the position that would have in had the contract been performed. . . And the award of expectancy damages in breach of contract action may include lost profits."  Situation Management Systems, Inc. v. Malouf, Inc., 430 Mass. 875 (2000).

**Response No. 27**:  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

Signed under the penalties of perjury this 8th day of May, 2014.

_____
Beverly Wright, on behalf of the Board of
Selectmen of Aquinnah, and individually


By their attorney, as to objections,

_____
Daniel C. Perry, Esq. (BBO#395680)
Perry, Hicks, Deshaies and Mello, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net


## CERTIFICATE OF SERVICE

I, Daniel C. Perry, hereby certify under the penalties of perjury that a true copy of the foregoing pleading was served upon all parties/counsel of record by mailing same first-class mail, postage prepaid to the following people at the following address on May 8th, 2014:

baro@comcast.net

Robert F. Oberkoetter, Esq.
P.O. Box 77
Russells Mills, MA 02714

_____
Daniel C. Perry, Esq., BBO #395680

6

# EXHIBIT "C"

## COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually
Vernon Welch, individually

### PLAINTIFF'S SECOND RULE 36 REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the  Rules of Civil Procedure, Plaintiff requests the
Defendants, for the purposes of the pending action only,  admit the truth of the matters
set forth below that relate to statements or opinions of fact or the application of law to
the facts of this case, including the genuineness of the attached documents.

28. That Schedule 8, attached hereto, correspondence from Daniel C. Perry, Esq. to
Defendant Beverly Wright, is a true, complete, and genuine copy of its original
counterpart.

29. That each averment of fact concerning the affinity and consanguinity relationships
among Beverly Wright, Berta Welch and Vernon Welch contained in Schedule 8 is true.

30. That Schedule 9, attached hereto, correspondence from Deirdre Roney, General Counsel to Daniel C. Perry, is a true, accurate and genuine copy of its original counterpart.

31. That the correspondence referred to in the preceding request for admission numbered 30 does not condone, approve, exonerate or give consent to any conduct by Beverly Wright in meetings of the Board on April 2, 2013, April 23, 2013, May 21, 2013, and June 4, 2013.

32. That Schedule 10,  Beverly Wright's Disclosure of Appearance of Conflict of Interest as Required by A, Section 23(b)(3), dated June 7, 2013, is a true, accurate and genuine copy of its original counterpart.

33. That Schedule 10,  Beverly Wright's Disclosure of Appearance of Conflict of Interest as Required by A, Section 23(b)(3), dated June 7, 2013, has no retrospective prophylactic  or exonerative application

34. That at no time from December 2012 to June 7, 2013 did Beverly Wright formally disclose her employment relationship with Berta Welch in any public meeting of the Board of Aquinnah.

35. That Beverly Wright is a municipal employee as defined by Section (g) of the Conflict of Interest Law as Amended by 194, Acts of 2011.

36. That municipal employees are specifically prohibited from acting on matters affecting themselves, their immediate family, the employee and his or her spouse; a business organization in which they are employee, or any person with whom they are negotiating for, or have, any arrangement concerning present or future employment.

37. That Beverly Wright's husband, Robert MacDiarmid, is Berta Welch's first  cousin.

38. That municipal employees must avoid conduct which creates a reasonable impression that they will act with bias.

39. That Beverly Wright's public disclosure, Schedule 10, referred to in preceding request for admission numbered 31, was not made prior to her official participation in or

action taken during the Board's meetings of February 5, 2013, April 2, 2013, April 23, 2013, May 21, 2013, June 4, 2013.

40. That use of an official position to secure an unwarranted privilege for someone is always prohibited, regardless of whether the preceding public disclosure procedure is followed.

By the Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 3753450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

I hereby certify that I have this 18th day of April 2014 served a true copy of the within **PLAINTIFF'S SECOND RULE 36 REQUESTS FOR ADMISSION** on each other party by first class mail to the office of Daniel C. Perry, 388 County Street, New Bedford, MA 02740.

Robert F. Oberkoetter, Esq.



PERRY, HICKS AND DESHAIES, LLP

ATTORNEYS AT LAW
388 COUNTY STREET
NEW BEDFORD, MASSACHUSETTS 02740-4992

RECEIVED
STATE ETHICS COMMISSION

2013 JUN 10 AM 9: 37

DANIEL C. PERRY
MARC R. DESHAIES

AMY S. MELLO*
*ALSO ADMITTED IN R.I.

TELEPHONE
(508) 996-8291

TELECOPIER
(508) 997-2637

LEONARD E. PERRY
(1935-1999)

EDWARD D. HICKS
(1935-2002)

INFO@PERRYHICKS.NET
WWW.PERRYHICKS.NET

June 6, 2013

Schedule 8



COPY

Beverly Wright, Selectmen
Town of Aquinnah
65 State Road
Aquinnah, MA 02535

Re:    Question of Conflict of Interest;
       Award of Lease for Lot A Menemsha

Dear Ms. Wright:

You have asked me for my opinion, as special counsel to the Town, as to the application of the Massachusetts Conflict of Interest law, General Laws chapter 268A, to your participation as a selectman of Aquinnah in a decision to award a lease of Town owned land to Vernon Welch. I understand that two concerns have been raised. First, Mr. Welch's wife has employed you on an occasional basis. Second, a Trust of which your husbands' grandchildren are potential beneficiaries may also have a financial interest in the leased property.

1. The Employment Issue. You advise me that Vernon Welch is married to Berta Welch, who is a partner in a business in Aquinnah for which you have historically worked part time in the summer. Although you have no specific agreement, it is likely that you will continue such work in the upcoming summer. Vernon Welch has no interest in the business.

In my opinion, the statute does not unconditionally prohibit your participation by reason of your past or possible future employment. The pertinent section of the statute is General Laws chapter 268A, § 19, which provides that:

(a)  Except as permitted by paragraph (b), a municipal employee who participates as such an employee in a particular manner in which to his knowledge he, his immediate family or partner, a business organization in which he is serving as officer, director, trustee, partner or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest, shall be punished by a fine of not more than $10,000, or by imprisonment

in the state prison for not more than 5 years, or in a jail or house of correction for not more than 2 ½ years, or both. (emphasis added).

I will assume for purposes of the opinion that your expectation of future employment by Ms. Welch's partnership is one that could be characterized as "an arrangement [with Ms. Welch] concerning prospective employment." However, the prohibition of section 19(a) does not extend to spouses of persons with whom you have an understanding regarding employment. Because Vernon Welch has no interest in the partnership that has occasionally employed you, the statute does not prohibit you from participating in a decision that affects his interest but not Ms. Welch's.

A second issue that you should consider is whether you're your participation runs afoul of section 23 (b) of Chapter 268A by virtue of your occasional employment by Ms. Welch. That section provides in pertinent part:

No current officer or employee of a state, county or municipal agency shall knowingly, or with reason to know:...

(3) act in a manner which would cause a reasonable person, having knowledge of the relevant circumstances, to conclude that any person can improperly influence or unduly enjoy his favor in the performance of his official duties, or that he is likely to act or fail to act as a result of kinship, rank, position or undue influence of any party or person. **It shall be unreasonable to so conclude if such officer or employee has disclosed in writing to his appointing authority or, if no appointing authority exists, discloses in a manner which is public in nature, the facts which would otherwise lead to such a conclusion**

I suggest that you file the disclosure form contemplated by this section in connection with your participation on the vote. The disclosure should be filed with the Town Clerk.

2. The Trust Issue. The second concern that has been raised is somewhat more scomplicated. The lease pertains to a parcel of land, known as Lot "A," with frontage on Menemsha harbor. Lot "A" is improved by a shed, historically used to support fishing. There exists a general understanding that the buildings on the lots in this area, which were owned by the Commonwealth at one time, belong to the tenants, and, on similar lots, new lessees have "purchased" the buildings from prior owners. (As you know, I have expressed some doubt about whether that assumption about the status of the buildings is accurate, given the language in the leases.) You have advised me that a Trust established by your husband's late uncle, Alfred Vanderhoop, who once leased the lot, asserts an ownership interest in the building; there is a disagreement between the existing tenant, Camille Rose, and the Trust concerning their respective interests. If the Trust's position is correct, it may stand to profit from transfer of the building, but your decision to award the lease to a tenant will leave the question of building ownership open, and require the tenant to deal directly with any such claims.

Berta Welch, your occasional employer, is one of several trustees of the Trust, but she is not a beneficiary. The Trust provides potential financial support for higher education of the descendants of Mr. Vanderhoop's siblings. Neither your husband nor his children are potential beneficiaries of the Trust. The Trust potentially could provide financial assistance for your husband's grandchildren in connection with their higher education.

In my opinion, the interest of the Trust in the property is not disqualifying under section 19(a). It does not appear to me that the Trust itself has a financial interest in the lease. Your decision regarding the lease has no direct consequences to the Trust; if it in fact has an interest in the building, the decision as to whether it sells the building is essentially unrelated to your decision to award a ground lease. But even if the Trust does have a financial interest, because the Trust does not financially benefit your husband or any of his children, no member of your "immediate family" as defined by Chapter 268A, (which would include your husband's children, but not his grandchildren) has a financial interest in the Trust. Nor does Ms. Welch have a financial interest in the decision. The bar applies if a financial interest is held by an organization of which **you** are a Trustee, or by a person with whom you have a prospective employment relationship, but not, without more, if a financial interest is held by an organization whose trustees include a person with whom you have a prospective employment relationship.

This is again, howver, a situation in which your complex relationship with the Trust and the Trust's potential interest in the property may at least raise a question of whether you are subject to "undue influence" under section 23 (b). I therefore also recommend that you include the interest of the Trust in a disclosure statement under section 23(b).

Very truly yours,

DANIEL C. PERRY

DCP/tmf

cc:   Aquinnah Town Clerk
      State Ethics Commission

Schedule 10

## DISCLOSURE OF APPEARANCE OF CONFLICT OF INTEREST
### AS REQUIRED BY G. L. c. 268A, § 23(b)(3)

| | PUBLIC EMPLOYEE INFORMATION |
|---|---|
| Name of public employee: | Beverly Wright |
| Title or Position: | Selectman, Town of Aquinnah |
| Agency/Department: | |
| Agency address: | 65 State Road, Aquinnah, MA 02535 |
| Office Phone: | 508 645 - 2300 |
| Office E-mail: | aqbos@comcast.net |
| | In my capacity as a state, county or municipal employee, I am expected to take certain actions in the performance of my official duties. Under the circumstances, a reasonable person could conclude that a person or organization could unduly enjoy my favor or improperly influence me when I perform my official duties, or that I am likely to act or fail to act as a result of kinship, rank, position or undue influence of a party or person.<br><br>I am filing this disclosure to disclose the facts about this relationship or affiliation and to dispel the appearance of a conflict of interest. |
| | APPEARANCE OF FAVORITISM OR INFLUENCE |
| Describe the issue that is coming before you for action or decision. | Decision to award Lease on Land owned by Town known as Lot A, on Menemsha Harbor |
| What responsibility do you have for taking action or making a decision? | I vote to award the lease and execute the Lease in the name of the Town |
| Explain your relationship or affiliation to the person or organization. | The prospective tenant, Vernon Welch is married to Berta Welch, for whom I have historically worked part time in the summer.<br><br>Also, a Trust created by Alfred Vanderhoop may have a potential interest in a building on the land to be leased, which the tenant may decide to purchase. Berta Welch is one of three trustees of that Trust, and my husband's grandchildren are potential beneficiaries of that Trust |
| How do your official actions or decision matter to the person or organization? | See above |

| Optional: Additional facts – e.g., why there is a low risk of undue favoritism or improper influence. | |
|---|---|
| If you cannot confirm this statement, you should recuse yourself. | **WRITE AN X TO CONFIRM THE STATEMENT BELOW.**<br><br>___ Taking into account the facts that I have disclosed above, I feel that I can perform my official duties objectively and fairly. |
| Employee signature: | *Beverly M Wright* |
| Date: 6/7/13 | |

Attach additional pages if necessary.

Not elected to your public position – file with your appointing authority.

Elected state or county employees – file with the State Ethics Commission.

Members of the General Court – file with the House or Senate clerk or the State Ethics Commission.

Elected municipal employee – file with the City Clerk or Town Clerk.

Elected regional school committee member – file with the clerk or secretary of the committee.

Form revised July, 2012

# EXHIBIT "D"



# COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## SECOND RULE 36 REQUESTS FOR ADMISSION

Defendants, the Board of Selectmen of the Town of Aquinnah and Beverly Wright,
hereby respond and object to Plaintiff's Second Rule 36 Requests for Admission as follows:

28.     That Schedule 8, attached hereto, correspondence from Daniel C. Perry, Esq. to
Defendant Beverly Wright, is a true, complete, and genuine copy of its original counterpart.

**Response No. 28:**  Admitted.

29.     That each averment of fact concerning the affinity and consanguinity relationships
amount Beverly Wright, Berta Welch and Vernon Welch contained in Schedule 8 is true.

**Response No. 29:**  Admitted.

30.     That Schedule 9, attached hereto, correspondence from Deirdre Roney, General Counsel
to Daniel C. Perry, is a true, accurate and genuine copy of its original counterpart.

**Response No. 30:**  Admitted.

31.     That the correspondence referred to in the preceding request for admission numbered 30
does not condone, approve, exonerate or give consent to any conduct by Beverly Wright in
meetings of the Board on April 2, 2013, April 23, 2013, May 21, 2013, and June 4, 2013.

**Response No. 31:**  Denied.

1

32.    That Schedule 10, Beverly Wright's Disclosure of Appearance of Conflict of Interest as Required by A, Section 23(b)(3), dated June 7, 2013, is a true, accurate and genuine copy of its original counterpart.

**Response No. 32**: Admitted.

33.    That Schedule 10, Beverly Wright's Disclosure of Appearance of Conflict of Interest as Required by A, Section 23(b)(3), dated June 7, 2013, has no retrospective prophylactic or exonerative application.

**Response No. 33**: Denied.

34.    That at no time from December 2012 to June 7, 2013 did Beverly Wright formally disclose her employment relationship with Berta Welch in any public meeting of the Board of Aquinnah.

**Response No. 34**: Admitted.

35.    That Beverly Wright is a municipal employee as defined by Section (g) of the Conflict of Interest Law as Amended by 194, Acts of 2011.

**Response No. 35**: Admitted.

36.    That municipal employees are specifically prohibited from acting on matters affecting themselves, their immediate family, the employee and his or her spouse; a business organization in which they are employee, or any person with whom they are negotiating for, or have, any arrangement concerning present or future employment.

**Response No. 36**: Defendants object to this request on the ground that it does not call for application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

37.    That Beverly Wright's husband, Robert MacDiarmid, is Berta Welch's first cousin.

**Response No. 37**: Admitted.

38.    That municipal employees must avoid conduct which creates a reasonable impression that they will act with bias.

**Response No. 38**: Defendants object to this request on the ground that it does not call for application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

39.    That Beverly Wright's public disclosure, Schedule 10, referred to in preceding request for admission numbered 31, was not made prior to her official participation in or action taken during

the Board's meetings of February 5, 2013, April 2, 2013, April 23, 2013, May 21, 2013, June 4, 2013.

**Response No. 39**:  Admitted.

40.     That use of an official position to secure an unwarranted privilege for someone is always prohibited, regardless of whether the preceding public disclosure procedure is followed.

**Response No. 40**:  Defendants object to this request on the ground that it does not call for application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

Signed under the penalties of perjury this ___8th___ day of May, 2014.

_____
Beverly Wright, on behalf of the Board of
Selectmen of Aquinnah, and individually

By their attorney, as to objections,

_____
Daniel C. Perry, Esq. (BBO#395680)
Perry, Hicks and Deshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net

## CERTIFICATE OF SERVICE

I, Daniel C. Perry, hereby certify under the penalties of perjury that a true copy of the foregoing pleading was served upon all parties/counsel of record by mailing same first-class mail, postage prepaid to the following people at the following address on May ___8th___, 2014:

baro@comcast.net
Robert F. Oberkoetter, Esq.
P.O. Box 77
Russells Mills, MA 02714

_____
Daniel C. Perry, Esq.

3



# COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Aquinnah Board of Selectmen
Beverly Wright, individually

Dear Mr. Sollitto:

    Pursuant to Rule 9A, enclosed for filing and decision by the Court are the following documents:

    (1) Plaintiff's Motion to Determine Insufficiency; and
    (2) Defendants' Opposition and related papers.

    I thank you for your continuing cooperation and courtesies.

Robert F. Oberkoetter, Esq.
BBO #375450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

**FILED**
SUPERIOR COURT
COUNTY OF DUKES COUNTY

JUL 16 2014

REC'D
_____ CLERK

I hereby certify that I have served a true copy of this document on each other party by first class mail to John J. Davis, 90 Canal Street, Boston, MA 02114

Robert F. Oberkoetter, Esq.

(32)

COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049



Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually
Vernon Welch, individually

## PLAINTIFF'S FIRST RULE 36 REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Rules of Civil Procedure, Plaintiff requests the Defendants, for the purposes of the pending action only, admit the truth of the matters set forth below that relate to statements or opinions of fact or the application of law to the facts of this case, including the genuineness of the attached documents.

1. That on January 4, 2013, Aquinnah's Board of Selectmen, hereinafter "Board", acting pursuant to G. L. Ch. 30A, Section 20(c), posted public notice of the Board's agenda for a public meeting to be held on January 8, 2013.

2. That Schedule 1, attached hereto, is a true, accurate and complete copy of its original counterpart referred to in preceding request for admission numbered 1.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

JUL 18 2014

REC'D
CLERK

3. That on January 18, 2013, the Board, acting pursuant to G. L. Ch. 30A, Section 20(c), posted public notice of its agenda for a public meeting to be held on January 22, 2013.

4. That Schedule 2, attached hereto, is a true, accurate, and complete copy of its original counterpart referred to in preceding request for admission numbered 3.

5. That Schedule 3, attached hereto, is a true, accurate, and complete copy of its original counterpart Minutes of the Meeting of the Board of January 8, 2014.

6. That Schedule 4, attached hereto, is a true, accurate, and complete copy of the Minutes of the Meeting of the Board of January 22, 2013.

7. That on January 22, 2013, the Board voted unanimously to approve and accept the Minutes of the Meeting of the Board of January 8, 2013.

8. That Schedule 5, attached hereto, is a true, accurate, and complete copy of its original counterpart.

9. That on January 8, 2013 January 22, 2013, the Board was empowered by G. L. Ch. 40, section 3 to make such orders as it deems necessary or expedient for the use of its property,  to lease, and otherwise control the real estate of Aquinnah.

10. That pursuant to Section II of the Menemsha Creek Agreement between Gay Head [Aquinnah] and Chilmark: #11. No more than one lot shall be leased to an individual.

11. That Schedule 6, The Menemsha Creek Agreement, is a true, complete, and accurate copy of its original counterpart.

12. That on September 3, 2013, the Board and Aquinnah's Planning Board Plan Review Committee conducted a joint public meeting for the purpose of discussing the shack situated on Lot A,  Easterly of the Menemsha Inlet.

13. That Board member James Newman is the Board's representative at meetings of Aquinnah's Planning Board.

14. That Board member James Newman was present and participating at the joint meeting of the Board and Aquinnah's Planning Board Plan Review Committee referred to in preceding request for admission numbered 12.

15. That as of May 21, 2013, the Board was in possession of the contract dated April 11, 2013 between the Plaintiff and Camille Rose for the sale of the shack on Lot A to the Plaintiff.

16. That no posting by the Board pursuant to G. L.Ch 30A, Section 20(c) prior to its meeting on December 3, 2013 included any agenda item with respect to a taking of the shack by the Board.

17. That on February 5, 2014, the Board employed section 17 of thre lease between Camille Rose and the Town of Aquinnah to take possession of the shack situated on Lot A, potions of which lot  are on both Aquinnah and Chilmark real estate.

18. That Schedule 7, attached hereto, is a true, accurate, and complete copy of its original counterpart, Menemsha Basin, Site Plan,  prepared for the Aquinnah Board of Assessor's  by Schofield, Barbini, & Hoehn, Inc. Land Surveying & Civil Engineering company, dated  November 12, 2013.

19. That the law applicable to the facts of this case includes: "A memorandum to satisfy the statute of frauds need not be a formal document intended to serve as a memorandum of the contract; but it must contain terms of the contract agreed upon by the parties, the locus (if an interest in real estate is dealt with), in some circumstances the price…and it must be signed by the party to be charged or by someone authorized to sign on his behalf…Moreover, it is well established that the memorandum need not consist of one document, but may consist of several documents, which, taken together, contain the necessary information." Donahue v. Heritage Property Inv. Trust, Inc.  21 Mass.L.Rptr.488.

20. That the law applicable to the facts of this case includes: "Whether the vote of {January 22, 2013] was an acceptance of the plaintiff's offer, or was an offer to the plaintiff, it was a sufficient memorandum, under the statute of frauds. The recorded vote of a corporation, or of a committee acting upon a subject over which the committee has power, is a sufficient memorandum… The vote became a part of the contract with him… the vote itself imports a contract of [lease] by its own terms, and it must, we think, be construed as a binding agreement…" McManus v. City of Boston, 171 Mass. 152 (1898).

21. That the law applicable to the facts of this case includes: "The theory of promissory estoppel, as embodied in the Restatement of Contracts Section 90 (1932), permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise...Attention is to be focused upon the reasonableness of that reliance." Loranger Construction Corporation v. E.F. Hauserman Company, 6 Mass.App.Ct. 152.

22. That by February 5, 2013, the law applicable to the facts of this case includes "everything necessary to the creation of a contract, as distinguished from its performance, had occurred. All that remained to be done was for the defendant to perform what it had agreed to perform." Whiting v. Com., 370 Mass. 664 (1976)

23. That the law applicable to the facts of this case is that the Board had no unilateral right to "change its mind, rescind the vote, as it purported to do, and call the whole deal off, in which event the plaintiff would be without enforceable right or remedy". Whiting v. Com., 370 Mass 664 (1976)

24. That the law applicable to the facts if this case is that the Board "reserved no such [Whiting] right to cancel or rescind the deal in any of the documents of record... and no such right is stated or implied in the applicable statutes". Whiting v. Com, 370 Mass 664 (1976).

25. That the law applicable to the facts of this case is "(a) contract made by a vote of a town cannot be rescinded by the town, by a vote at a subsequent meeting, without the consent of the other party." Allen v. Inhabitants of Taunton, 19 Pick. 485 (1837).

26. That the Board's April 23, 2013 rescission of its January 22, 2013 vote was made without the consent of the Plaintiff.

27. That the law applicable to the facts of this case includes the "(u)sual rule for damages in a breach of contract case is that the injured party should be put in the position that would have in had the contract been performed...And the award

of expectancy damages in breach of contract action may include lost profits."
<u>Situation Management Systems, Inc. v. Malouf, Inc.,</u> 430 Mass. 875 (2000).


By the Plaintiff's attorney,


Robert F. Oberkoetter, Esq.
BBO 3753450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

I hereby certify that I have this 17th day of April 2014 served a true copy of the within
**<u>PLAINTIFF'S FIRST RULE 36 REQUESTS FOR ADMISSION</u>** on each other party by
first class mail to the office of Daniel C. Perry, 388 County Street, New Bedford, MA
02740.


Robert F. Oberkoetter, Esq.



33

# COMMONWEALTH OF MASSACHUSETTS

**DUKES, ss.**

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

## DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST
## RULE 36 REQUESTS FOR ADMISSION

Defendants, the Board of Selectmen of the Town of Aquinnah and Beverly Wright, hereby respond and object to Plaintiff's First Rule 36 Requests for Admission as follows:

1.    That on January 4, 2013, Aquinnah's Board of Selectmen, hereinafter "Board", acting pursuant to G. L. Ch. 30A, Section 20(c), posted public notice of the Board's agenda for a public meeting to be held on January 8, 2013.

**Response No. 1**:  Admitted.

2.    That Schedule 1, attached hereto, is a true, accurate and complete copy of its original counterpart referred to in preceding request for admission numbered 1.

**Response No. 2**:  Admitted.

3.    That on January 18, 2013, the Board, acting pursuant to G. L. Ch. 30A, Section 20(c), posted public notice of its agenda

**Response No. 3**:  Admitted.

4.    That Schedule 2, attached hereto, is a true, accurate, and complete copy of its original counterpart referred to in preceding request for admission numbered 3.

**Response No. 4**:  Admitted.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

JUL 18 2014

REC'D
CLERK

1

5.     That Schedule 3, attached hereto, is a true, accurate, and complete copy of its original counterpart Minutes of the Meeting of the Board of January 8, 2014.

**Response No. 5**:  Admitted.

6.     That Schedule 4, attached hereto, is a true, accurate and complete copy of the Minutes of the Meeting of the Board of January 22, 2013.

**Response No. 6**:  Admitted.

7.     That on January 22, 2013, the Board voted unanimously to approve and accept the Minutes of the Meeting of the Board of January 8, 2013.

**Response No. 7**:  Admitted.

8.     That Schedule 5, attached hereto, is a true, accurate, and complete copy of its original counterpart.

**Response No. 8**:  Admitted.

9.     That on January 8, 2013 January 22, 2013, the Board was empowered by G. L. Ch. 40, section 3 to make such orders as it deems necessary or expedient for the use of its property, to lease, and otherwise control the real estate of Aquinnah.

**Response No. 9**:  Defendants admit that, on January 8, 2013 and January 22, 2013, the Board had authority under General Laws chapter 40, section 3 to lease property of the Town other than schoolhouses for a period of up to ten years, subject to the requirements of Massachusetts General Laws chapter 30B, section 16 to the extent applicable, and that, on those date real estate owned by the Town not by by-law or vote of the Town placed in the charge of another board, officer or department was under the control of the Board.  Otherwise, denied.

10.    That pursuant to Section II of the Menemsha Creek Agreement between Gay Head [Aquinnah] and Chilmark: #11.  No more than one lot shall be leased to an individual.

**Response No. 10**:  Defendants object to this request because (1) it is ungrammatical and ambiguous and (2) it extracts a quote from a document that is devoid of context required to understand its meaning.

11.    That Schedule 6, The Menemsha Creek Agreement, is a true, complete, and accurate copy of its original counterpart.

**Response No. 11**:  Admitted.

12.     That on September 3, 2013, the Board and Aquinnah's Planning Board Plan Review Committee conducted a joint public meeting for the purpose of discussing the shack situated on Lot A, Easterly of the Menemsha inlet.

**Response No. 12**:  Admitted that the Board of Selectmen and the Planning Board Review Committee met on September 3, 2013 for the purpose of discussing the Menemsha Creek lots. Otherwise, denied.

13.     That Board member James Newman is the Board's representative at meetings of Aquinnah's Planning Board.

**Response No. 13**:  Denied.

14.     That Board member James Newman was present and participating at the joint meeting of the Board and Aquinnah's Planning Board Plan Review Committee referred to in preceding request for admission numbered 12.

**Response No. 14**:  Admitted.

15.     That as of May 21, 2013, the Board was in possession of the contract dated April 11, 2013 between the Plaintiff and Camille Rose for the sale of the shack on Lot A to the Plaintiff.

**Response No. 15**:  Denied.

16.     That no posting by the Board pursuant to G. L. Ch. 30A, section 20(c) prior to its meeting on December 3, 2013 included any agenda item with respect to a taking of the shack by the Board.

**Response No. 16**:  Admitted.

17.     That on February 5, 2014, the Board employed section 17 of thre [sic] lease between Camille Rose and the Town of Aquinnah to take possession of the shack situated on Lot A, potions [sic] of which lot are on both Aquinnah and Chilmark real estate.

**Response No. 17**:  Defendants admit that on February 5, 2014, the Board through its counsel advised Camille Rose and Wendy Swolinzky that it was exercising its option under Section 17 of its lease with Camille Rose, dated June 20, 2012, to retain the structure on Lot A under the Town's control, and that Lot A is located in Chilmark and Aquinnah.  Otherwise, denied.

18.     That Schedule 7, attached hereto, is a true, accurate, and complete copy of its original counterpart, Menemsha Basin, Site Plan, prepared for the Aquinnah Board of Assessor's by Schofield, Barbini & Hoehn, Inc. Land Surveying & Civil Engineering Company, dated November 12, 2013.

**Response No. 18**:  Admitted.

19.     That the law applicable to the facts of this case includes: "A memorandum to satisfy the statute of frauds need not be a formal document intended to serve as a memorandum of the contract; but it must contain terms of the contract agreed upon by the parties, the locus (if an interest in real estate is dealt with), in some circumstances the price . . . and it must be signed by the party to be charged or by someone authorized to sign on his behalf . . . Moreover, it is well established that the memorandum need not consist of one document, but may consist of several documents, which, taken together, contain the necessary information." Donahue v. Heritage Property Inv. Trust, Inc., 21 Mass.L.Rptr.488.

**Response No. 19**:  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

20.     That the law applicable to the facts of this case includes: "Whether the vote of [January 22, 2013] was an acceptance of the plaintiff's offer, or was an offer to the plaintiff, it was a sufficient memorandum, under the statute of frauds.  The recorded vote of a corporation, or of a committee acting upon a subject over which the committee has power, is a sufficient memorandum. . . The vote became a part of the contract with him. . . the vote itself imports a contract of [lease] by its own terms, and it must, we think, be construed as a binding agreement. . ." McManus v. City of Boston, 171 Mass. 152 (1898).

**Response No. 20**:  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

21.     That the law applicable to the facts of this case includes:  "The theory of promissory estoppel, as embodied in the Restatement of Contracts Section 90 (1932), permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise. . . Attention is to be focused upon the reasonableness of that reliance." Loranger Construction Corporation v. E.F. Hauseman Company, 6 Mass.App.Ct. 152.

**Response No. 21**:  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

22.     That by February 5, 2013, the law applicable to the facts of this case includes "everything necessary to the creation of a contract, as distinguished from its performance, had occurred.  All that remained to be done was for the defendant to perform what it had agreed to perform." Whiting v. Com., 370 Mass. 664 (1976).

**Response No. 22**:  Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

23.    That the law applicable to the facts of this case is that the Board had no unilateral right to "change its mind, rescind the vote, as it purported to do, and call the whole deal off, in which event the plaintiff would be without enforceable right or remedy." Whiting v. Com., 370 Mass. 664 (1976).

**Response No. 23**: Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

24.    That the law applicable to the facts if this case if that the Board "reserved no such [Whiting] right to cancel or rescind the deal in any of the documents of record. . . and no such right is stated or implied in the applicable statutes." Whiting v. Com., 370 Mass. 664 (1976).

**Response No. 24**: Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

25.    That the law applicable to the facts of this case is "(a) contract made by a vote of a town cannot be rescinded by the town, by a vote at a subsequent meeting, without the consent of the other party." Allen v. Inhabitants of Taunton, 19 Pick. 485 (1837).

**Response No. 25**: Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

26.    That the Board's April 23, 2013 rescission of its January 22, 2013 vote was made without the consent of the Plaintiff.

**Response No. 26**: Defendants admit that the Board did not request or receive express consent from Wendy Swolinzky before voting on April 23, 2013 to rescind its vote taken on January 22, 2013. Otherwise, denied.

27.    That the law applicable to the facts of this case includes the "(u)sual rule for damages in a breach of contract case is that the injured party should be put in the position that would have in had the contract been performed. . . And the award of expectancy damages in breach of contract action may include lost profits." Situation Management Systems, Inc. v. Malouf, Inc., 430 Mass. 875 (2000).

**Response No. 27**: Defendants object to this request on the grounds that it does not call for the application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

Signed under the penalties of perjury this _8th_ day of May, 2014.

_Beverly M Wright_

Beverly Wright, on behalf of the Board of
Selectmen of Aquinnah, and individually

**By their attorney, as to objections,**

Daniel C. Perry, Esq. (BBO#395680)
Perry, Hicks, Deshaies and Mello, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net

## CERTIFICATE OF SERVICE

I, Daniel C. Perry, hereby certify under the penalties of perjury that a true copy of the foregoing pleading was served upon all parties/counsel of record by mailing same first-class mail, postage prepaid to the following people at the following address on May _8th_, 2014:

baro@comcast.net

Robert F. Oberkoetter, Esq.
P.O. Box 77
Russells Mills, MA 02714

Daniel C. Perry, Esq., BBO #395680



# COMMOMWEALTH OF MASSACHUSETTS

DUKES, SS

SUPERIOR COURT
No. DUCV2013-00049



A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky
D/B/A *BookaBoat*

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually
Vernon Welch, individually

## PLAINTIFF'S SECOND RULE 36 REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the  Rules of Civil Procedure, Plaintiff requests the Defendants, for the purposes of the pending action only,  admit the truth of the matters set forth below that relate to statements or opinions of fact or the application of law to the facts of this case, including the genuineness of the attached documents.

28. That Schedule 8, attached hereto, correspondence from Daniel C. Perry, Esq. to Defendant Beverly Wright, is a true, complete, and genuine copy of its original counterpart.

29. That each averment of fact concerning the affinity and consanguinity relationships among Beverly Wright, Berta Welch and Vernon Welch contained in Schedule 8 is true.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

JUL 18 2014

REC'D
_____ CLERK

30. That Schedule 9, attached hereto, correspondence from Deirdre Roney, General Counsel to Daniel C. Perry, is a true, accurate and genuine copy of its original counterpart.

31. That the correspondence referred to in the preceding request for admission numbered 30 does not condone, approve, exonerate or give consent to any conduct by Beverly Wright in meetings of the Board on April 2, 2013, April 23, 2013, May 21, 2013, and June 4, 2013.

32. That Schedule 10,  Beverly Wright's Disclosure of Appearance of Conflict of Interest as Required by A, Section 23(b)(3), dated June 7, 2013, is a true, accurate and genuine copy of its original counterpart.

33. That Schedule 10,  Beverly Wright's Disclosure of Appearance of Conflict of Interest as Required by A, Section 23(b)(3), dated June 7, 2013, has no retrospective prophylactic  or exonerative application

34. That at no time from December 2012 to June 7, 2013 did Beverly Wright formally disclose her employment relationship with Berta Welch in any public meeting of the Board of Aquinnah.

35. That Beverly Wright is a municipal employee as defined by Section (g) of the Conflict of Interest Law as Amended by 194, Acts of 2011.

36. That municipal employees are specifically prohibited from acting on matters affecting themselves, their immediate family, the employee and his or her spouse; a business organization in which they are employee, or any person with whom they are negotiating for, or have, any arrangement concerning present or future employment.

37. That Beverly Wright's husband, Robert MacDiarmid, is Berta Welch's first  cousin.

38. That municipal employees must avoid conduct which creates a reasonable impression that they will act with bias.

39. That Beverly Wright's public disclosure, Schedule 10, referred to in preceding request for admission numbered 31, was not made prior to her official participation in or

action taken during the Board's meetings of February 5, 2013, April 2, 2013, April 23, 2013, May 21, 2013, June 4, 2013.

40. That use of an official position to secure an unwarranted privilege for someone is always prohibited, regardless of whether the preceding public disclosure procedure is followed.

By the Plaintiff's attorney,

Robert F. Oberkoetter, Esq.
BBO 3753450
Post Office Box 77
Russells Mills, MA 02714
T: 508-536-5364
F: 508-536-5395
C: 508-264-8108
baro@comcast.net

I hereby certify that I have this 18th day of April 2014 served a true copy of the within **PLAINTIFF'S SECOND RULE 36 REQUESTS FOR ADMISSION** on each other party by first class mail to the office of Daniel C. Perry, 388 County Street, New Bedford, MA 02740.

Robert F. Oberkoetter, Esq.



# COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

**SUPERIOR COURT DEPARTMENT**
**Docket No. DUCV2013-00049**

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

Wendy Swolinzky d/b/a
BookaBoat

v.

Beverly Wright, Spencer Booker and
James Newman, as they are the
Aquinnah Board of Selectmen, and
Beverly Wright, individually

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## SECOND RULE 36 REQUESTS FOR ADMISSION

Defendants, the Board of Selectmen of the Town of Aquinnah and Beverly Wright, hereby respond and object to Plaintiff's Second Rule 36 Requests for Admission as follows:

28.    That Schedule 8, attached hereto, correspondence from Daniel C. Perry, Esq. to Defendant Beverly Wright, is a true, complete, and genuine copy of its original counterpart.

**Response No. 28**:  Admitted.

29.    That each averment of fact concerning the affinity and consanguinity relationships amount Beverly Wright, Berta Welch and Vernon Welch contained in Schedule 8 is true.

**Response No. 29**:  Admitted.

30.    That Schedule 9, attached hereto, correspondence from Deirdre Roney, General Counsel to Daniel C. Perry, is a true, accurate and genuine copy of its original counterpart.

**Response No. 30**:  Admitted.

31.    That the correspondence referred to in the preceding request for admission numbered 30 does not condone, approve, exonerate or give consent to any conduct by Beverly Wright in meetings of the Board on April 2, 2013, April 23, 2013, May 21, 2013, and June 4, 2013.

**Response No. 31**:  Denied.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

JUL 18 2014

REC'D
CLERK

1

32.     That Schedule 10, Beverly Wright's Disclosure of Appearance of Conflict of Interest as Required by A, Section 23(b)(3), dated June 7, 2013, is a true, accurate and genuine copy of its original counterpart.

**Response No. 32**:  Admitted.

33.     That Schedule 10, Beverly Wright's Disclosure of Appearance of Conflict of Interest as Required by A, Section 23(b)(3), dated June 7, 2013, has no retrospective prophylactic or exonerative application.

**Response No. 33**:  Denied.

34.     That at no time from December 2012 to June 7, 2013 did Beverly Wright formally disclose her employment relationship with Berta Welch in any public meeting of the Board of Aquinnah.

**Response No. 34**:  Admitted.

35.     That Beverly Wright is a municipal employee as defined by Section (g) of the Conflict of Interest Law as Amended by 194, Acts of 2011.

**Response No. 35**:  Admitted.

36.     That municipal employees are specifically prohibited from acting on matters affecting themselves, their immediate family, the employee and his or her spouse; a business organization in which they are employee, or any person with whom they are negotiating for, or have, any arrangement concerning present or future employment.

**Response No. 36**:  Defendants object to this request on the ground that it does not call for application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

37.     That Beverly Wright's husband, Robert MacDiarmid, is Berta Welch's first cousin.

**Response No. 37**:  Admitted.

38.     That municipal employees must avoid conduct which creates a reasonable impression that they will act with bias.

**Response No. 38**:  Defendants object to this request on the ground that it does not call for application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

39.     That Beverly Wright's public disclosure, Schedule 10, referred to in preceding request for admission numbered 31, was not made prior to her official participation in or action taken during

the Board's meetings of February 5, 2013, April 2, 2013, April 23, 2013, May 21, 2013, June 4, 2013.

**Response No. 39**: Admitted.

40.     That use of an official position to secure an unwarranted privilege for someone is always prohibited, regardless of whether the preceding public disclosure procedure is followed.

**Response No. 40**: Defendants object to this request on the ground that it does not call for application of law to particular facts, but rather is a general statement of law, which is not a proper subject for a request under Mass.R.Civ.Proc. 36.

Signed under the penalties of perjury this 8th day of May, 2014.

_____
Beverly Wright, on behalf of the Board of
Selectmen of Aquinnah, and individually

**By their attorney, as to objections,**

_____
Daniel C. Perry, Esq. (BBO#395680)
Perry, Hicks and Deshaies, LLP
388 County Street, 2nd Floor
New Bedford, MA 02740
Tel. No. (508) 996-8291
Fax No. (508) 997-2637
danperry@perryhicks.net

## CERTIFICATE OF SERVICE

I, Daniel C. Perry, hereby certify under the penalties of perjury that a true copy of the foregoing pleading was served upon all parties/counsel of record by mailing same first-class mail, postage prepaid to the following people at the following address on May 8th, 2014:

baro@comcast.net
Robert F. Oberkoetter, Esq.
P.O. Box 77
Russells Mills, MA 02714

_____
Daniel C. Perry, Esq.

3

(36)

## COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.                                    SUPERIOR COURT DEPARTMENT
                                              C.A. NO. DUCV2013-00049

WENDY SWOLINZKY, D/B/A BOOKABOAT,   )
    Plaintiff                        )
                                    )
VS.                                 )
                                    )
BEVERLY WRIGHT, SPENCER BOOKER and  )
JAMES NEWMAN, as they are the       )
AQUINNAH BOARD OF SELECTMEN, and    )
BEVERLY WRIGHT, Individually,       )
    Defendants                       )
                                    )

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

### NOTICE OF APPEARANCE

TO:  THE CLERK OF THIS COURT AND ALL PARTIES OF RECORD

    Please enter my appearance as counsel for the defendants Beverly Wright, Spencer

Booker and James Newman as they are the Aquinnah Board of Selectmen in the above-captioned

matter.

                Respectfully Submitted,

                The Defendants,
                By their Attorneys,

                PIERCE, DAVIS & PERRITANO, LLP

                Shauna R. Twohig, BBO #685590
                90 Canal Street, Fourth Floor
                Boston, MA  02114-2018
                (617) 350-0950
                atwohig@piercedavis.com

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

Dated:  August 13, 2014

AUG 18 2014

REC'D
                CLERK

## CERTIFICATE OF SERVICE

I, Shauna R. Twohig, certify that on the 13th day of August, 2014, a true copy of the above document was served by first-class mail, postage prepaid on the following attorneys of record:

Robert F. Oberkoetter, Esquire
Three Jordan Road
Dartmouth, MA  02748

Marilyn H. Vukota, Esquire
McCarron, Murphy & Vukota, LLP
282 Upper Main Street
P. O. Box 1270
Edgartown, MA  02539

Shauna R. Twohig

(37)

COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.                                    SUPERIOR COURT DEPARTMENT
                                              C.A. NO. DUCV2013-00049

WENDY SWOLINZKY, D/B/A BOOKABOAT,          )
    Plaintiff                              )
                                           )
VS.                                        )
                                           )
BEVERLY WRIGHT, SPENCER BOOKER and         )
JAMES NEWMAN, as they are the              )
AQUINNAH BOARD OF SELECTMEN, and           )
BEVERLY WRIGHT, Individually, and          )
VERNON WELCH, Individually,                )
    Defendants                             )
                                           )

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

### DEFENDANTS BEVERLY WRIGHT, SPENCER BOOKER AND JAMES NEWMAN'S ANSWER TO VERNON WELCH'S CROSS-CLAIM, AND JURY DEMAND

### FIRST DEFENSE

The Defendant/Plaintiff-in-Crossclaim, Vernon Welch (hereinafter "Welch"), fails to state a

claim for which relief can be granted and, therefore, the Cross-Claim must be dismissed.

### SECOND DEFENSE

Welch's Cross-Claim fails to state a claim against the Defendants, Beverly Wright, Spencer

Booker, and James Newman, collectively in their capacities as the Aquinnah Board of Selectmen

(hereinafter the "Board"), upon which relief can be granted and, therefore, the Board has no

obligation to pay Welch any amount of the damages alleged.

### THIRD DEFENSE

The Board hereby answers Welch's Cross-Claim, paragraph by paragraph as follows:

1.    The allegations of this paragraph are admitted.

SUPERIOR COURT
COUNTY OF DUKES COUNTY

2.    The Board lacks sufficient information with which to either admit or deny the allegations set

REC'D
CLERK

forth in Paragraph No. 2 of Welch's Cross-Claim and, therefore, call upon Welch to prove same.

3.      The allegations of this paragraph are admitted.

4.      The allegations of this paragraph are admitted.

5.      The Board admits that it entered into a written lease with the Plaintiff in this action, Wendy Swolinzky ("Swolinzky"), pertaining to a lot of waterfront property on Menemsha Creek known as "Lot B," for the term of July 1, 2012 through June 30, 2017.  The Board neither admits nor denies the terms of the lease as it is a written document that speaks for itself.  The Board denies the remainder of the allegations contained in Paragraph No. 5.

6.      The Board admits that Swolinzky has been operating a seasonal boat rental business from Lot B for several years.  The Board further admits that, as part of her business, Swolinzky has made use of a shack located on Lot A, but denies that Swolinzky was "operating" her boat rental business on Lot A and otherwise denies the remainder of the allegations contained in Paragraph No. 6.

7.      The Board admits that, as part of her seasonal boat rental business on Lot B, Swolinzky has made use of a shack located on Lot A, but neither admits nor denies the terms of her arrangement with Camille A. Rose, the tenant of Lot A, because it has no actual knowledge of same and, therefore, calls upon Welch to prove same.  The Board denies that Swolinzky "rented Lot A" and further denies the remainder of the allegations contained in Paragraph No. 7.

8.      The Board admits that, by letter dated December 5, 2012, the Town notified Camille A. Rose that it did not intend to renew her lease on Lot A when it expired on June 30, 2013.  The Board neither admits nor denies the contents of the letter as it is a written document that speaks for itself.  To the extent a response is nonetheless required, the Board admits that Ms. Rose was not using Lot A for commercial fishing purposes, but neither admits nor denies that she was subletting it to Swolinzky, as it has no actual knowledge of same and, therefore, calls upon Welch to prove same.

2

9.      The Board admits that, at meetings held in January 2013, it discussed with Swolinzky a possible swap of the tenancies for Lots A and B between her and Ms. Rose.  The Board further admits that, during such discussions, Swolinzky raised a concern about water frontage on Lot A and the potential need to redraw the border between Lots A and B.  The Board denies the remainder of the allegations contained in Paragraph No. 9.

10.     The Board neither admits nor denies the allegations contained in Paragraph No. 10 because it has no actual knowledge of same and, therefore, calls upon Welch to prove same.

11.     The Board neither admits nor denies the allegations contained in Paragraph No. 11 because it has no actual knowledge of same and, therefore, calls upon Welch to prove same.

12.     The Board admits that, on or about June 4, 2013, it voted to award the lease for Lot A to Welch and that, on or about July 1, 2013, Welch executed a lease with Aquinnah for Lot A.  The Board admits the allegations contained in the second sentence of Paragraph No. 12.

13.     The allegations of this paragraph are admitted.

## COUNT I
### Breach of the Lease

14.     The Board repeats and incorporates by reference its responses to Paragraphs No. 1-13 above as if stated fully herein.

15.     The Board denies that it has "failed and refused to deliver up possession" of Lot A, but admits the remainder of the allegations contained in Paragraph No. 15.

16.     The allegations of this paragraph are denied.

17.     The allegations of this paragraph are denied.

## COUNT II
### Reformation

18.     The Board repeats and incorporates by reference its responses to Paragraphs No. 1-17 above

as if stated fully herein.

19.　The allegations of this paragraph are admitted.

20.　The Board neither admits nor denies the allegations contained in Paragraph No. 20 because it has no actual knowledge of same and, therefore, calls upon Welch to prove same.

21.　The allegations of this paragraph are denied.

22.　The statement contained in Paragraph No. 21 (sic) contains a request for relief that does not require a responsive pleading.  To the extent a response is deemed necessary, the Board denies that Welch is entitled to the relief requested.

WHEREFORE, the Board denies that the Defendant/Plaintiff-in-Crossclaim is entitled to any damages or relief and, therefore, demands judgment in its favor as to all claims.

## FOURTH DEFENSE

Welch's Cross-Claim must be dismissed for failure to state a claim that is ripe for judicial adjudication because Welch has not suffered an actionable injury.

## FIFTH DEFENSE

Welch's Cross-Claim for breach of contract necessarily fails on the grounds that the Board has not breached a material obligation under the contract.

## SIXTH DEFENSE

Welch's Cross-Claim for breach of contract necessarily fails because Welch has suffered no harm or damages as a result of an alleged breach.

## SEVENTH DEFENSE

Welch's Cross-Claim is barred under the doctrines of waiver and/or laches.

## EIGHTH DEFENSE

Welch is not entitled to recover damages because any reliance on his part was not

reasonable.

### NINTH DEFENSE

Welch's Cross-Claim is barred under the doctrine of equitable estoppel.

### TENTH DEFENSE

Welch's actions or inactions contributed to cause, either in whole or in part, the damages alleged and, therefore, his recovery is barred, in whole or in part, or subject to diminution.

### ELEVENTH DEFENSE

Welch's Cross-Claim is are barred in whole or in part insofar as Welch failed to mitigate the alleged costs, damages and expenses for which he seeks to recover.

### TWELFTH DEFENSE

Welch's Cross-Claim for breach of contract is barred because the alleged agreement between the parties is impractical or impossible in its performance.

### THIRTEENTH DEFENSE

Welch's Cross-Claim for breach of contract is barred by the statute of frauds.

### FOURTEENTH DEFENSE

Welch's Cross-Claim for reformation necessarily fails because there was no mutual mistake.

### JURY DEMAND

The Cross-Claim Defendants demand a trial by jury on all claims in Welch's Cross-Claim.

The Cross-Claim Defendants,

BEVERLY WRIGHT, SPENCER BOOKER and
JAMES NEWMAN, in their capacities as
Selectmen for the Town of Aquinnah,

By their Attorneys,
**PIERCE, DAVIS & PERRITANO, LLP**

John J. Davis, BBO #115890
Shauna R. Twohig, BBO #685590
90 Canal Street, Fourth Floor
Boston, MA  02114-2018
(617) 350-0950

Dated: August 13, 2014

## CERTIFICATE OF SERVICE

I, Shauna R. Twohig, certify that on the 13th day of August, 2014, a true copy of the above document was served by first-class mail, postage prepaid on the following attorneys of record:

Robert F. Oberkoetter, Esquire
Three Jordan Road
Dartmouth, MA 02748

Marilyn H. Vukota, Esquire
McCarron, Murphy & Vukota, LLP
282 Upper Main Street
P.O. Box 1270
Edgartown MA 02539

Shauna R. Twohig

6

(38)

# COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

SUPERIOR COURT DEPARTMENT
C.A. NO. DUCV2013-00049

WENDY SWOLINZKY, d/b/a BOOKABOAT,   )
    Plaintiff,   )
       )
       )
vs.   )
       )
       )
BEVERLY WRIGHT, SPENCER BOOKER and   )
JAMES NEWMAN, as they are the   )
AQUINNAH BOARD OF SELECTMEN, and   )
BEVERLY WRIGHT, Individually, and   )
VERNON WELCH, Individually,   )
    Defendants.   )
       )

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

*[handwritten notations in left margin:]* 9/18/14 Allowed, Chin, J. By Bambi Dumney Asst Clerk

## JOINT MOTION TO EXTEND TRACKING ORDER DEADLINES

    The parties to the above-captioned matter hereby jointly move, under Third Amended

Standing Order 1-88(D)(1), to amend the Tracking Order issued by this Court on December 4, 2013,

by extending the remaining unexpired deadlines by an additional four (4) months.  As good cause

shown, the parties state:

    (1)  This suit arises out a dispute over the use of two adjacent waterfront lots – Lot A and Lot B –

        owned by the Town of Aquinnah and located on Boathouse Road in the village of

        Menemsha.  The plaintiff, Wendy Swolinzky, d/b/a/ BookaBoat, is the current tenant on Lot

        B; the defendant, Vernon Welch, is the current tenant on Lot A.

    (2)  The plaintiff filed this suit on December 4, 2013, seeking to enforce certain contractual rights

        allegedly acquired as a result of votes taken by the Aquinnah Board of Selectmen (the

        "Board") at a meeting held on January 22, 2013.  In her original Complaint, the plaintiff

        asserted three Counts for relief against the Board and Beverly Wright, individually – for

        breach of contract (Count I), promissory estoppel (Count II), and intentional interference with

SUPERIOR COURT
COUNTY OF DUKES COUNTY

SEP 17 2014

REC'D

contractual and advantageous business relations (Count III).

(3) In response, the defendants moved to dismiss plaintiff's Complaint under Mass. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. On April 16, 2014, the Court (Page, J., presiding) denied defendants' Motion to Dismiss. Shortly thereafter, the plaintiff filed a First Amended Complaint adding a claim for unconstitutional takings (Count IV) and naming Vernon Welch (the Lot A tenant) as an additional defendant.

(4) On April 30, 2014, the Board and Ms. Wright filed an Answer to plaintiff's First Amended Complaint. On May 23, 2014, Mr. Welch filed an Answer to plaintiff's First Amended Complaint, together with a Counterclaim against Ms. Swolinzky and a Cross-Claim against the Board and Ms. Wright. Ms. Swolinkzy filed an Answer to Mr. Welch's Counterclaim on May 30, 2014, and the Board and Ms. Wright filed an Answer to Mr. Welch's Cross-Claim on August 18, 2014.

(5) As the above sequence demonstrates, the issues in this matter have only recently been joined. Meanwhile, the current discovery deadline is scheduled to expire on September 30, 2014. In light of the number of parties to this case, and the many claims and defenses raised in the pleadings, the parties require additional time in order to conduct and complete discovery and, if available, to prepare and serve motions for summary judgment under Mass. R. Civ. P. 56.

(6) This is the parties' first request to extend the Tracking Order deadlines in this matter. A four-month extension of the deadlines will neither prejudice any party to this case, nor unduly delay the final disposition.

(7) The parties jointly move that the remaining unexpired deadlines be extended by an additional four (4) months as follows:

|  | Current Deadline | New Deadline |
|---|---|---|
| Discovery | September 30, 2014 | January 30, 2015 |
| Rule 56 Motions | November 29, 2014 | March 31, 2015 |
| Final Pre-Trial Conference | March 29, 2015 | To be scheduled by the Court |

WHEREFORE, for good cause shown, the parties request that this Court amend the Tracking

Order by extending the remaining unexpired deadlines by an additional four (4) months.

Respectfully submitted,

The Plaintiff,
WENDY SWOLINZKY,
d/b/a BOOKABOAT,

The Defendants,
BEVERLY WRIGHT, SPENCER
BOOKER, JAMES NEWMAN, as they are
the AQUINNAH BOARD OF
SELECTMEN, and BEVERLY WRIGHT,
Individually,
By their Attorneys,

By her Attorney,

PIERCE, DAVIS & PERRITANO, LLP

Robert F. Oberkoetter, BBO #375450
Three Jordan Road
Dartmouth, MA 02748
508-536-5364
baro@comcast.net

John J. Davis, BBO #115890
Shauna R. Twohig, BBO #685590
90 Canal Street
Boston, MA 02114
(617) 350-0950
jdavis@piercedavis.com

The Defendant,
VERNON WELCH,
By his Attorneys,

**MCCARRON, MURPHY & VUKOTA, LLP,**

Marilyn H. Vukota, BBO #633225
282 Upper Main Street
P.O. Box 1270
Edgartown MA 02539
508 627-3322
MHV@Edgartownlaw.com

Dated: September 15, 2014

CERTICATE OF SERVICE
I hereby certify that on this day a true copy of
this document was served upon each attorney of
record/pro se plaintiff via first class mail/electronic
mail/fax/hand delivery.

9/15/14
Date        Attorney

4



## COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

SUPERIOR COURT DEPARTMENT
C.A. NO. DUCV2013-00049

WENDY SWOLINZKY, D/B/A BOOKABOAT, )
    Plaintiff, )
 )
 )
VS. )
 )
BEVERLY WRIGHT, SPENCER BOOKER and )
JAMES NEWMAN, as they are the )
AQUINNAH BOARD OF SELECTMEN, and )
BEVERLY WRIGHT, Individually, )
    Defendants. )
 )

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

### NOTICE OF APPEARANCE

    Kindly enter my appearance as counsel for the defendants, Aquinnah Board of Selectmen and Beverly Wright, Individually, in the above-captioned matter.

                           The Defendants,
                           AQUINNAH BOARD OF SELECTMEN &
                           BEVERLY WRIGHT, Individually,
                           By their Attorneys,

                           **PIERCE, DAVIS & PERRITANO, LLP**

                           Seth B. Barnett, BBO #661497
                           John J. Davis, BBO #115890
                           90 Canal Street
                           Boston, MA 02114
                           (617) 350-0950

Dated: December 22, 2014

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

DEC 26 2014

REC'D

_____CLERK

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of this document was served upon each attorney of record/pro se plaintiff via first class mail/electronic mail/fax/hand delivery.

12-22-14

Date     Attorney



## COMMONWEALTH OF MASSACHUSETTS

DUKES, SS.

DUKES SUPERIOR COURT
CIVIL ACTION NO.: DUCV2013-00049

WENDY SWOLINZKY )
D/B/A BOOKABOAT )
     Plaintiff )
)
V. )
)
BEVERLY WRIGHT, SPENCER BOOKER, )
And JAMES NEWMAN, as they are the )
Aquinnah Board of Selectmen, and BEVERLY )
WRIGHT, individually )
     Defendants )

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

---

### NOTICE OF APPEARANCE

Please enter an appearance for Timothy M. Burke and Jared S. Burke, as counsel for the Plaintiff, Wendy Swolinzky, in the above-referenced matter.

Respectfully submitted,

WENDY SWOLINZKY,

By her Attorneys,

LAW OFFICES OF TIMOTHY M. BURKE

Dated: 10/14/15

Timothy M. Burke
BBO# 065720
160 Gould Street, Suite 100
Needham, MA 02494
(781) 455-0707

Jared S. Burke
BBO# 677851
160 Gould Street, Suite 100
Needham, MA 02494
(781) 455-0707

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

NOV 0 4 2015

REC'D

CLERK

(41)

COMMONWEALTH OF MASSACHUSETTS

DUKES, SS.                          DUKES SUPERIOR COURT
                                    CIVIL ACTION NO.: DUCV2013-00049

WENDY SWOLINZKY                         )
D/B/A BOOKABOAT                         )
          Plaintiff                     )
                                        )
V.                                      )
                                        )
BEVERLY WRIGHT, SPENCER BOOKER,         )
And JAMES NEWMAN, as they are the       )
Aquinnah Board of Selectmen, and BEVERLY)
WRIGHT, individually                    )
          Defendants                    )

---

ASSENTED TO MOTION TO ENLARGE TIME FOR DISCOVERY

---

Now comes the Plaintiff, Wendy Swolinzky, and respectfully requests that this

Honorable Court grant an extension on the current discovery deadline to April 1, 2016.

As grounds for this motion, the Plaintiff recently retained new counsel. In order to

properly advocate for Plaintiff, counsel for Plaintiff will need additional time to depose

numerous fact witnesses. To date, Plaintiff's previous counsel has not deposed anyone.

Additionally, the underlying claims of this case contain numerous fact sensitive issues

that require additional time to thoroughly research. Defendant for the Aquinnah Board of

Selectman has graciously assented to this motion.

WHEREFORE, the Plaintiff respectfully requests that the Court allow Plaintiff's

motion and grant an extension on the current discovery deadline to April 1, 2016.

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

**FILED**
SUPERIOR COURT
COUNTY OF DUKES COUNTY

NOV 06 2015

REC'D

Respectfully submitted,
For the Plaintiff,
By Her Attorney,

_____
Timothy M. Burke, Esquire
BBO #065720
LAW OFFICES OF TIMOTHY M. BURKE
160 Gould Street, Suite 100
Needham, MA  02494
(781) 455-0707

Respectfully submitted,
For the Defendant
Aquinnah Board of Selectman,

_____
Seth Barnett, Esquire
BBO #661497
Pierce, Davis & Perritano, LLP
90 Canal Street
Boston, MA 02114-2018
 (617) 350-0950

Respectfully submitted,
For the Plaintiff,
By Her Attorney,

Timothy M. Burke, Esquire
BBO #065720
LAW OFFICES OF TIMOTHY M. BURKE
160 Gould Street, Suite 100
Needham, MA  02494
(781) 455-0707

Respectfully submitted,
For the Defendant
Vernon Welch,

Marilyn Vukota, Esquire
BBO # 633225
282 Upper Main Street
P.O Box 1270
Edgartown, MA 02539
(508) 627-7848





A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

COMMONWEALTH OF MASSACHUSETTS

DUKES, SS.                                    DUKES SUPERIOR COURT
                                              CIVIL ACTION NO.: DUCV2013-00049

WENDY SWOLINZKY                          )
D/B/A BOOKABOAT                          )
        Plaintiff                        )
                                         )
V.                                       )
                                         )
BEVERLY WRIGHT, SPENCER BOOKER,          )
And JAMES NEWMAN, as they are the        )
Aquinnah Board of Selectmen, and BEVERLY )
WRIGHT, individually, and                )
VERNON WELCH, individually,              )
        Defendants                       )

---

MOTION TO AMEND COMPLAINT

---

Now comes the plaintiff in the above matter and respectfully moves this

Honorable Court pursuant to Mass. R. Civil P. 15(a) to amend her complaint.  The

plaintiff has attached a memorandum of law with supporting authorities in collaboration

with this motion, as well as a proposed amended complaint.

Wherefore, the plaintiff respectfully requests that this Honorable Court allow the

plaintiff to amend her complaint in include claims for Civil Conspiracy; violation of

Federal Civil Rights for the unlawful seizure of her property, pursuant to the 4th, 5th and

14th Amendments to the U.S. Constitution (42 U.S, Code 1983) and violation of Article

10 and 12 of the Massachusetts Declaration of Rights.

**FILED**
SUPERIOR COURT
COUNTY OF DUKES COUNTY

MAR 07 2016

REC'D
_____CLERK

Respectfully Submitted,
For the Plaintiff,
By Her Attorney,

LAW OFFICES OF TIMOTHY M. BURKE

Timothy M. Burke, BBO #065720
160 Gould Street, Suite 100
Needham, MA 02494
(781) 455-0707



COMMONWEALTH OF MASSACHUSETTS

DUKES, SS.                                    DUKES SUPERIOR COURT
                                              CIVIL ACTION NO.: DUCV2013-00049

WENDY SWOLINZKY                          )
D/B/A BOOKABOAT                          )
             Plaintiff                   )
                                         )
V.                                       )
                                         )
BEVERLY WRIGHT, SPENCER BOOKER,          )
And JAMES NEWMAN, as they are the        )
Aquinnah Board of Selectmen, and BEVERLY )
WRIGHT, Individually, and                )
VERNON WELCH, Individually,              )
             Defendants                  )

A True Copy Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

---

**Plaintiff's Memorandum of Law in Support of Her Motion to Amend Complaint**

---

Now comes the plaintiff in the above matter and respectfully moves this Honorable

Court pursuant to Mass. R. Civ P. 15(a) and respectfully requests that this Honorable

Court allow her to file a second amended complaint in conformance to the evidence and

in light of additional discovery materials that establish liability for additional counts.

## 1. MOTION TO AMEND PLEADINGS STANDARD

Amended pleadings are governed under <u>Massachusetts Rules of Civil Procedure</u>

<u>Rule 15</u>, which allows for amendment under certain conditions. Specifically, under <u>Rule</u>

<u>15(a)</u>, a pleading may be amended as follows:

(a)    Amendments. A party may amend his pleading once as a matter of course
       at any time before a responsive pleading is served and prior to entry of
       an order of dismissal or, if the pleading is one to which no responsive
       pleading is permitted and the action has not been placed upon the trial
       calendar, he may so amend it at any time within 20 days after it is
       served. Otherwise a party may amend his pleading only by leave of
       court or by written consent of the adverse party; and leave shall be

**FILED**
SUPERIOR COURT
COUNTY OF DUKES COUNTY

MAR 07 2016

REC'D

_____CLERK

freely given when justice so requires. A party shall plead in response to
an amended pleading within the time remaining for response to the
original pleading or within 10 days after service of the amended
pleading, whichever period may be the longer, unless the court
otherwise orders. M.R.Civ.P. 15(a)

Massachusetts courts have adhered to the general proposition that an amendment

to add a new theory of liability should be allowed unless there is a good reason against it,

such as the following three primary reasons: undue delay, bad faith or dilatory motive on

the part of the movant, and or undue prejudice. *See eg.* Leonard v. Town of Brimfield,

423 Mass. 152, 156-157 (1996); Mathis v. Mass Electric Co., 409 Mass. 256, 264 (1991);

Sullivan v. Iantosca, 409 Mass. 796, 801 (1991); Hodge v. Klug, 33 Mass.App.Ct.746,

755 (1992); Bengar v. Clark Equiptment Co., 24 Mass.App.Ct. 41, 47 (1986); Quimby v.

Zoning Board of Appeals of Arlington, 19 Mass.App.Ct. 1005, 1007 (1985); Wonson v.

Ralph Leonard Assoc., Inc, 1992 Mass.App.Div. 75, 77 (1992); Carroll v. DeMoulas

Super Markets, Inc., 1987 Mass.App.Div. 163, 164 (1987).

## 2.  ARGUMENT

Applying the standard to the case at bar, it is clear that the Plaintiff, Wendy

Swolinzsky should be afforded the opportunity to amend her complaint to include counts

for (Count V) Article 10 and 12 of the Massachusetts Declaration of Rights; (Count VI)

Civil Rights Violations for the unlawful seizure of her property, pursuant to the 4th and

5th Amendment to U.S. Constitution (42 U.S, Code 1983); and (Count VII) Civil

Conspiracy.

In Count IV of Plaintiff's existing Complaint (paragraphs 29-42) predecessor counsel

ostensibly attempted to identify the "Constitutional" claims under the heading of

"Unconstitutional takings." The Plaintiff seeks to clarify the nature of those claims by

adding the actual State and Federal Constitutional claims being brought, as well as a claim for civil conspiracy.

The Fifth and Fourteenth Amendments' Equal Protection Clause directs that all persons similarly situated should be treated alike. United States Dep't of Agriculture v. Murry, 413 U.S. 508, 517 (1973) (Marshall, J., concurring). The D.C. Circuit has stated, "[a] central purpose of the equal protection guarantee is to shield the politically impotent from capricious action by the majority." Cmty-Serv. Broad. of Mid-America, Inc. v. FCC, 593 F.2d 1102, 1125 n.4 (D.C. Cir. 1978). Thus, applicants with political capital should not receive an advantage relative to similarly situated and equally eligible applicants that lack such political connections. See Cutts v. Fowler, 692 F.2d 138, 141 (D.C. Cir. 1982) (explaining that "[a]nti-nepotism rules play a legitimate and laudatory role in preventing conflicts of interest and favoritism.")

On its face, Plaintiffs' complaint alleges political favoritism, which can provide the basis for an equal protection claim. In Hornsby v. Allen, the court found that the standards of due process and equal protection were not met when city officials denied an applicant's liquor license, stating, "If one applicant for a license is preferred over another equally qualified as a political favor or as the result of a clandestine arrangement, the disappointed applicant is injured[.]"). 326 F.2d 605, 609-10 (5th Cir. 1964) (cited by this Court and the D.C. Circuit).

Both the Fourth and Fifth Amendments afford protections for citizens against the unreasonable seizure of property by government entities. Specifically, the Fifth Amendment of the U.S. Constitution provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand

jury...nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, **nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."**

Here the record demonstrates that the Plaintiff has laid out a clear case in which the Defendants have operated at several improper levels in wrongfully rescinding the lease of Lot A to the Plaintiff based upon nepotism and political decision-making and by then awarding Vernon Welch the use and control over the "shack" that Plaintiff had purchased in reliance upon the Defendants original grant of the lease to Lot A.

A similar argument can be made against the wrongful seizures of property here as made applicable by Articles 10 and 12 of the Massachusetts Declaration of Rights, which provides and affords greater protection against improper seizures that does that of the United States Constitution.  Article X states **"And whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor."**

Second, in seeking to amend her complaint, the Plaintiff has not acted in bad faith or with any dilatory motive in bringing this motion to amend against the Aquinnah Board of Selectmen. In support of this Motion, current counsel states that he had succeeded previous counsel in October of 2015.  Current counsel was unable to work for a period of six weeks from December 2, 2015, through January 15, 2016, due to recovery from knee replacement surgery.

Predecessor counsel, who withdrew in or about June of 2015, had conducted no depositions and only limited discovery in the case prior to his withdrawal. Since the filing of current counsel's appearance, the parties have agreed to extend discovery, trial is not imminent, discovery is far from complete (Plaintiff has requested deposition dates for the three named Board of Selectmen, and the proposed claims Plaintiff seeks to add do not affect Defendant Vernon Welch, and are essentially based on the same facts as the pre-existing claims.

To date, only the Plaintiff has been deposed previously and if necessary would agree to submit to an additional deposition were the Court to grant this amendment. Such second amendment would include minor additions to the factual statement and the addition of counts for the tort of civil conspiracy and Federal Civil Rights (Unlawful seizure violations of the 4th and 5th Amendment) pursuant to 42 U.S. Code, 1983 as well as a count pursuant to the Fifth Amendment.

## 3.  CONCLUSION

Therefore, given the absence of delay, bad faith, or prejudice to defendants, the fact that the discovery schedule will not be disrupted, and the legitimate purpose served by presenting the claims against the individual defendants, Plaintiff requests that her motion to amend the complaint be granted.

Respectfully submitted,
For Plaintiff,
By her attorney,

Timothy M. Burke, BBO #065720
160 Gould Street, Suite 100
Needham, MA 02494-2300
(781) 455-0707

Dated: February 9, 2016



COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

SUPERIOR COURT DEPARTMENT
C.A. NO. DUCV2013-00049

WENDY SWOLINZKY, D/B/A BOOKABOAT, )
   Plaintiff, )
)
)
VS. )
)
)
BEVERLY WRIGHT, SPENCER BOOKER and )
JAMES NEWMAN, as they are the )
AQUINNAH BOARD OF SELECTMEN, and )
BEVERLY WRIGHT, Individually, and )
VERNON WELCH, Individually, )
   Defendants. )
)

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S SECOND MOTION TO AMEND THE AMENDED COMPLAINT

The defendants, Beverly Wright, Spencer Booker and James Newman, collectively

their official capacity as the Aquinnah Board of Selectmen, and Beverly Wright, individually,

hereby oppose plaintiff's Second Motion to Amend the Complaint to assert new and distinct

claims under federal law against the defendant(s) under 42 U.S.C. § 1983 where (1) plaintiff was

previously granted leave on or about April 22, 2014, to file an amendment to her original

Complaint to add allegations and a causes of action for an unconstitutional taking of her property

and (2) seeks to add entirely new and distinct allegations of "political favoritism" to support her

proposed amendments after the defendants have completed all of their discovery.   To that end,

such amendments are both untimely and highly prejudicial.  Plaintiff should not be permitted the

opportunity to go back yet again and re-craft her claim of an unconstitutional taking at the late

stages of this litigation simply because her successor counsel is apparently attempting to

strengthen her prior counsel's Amended Complaint by adding a federal cause of action and

allegations of "political favoritism."  Nothing prevented plaintiff from asserting these claims or

FILED
COUNTY OF DUKES COUNTY

MAR 07 2016

REC'D

CLERK

substantive allegations in April 2014.  Plaintiff's belated attempt to entirely alter the trajectory of this matter should be denied.

## ARGUMENT

Under Mass.R.Civ.P. 15(a), leave to amend is generally "freely given when justice so requires."  Although amendments to pleadings are to be liberally granted, the right is not automatic.  *Terrio v. McDonough*, 16 Mass.App.Ct. 163, 167, *rev. den'd*, 390 Mass. 1102 (1983).  The court has discretion to deny the motion when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Castellucci v. U.S. Fid. & Guar. Co.*, 372 Mass. 288, 290 (1977) (denying plaintiff's motion to amend to add a new theory of liability after discovery closed because plaintiff waited over three years to raise the issue and then did so only when trial was minutes away), *quoting Foman v. Davis*, 371 U.S. 178, 182 (1962). Undue delay in asserting a claim is a sufficient justification by itself for denying a motion to amend, especially when the plaintiff is attempting to add a new theory of liability or a new party. *Walsh v. Chestnut Hill Bank & Trust Co.*, 414 Mass. 283, 286-87 (1993); *U.S. Leasing Corp. v. Chicopee*, 402 Mass. 228, 233 (1988) (motion to amend denied where plaintiff sought to add a new theory of liability almost four years after the complaint was filed).

The factors relevant to a Rule 15 determination include: the objections made by the opposing party; possible prejudice to the opposing party; the public interest, if any, in granting the motion; whether the amendment would alter the proof; whether there has been undue delay; the existence of bad faith on the party of the movant; and whether a "markedly" different theory of liability would be introduced. *Goulet v. Whitin Machine Works, Inc.*, 399 Mass. 547, 549-552 (1987); *Hall v. Horizon House Microwave, Inc.*, 24 Mass.App.Ct. 84, 87-88 (1987).

In the instant action, nearly all of the reasons for denying plaintiff's Second Motion to Amend are present.  First, the defendants object to any amendment. Second, plaintiff seeks to add an entirely new theories of liability against the defendants under 42 U.S.C. § 1983, where this matter has purely concerned state law claims and for civil conspiracy long after defendants have completed discovery, despite the fact she knew or should have known such causes of action may have been available to her first at the commencement of this suit in late 2013, and certainly when she added similar claims in April 2014.  Next, the proposed amendments would alter the proof and place a markedly different theories of liability in play and would require discovery into markedly different evidence, namely, the individual liability of the former Selectmen, the allegations of "political favoritism" and federal constitutional claims for due process violations and unlawful seizures.  Of course, plaintiff has already sought to amend his Complaint but failed to cure this alleged deficiency. Unexcused delay in seeking to amend is a valid basis for denial of a motion to amend. *Barbosa v. Hopper Feeds, Inc.*, 404 Mass. 610, 621-622 (1989).  Nowhere in plaintiff's Complaint or Amended Complaint does she allege that she is charging any defendant with political favoritism or a violation of her due process rights.

Allowing a Motion to Amend would be extremely prejudicial to the individual defendant, Ms. Wright, given that her defense has been exclusively focused on their alleged actions which plaintiff claims she intentional interfered with plaintiff's advantageous business relationships, as highlighted by the areas of inquiry during plaintiff's deposition.

Most importantly, this Second Motion to Amend is also inappropriate because it is clearly tailored to defeat the defendants' anticipated Motion for Summary Judgment by adding new theories of liability against them.  "[T]he longer plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court , is itself a sufficient reason for the court to withhold permission to amend." *Steir v. Girl*

3

*Scouts of the USA*, 383 F.3d 7, 10-12 (1st Cir. 2004) (motion to amend denied where new theory of liability would require the re-opening of discovery ... and a delay of any trial), *citing Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52-53 (1st Cir. 1998).  Courts should disfavor motions to amend where the timing of such motions prejudices the opposing party by "requiring a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial tactics and strategy ...." *Acosta-Mestre*, 156 F.3d at 52.  Prejudice to the opposing party is the real "touchstone" for the denial of any amendment request. *Hamed v. Fadili*, 27 Mass.App.Ct. 234, 239 (1989).  There is no doubt that Argiro is attempting to do exactly the same here.  Plaintiff's untimely motion should be denied because it is merely an attempt "to threaten to complicate and extend the litigation and thus to exert practical pressure on the opposition." *Greenery Rehabilitation Group, Inc. v. Antaramian*, 36 Mass.App.Ct. 73, 79 (1994).

## CONCLUSION

Based on the foregoing, the defendants respectfully request that this Court deny the plaintiff's Second Motion to Amend the Complaint.

The Defendants,
AQUINNAH BOARD OF SELECTMEN &
BEVERLY WRIGHT, Individually,
By their Attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

Seth B. Barnett, BBO #661497
John J. Davis, BBO #115890
90 Canal Street
Boston, MA 02114
(617) 350-0950

CERTICATE OF SERVICE
I hereby certify that on this day a true copy of this document was served upon each attorney of record/pro se plaintiff via first class mail/electronic mail/fax/hand delivery.

2-24-16
Date          Attorney

Dated: February 24, 2016

4

substantive allegations in April 2014.  Plaintiff's belated attempt to entirely alter the trajectory of this matter should be denied.

## ARGUMENT

Under Mass.R.Civ.P. 15(a), leave to amend is generally "freely given when justice so requires."  Although amendments to pleadings are to be liberally granted, the right is not automatic.  *Terrio v. McDonough*, 16 Mass.App.Ct. 163, 167, *rev. den'd*, 390 Mass. 1102 (1983).  The court has discretion to deny the motion when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Castellucci v. U.S. Fid. & Guar. Co.*, 372 Mass. 288, 290 (1977) (denying plaintiff's motion to amend to add a new theory of liability after discovery closed because plaintiff waited over three years to raise the issue and then did so only when trial was minutes away), *quoting Foman v. Davis*, 371 U.S. 178, 182 (1962). Undue delay in asserting a claim is a sufficient justification by itself for denying a motion to amend, especially when the plaintiff is attempting to add a new theory of liability or a new party. *Walsh v. Chestnut Hill Bank & Trust Co.*, 414 Mass. 283, 286-87 (1993); *U.S. Leasing Corp. v. Chicopee*, 402 Mass. 228, 233 (1988) (motion to amend denied where plaintiff sought to add a new theory of liability almost four years after the complaint was filed).

The factors relevant to a Rule 15 determination include: the objections made by the opposing party; possible prejudice to the opposing party; the public interest, if any, in granting the motion; whether the amendment would alter the proof; whether there has been undue delay; the existence of bad faith on the party of the movant; and whether a "markedly" different theory of liability would be introduced. *Goulet v. Whitin Machine Works, Inc.*, 399 Mass. 547, 549-552 (1987); *Hall v. Horizon House Microwave, Inc.*, 24 Mass.App.Ct. 84, 87-88 (1987).

2

In the instant action, nearly all of the reasons for denying plaintiff's Second Motion to Amend are present.  First, the defendants object to any amendment. Second, plaintiff seeks to add an entirely new theories of liability against the defendants under 42 U.S.C. § 1983, where this matter has purely concerned state law claims and for civil conspiracy long after defendants have completed discovery, despite the fact she knew or should have known such causes of action may have been available to her first at the commencement of this suit in late 2013, and certainly when she added similar claims in April 2014.  Next, the proposed amendments would alter the proof and place a markedly different theories of liability in play and would require discovery into markedly different evidence, namely, the individual liability of the former Selectmen, the allegations of "political favoritism" and federal constitutional claims for due process violations and unlawful seizures.  Of course, plaintiff has already sought to amend his Complaint but failed to cure this alleged deficiency. Unexcused delay in seeking to amend is a valid basis for denial of a motion to amend. *Barbosa v. Hopper Feeds, Inc.*, 404 Mass. 610, 621-622 (1989).  Nowhere in plaintiff's Complaint or Amended Complaint does she allege that she is charging any defendant with political favoritism or a violation of her due process rights.

Allowing a Motion to Amend would be extremely prejudicial to the individual defendant, Ms. Wright, given that her defense has been exclusively focused on their alleged actions which plaintiff claims she intentional interfered with plaintiff's advantageous business relationships, as highlighted by the areas of inquiry during plaintiff's deposition.

Most importantly, this Second Motion to Amend is also inappropriate because it is clearly tailored to defeat the defendants' anticipated Motion for Summary Judgment by adding new theories of liability against them.  "[T]he longer plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court , is itself a sufficient reason for the court to withhold permission to amend." *Steir v. Girl*

*Scouts of the USA*, 383 F.3d 7, 10-12 (1st Cir. 2004) (motion to amend denied where new theory

of liability would require the re-opening of discovery ... and a delay of any trial), *citing Acosta-*

*Mestre v. Hilton Int'l of P.R., Inc.,* 156 F.3d 49, 52-53 (1st Cir. 1998).   Courts should disfavor

motions to amend where the timing of such motions prejudices the opposing party by "requiring

a re-opening of discovery with additional costs, a significant postponement of trial, and a likely

major alteration in trial tactics and strategy ...." *Acosta-Mestre*, 156 F.3d at 52.   Prejudice to the

opposing party is the real "touchstone" for the denial of any amendment request. *Hamed v.*

*Fadili,* 27 Mass.App.Ct. 234, 239 (1989).   There is no doubt that Argiro is attempting to do

exactly the same here.   Plaintiff's untimely motion should be denied because it is merely an

attempt "to threaten to complicate and extend the litigation and thus to exert practical pressure on

the opposition." *Greenery Rehabilitation Group, Inc. v. Antaramian*, 36 Mass.App.Ct. 73, 79

(1994).

## CONCLUSION

Based on the foregoing, the defendants respectfully request that this Court deny the

plaintiff's Second Motion to Amend the Complaint.

The Defendants,
AQUINNAH BOARD OF SELECTMEN &
BEVERLY WRIGHT, Individually,
By their Attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

Seth B. Barnett, BBO #661497
John J. Davis, BBO #115890
90 Canal Street
Boston, MA 02114
(617) 350-0950

CERTICATE OF SERVICE
I hereby certify that on this day a true copy of
this document was served upon each attorney of
record/pro se plaintiff via first class mail/electronic
mail/fax/hand delivery.

2-24-16
Date       Attorney

Dated: February 24, 2016

4



# COMMONWEALTH OF MASSACHUSETTS

DUKES, SS.                              DUKES SUPERIOR COURT
                                        CIVIL ACTION NO.: DUCV2013-00049

WENDY SWOLINZKY                         )
D/B/A BOOKABOAT                         )
          Plaintiff                     )
                                        )
V.                                      )
                                        )
BEVERLY WRIGHT, SPENCER BOOKER,         )
And JAMES NEWMAN, as they are the       )
Aquinnah Board of Selectmen, and BEVERLY)
WRIGHT, individually, and               )
VERNON WELCH, individually,             )
          Defendants                    )

<div align="right">
A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS
</div>

---

## AFFIDAVIT OF COMPLIANCE WITH
## SUPERIOR COURT RULE 9A

---

I, Timothy M. Burke, on oath do depose and say as follows:

1. On **February 10, 2016**, I sent, by first class mail, to Seth Barnett, Esq., Counsel for the Defendants, Aquinnah Board of Selectmen and Beverly Wright, Individually, as well as Marilyn H. Vukota, Esq., Counsel for the Defendant Vernon Welch, the following documents:
   a. Motion to Amend Complaint.
   b. Second Amended Complaint.
   c. Plaintiff's Memorandum of Law in Support of Her Motion to Amend Complaint.

2. I received Defendants Aquinnah Board of Selectmen and Beverly Wright's, Individually, response within the time limits as set forth in Rule 9A.

3. I have not received Defendant Vernon Welch's response within the time limits as set forth is Rule 9A.

4. As of today's date, I sent copies of the Notice of Filing attached hereto and this 9A Compliance to Defendants counsel in the above referenced action.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

MAR 07 2016

REC'D
_____ CLERK

Signed under the pains and penalties of perjury this ⎯ day of ⎯⎯⎯ ⎯⎯⎯

2016.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Timothy M. Burke



# COMMONWEALTH OF MASSACHUSETTS

DUKES, SS.                          DUKES SUPERIOR COURT
                                    CIVIL ACTION NO.: DUCV2013-00049

WENDY SWOLINZKY                    )
D/B/A BOOKABOAT                    )
    Plaintiff                  )
                                   )
V.                                 )
                                   )
BEVERLY WRIGHT, SPENCER BOOKER,    )
And JAMES NEWMAN, as they are the  )
Aquinnah Board of Selectmen, and BEVERLY )
WRIGHT, individually, and          )
VERNON WELCH, individually,        )
    Defendants                 )

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

---

## NOTICE OF FILING

---

    Plaintiff through counsel hereby filed the following documents with the Civil Clerk, Dukes Superior Court on:

1. Motion to Amend Complaint.

2. Second Amended Complaint.

3. Plaintiff's Memorandum of Law in Support of Her Motion to Amend Complaint.

4. Defendants' Opposition to Plaintiff's Second Motion to Amend the Amended Complaint.

5. Affidavit of Compliance with Superior Court Rule 9A.

                      Respectfully Submitted,

                      For the Plaintiff,
                      By her Attorney,

                      LAW OFFICES OF TIMOTHY M. BURKE

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

MAR 07 2016

REC'D
_____
CLERK

Timothy M. Burke, BBO #065720
160 Gould Street, Suite 100
Needham, MA 02494
(781) 455-0707

## Certificate of Service

I hereby state that on this date I served a true copy of the foregoing document upon all other attorneys of record.

Dated: 3/1/16

(47)

COMMONWEALTH OF MASSACHUSETTS

DUKES, SS.                                    DUKES SUPERIOR COURT
                                              CIVIL ACTION NO.: DUCV2013-00049

WENDY SWOLINZKY                        )
D/B/A BOOKABOAT                        )
          Plaintiff                    )
                                       )
V.                                     )
                                       )
BEVERLY WRIGHT, SPENCER BOOKER,        )
And JAMES NEWMAN, as they are the      )
Aquinnah Board of Selectmen, and BEVERLY )
WRIGHT, individually, and              )
VERNON WELCH, Individually,            )
          Defendants                   )

---

### SECOND AMENDED COMPLAINT

---

#### PARTIES

1.  Plaintiff Wendy Swolinzky, hereinafter "Ms. Swolinzky" or "Plaintiff", resides in
    Dukes County, P.O. Box 634, Aquinnah, MA 02535.

2.  For the period of 14 years preceding this complaint, Plaintiff has single handedly
    conducted an annual/seasonal boat renting business called "BookaBoat," located
    on land owned by both the Towns of Aquinnah and Chilmark.

3.  Defendants Beverly Wright, Spencer Booker and James Newman each reside in
    Aquinnah, MA. and together constitute the Aquinnah Board of Selectmen,
    hereinafter "the Board", which conducts its business in Dukes County at 65 State
    Road, Aquinnah, MA 02535.

4.  Defendant Beverly Wright was the Chair Person of the Board, and formerly the
    President of the Wampanoag Tribe, is a resident of Dukes County and resides in
    Aquinnah, MA 02535 and Charleston, West Virginia 25321.

#### FACTS

5.  The Defendants know that Plaintiff's "BookaBoat" boat rental business is
    seasonal and that a significant volume of her business is conducted annually from
    late Spring to Labor Day.

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY
MAR 09 2016

REC'D
_____
CLERK

6. As of the start of the 2013 season, the Plaintiff held a valid 5-year lease with the Board. This lease of Lot B commenced on July 1, 2012 and ran through June 30, 2017.

7. For the past seven (7) years, the Aquinnah Board of Selectmen and the small community of Menemsha lessees were actually aware that the Plaintiff conducted her business from a small office in a "shack" owned by Camille Rose. This "shack" is located on Lot A, which adjoins Lot (B). Plaintiff had leased Lot B for the previous fourteen (14) years and had been openly using the "shack" for the previous seven (7) years. A major portion of the "shack" itself is located within the Town of Chilmark and the remainder of the shack lies within the borders of the Town of Aquinnah.

8. As of December of 2012, the members of the Aquinnah Board of Selectmen clearly knew that Camille Rose owned this "shack," and that Ms. Rose intended to sell the "shack" to the Plaintiff. The Defendants also knew, or in the exercise of reasonable care, should have known that a significant portion of the "shack" was not located within the borders of the Town of Aquinnah.

9. At the December 18, 2012, Aquinnah Board of Selectmen (hereinafter "BOS") meeting the Board members discussed the possibility of purchasing the "shack" on Lot A from Camille Rose. The BOS directed Aquinnah Town Administrator Adam Wilson (hereinafter "Wilson") to contact Rose to determine if she was interested in the sale of the "shack" as an option to Rose "having to remove it." See email exchange between Wilson and Camille Rose, cc. to BOS, (Attached hereto as "Exhibit A")

10. On January 8, 2013, Rose responded to the BOS as follows:

> "Your offer to buy my building in Menemsha is appreciated but I have promised to sell it to Wendy Smolinsky (sic) in the event that I can no longer use it. Please understand that in spite of the stories to the contrary, I have never sublet to her. Several years ago I made this promise to Wendy and now I will honor it…" See email exchange between Camille Rose and BOS, (Attached hereto as "Exhibit B")

11. There is a provision in all Aquinnah Board leases of the waterfront Menemsha lots prohibiting the subletting of lots or shared usage, however the Board had neither employed nor enforced the provision until December 2012, when the provision was used as a reason not to renew the Lease of Lot A, held by Camille Rose.

12. The BOS initially stated their intention not to renew Camille Rose's lease of Lot A purportedly because she was unable to demonstrate that she intended to use the property for purposes permitted by the lease as a bait and tackle business. The

BOS subsequently attempted to use the "shared usage" exclusion as the basis for ending Ms. Rose's lease.

13. In her preparation for the 2013 season, the Plaintiff appeared at a duly noticed meeting of the Board on January 8, 2013 and presented her business plan.

14. On January 8, 2013, the BOS reviewed Plaintiff's business plan. Board member James Newman suggested that there be a switch of lots, that the Board permit Plaintiff to swap her existing lease of Lot B for the existing lease of Lot A. As stated, Lot A's lessee, Camille Rose, had permitted the Plaintiff to use the shack to conduct her business for the last 7 years without disturbance by the Board or anyone else.

15. The Board took Plaintiff's business plan and its own suggestion to "swap" Plaintiff's Lot B with Lot A under advisement until the next Board meeting, which was scheduled for January 22, 2013.

16. On January 22, 2013, the Board formally accepted the minutes of the January 8, 2013 meeting and did so unanimously. The Board's January 22, 2013, relevant minutes are as follows:

> "**Aquinnah Board of Selectmen**
> **Minutes of Meeting 1/22/2013**
> **Aquinnah Town Hall Selectmen's Mtg Room**
> **Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,**
> **Also present: Town Administrator Adam Wilson, Jamie Vanderhoop, Theresa Manning,Chief Randhi Belain, Sgt Paul Manning, Wendy Swolinzky, Vern Welch, Jimmy San Fillippo, Barbara Bassett, Moderator Mike Hebert, June Manning, and Town Accountant Margie Spitz.**
> **-The meeting began at 5:05 pm**
> **-1st on the agenda under old business was a review of minutes from the 1-8 Selectmen's meeting.**
> **-Jim made a motion to accept the minutes from January 8th. Beverly seconded.**
> **The Board voted 3 - 0 in favor. The motion passed.**
> **-Next under old business was a revisit of the proposal from Wendy to have her switch the current Menemsha lot she leases (Lot B) and take over the lot being vacated by Camille Rose (Lot A). With the change, Lot A's water frontage would increase to 70' and Lot B's would be reduced to 35'. Spencer stated he was in favor of the change and just moving the lot lines. Beverly said she just doesn't want a state agency saying down the road they couldn't make these changes. Wendy said the current site plan**

was drawn up by Hugh (Taylor) and only the lot owned by Alfred Vanderhoop had been on the original site plan.

There was discussion about the Board's decision not to renew Camille's lease, which was for one year, expiring June 30th of this year and the existing shed being sold to Wendy. The lot created would become available to the 1st person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern.

-Jim made a motion to move the lot line so that Lot B is reduced to 35 feet and increase Lot A to be 69.9 feet. Beverly seconded. There was discussion about notifying Chip about Lot B's availability. Jimmy asked about the commercial fishing license requirement to have one of the lots. The Board voted 3 - 0 in favor. The motion passed.

-Beverly made a motion that as of July 1st, 2013, the town will enter into a new lease agreement for Wendy to have Lot A. Jim seconded.

The Board voted 3 - 0 in favor. The motion passed." (Attached hereto as "Exhibit C")

17. No contingencies existed or further approval was required at the time of the Board's vote or subsequent to it. The Board was the sole licensing and issuing authority for the rights to lease Lot A. The Plaintiff subsequently relied on their unanimous votes granting her substantial contractual rights and following the January 22, 2013, Board meeting, she entered into a written contract with Camille Rose to purchase the shack resting on Lot A for the sum of $30,000. Any issue regarding any party named on the "waiting list," could and should have been raised at that time.

18. Full faith and credit to a "waiting list" policy of the Board was amply discussed in public during the January 22, 2013 Board Meeting and was repeated in the minutes and stated as follows:

> "The lot created would become available to the 1st person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern." Vern is Vernon Welch, Berta Welch's husband. "There was discussion about notifying Chip about Lot B's availability." See minutes of the meeting of January 22, 2013, a full, true and accurate copy of which is memorialized in paragraph 17 above. The Board also noted in their minutes that the existing shed was to be sold to the Plaintiff "Wendy."

19. Neither the Plaintiff nor Camille Rose were on the wait list because each held a valid lease. The Board's concept of the lot swap did nothing to derogate from the wait-list policy. It was specifically addressed and honored during the January 22, 2013 meeting. Vernon Welch was present and participating, he was placed on public notice that Lot B was open and available on July 1, 2013 first to Brian Vanderhoop and then to him should Mr. Vanderhoop decline.

20. Defendant Beverly Wright has in the recent past been, and currently is, an employee of Berta Welch, the wife of Vernon Welch. Berta Welch and Defendant Wright have known each other and worked together and have been best friends for many years. Beverly Wright's husband is Berta Welch's first cousin.

21. On April 23, 2013, the Defendants wrongfully and without legitimate justification or notice rescinded their previous vote to award the Plaintiff with a lease for Lot A. The Defendants, without justification or legitimacy subsequently awarded the lease of Lot A, as well as the use of the "shack" to Vernon Welch.

22. This decision was based upon nepotism and political favoritism and was approved by the Board without lawful justification or explanation.

23. The lease of Lot A to Welch was done despite the fact that Defendant Beverly Wright knew that Plaintiff had relied on the January 22, 2013 vote to purchase the shack from Camille Rose. Board members Booker and Newman admitted during public Board meetings that rescission of their January 22, 2013 vote would likely put the Plaintiff out of business.

24. On April 23, 2013, the Board rescinded the previously unanimous vote of January 22, 2013 by a vote of 2 to 0. BOS member James Newman abstained. , The BOS's lease of Lot A to Vernon Welch, was done with full knowledge that the Plaintiff owned the shack.

25. Vernon Welch is domiciled in Dukes Country and resides at 10 Raymonds Hill Lane, Aquinnah. Mr. Welch is married to Berta Welch, Defendant Wright's employer.

## COUNT ONE
### Breach of Contract

26. On January 22, 2013, the Board of Selectmen of Aquinnah entered into an agreement with the Plaintiff, whereby the Defendant Board agreed to lease to the Plaintiff and the Plaintiff agreed to rent the premises described as follows: Lot A with frontage increased to 69.9 feet, lease to commence July 1, 2013 at the annual rent of $450.00 for a term of five years. The written minutes of the January 22, 2013 BOS meeting were confirmed unanimously on February 5, 2103. The audio-tape and transcript of the January 22, 2013 meeting memorialized the lease agreement as did the confirmation of the written minutes on February 5, 2015. See paragraph 17.

27. The Plaintiff requests that the audio-tapes, transcripts and video-tapes, if any, of the respective BOS meetings identified above are hereby incorporated by reference for all purposes.

28. By its rescission vote of April 23, 2013, the Board of Selectmen of Aquinnah breached its agreements with the Plaintiff and damaged her in several particulars, specifically including, but not limited to, the $30,000 she committed in reliance on the January 22, 2013 votes of the Board of Selectmen of Aquinnah, and substantial losses in business during her 2013 Summer season and subsequently.

COUNT TWO
Promissory Estoppel

29. Following two properly noticed and constituted public meetings of the Board of Selectmen of Aquinnah, namely the public meetings of January 8 and January 22, 2013, the unanimous votes of the Selectmen constituted promises to the Plaintiff which reasonably induced her actions to enter into binding contracts in preparation for the nearing Summer season of 2013, and also induced Plaintiff's forbearance from moving the shack, which she purchased following the Board's votes and in addition induced Plaintiff's forbearance from seeking alternative business sites.

30. Plaintiff's reliance on the promises defined by the unanimous votes of the Selectmen on January 22, 2013 were not only commercially reasonable, they were made four months before the start of the Summer season. Her reliance constitutes an independent and sufficient basis for enforcing the promises.

31. Rescission of the January 22, 2013 unanimous votes occurred on April 23, 2013, a mere seven (7) days before the start of the 2013 summer season for the Plaintiff.

COUNT THREE
Interference With Contractual and Advantageous Business Relationships

32. Defendant Beverly Wright, in concert with third parties, by and with continuing improbity, intentionally interfered with both the contractual and advantageous business relationships between the Plaintiff and the Town of Aquinnah by proactively and wrongfully coordinating a rescission of the Board's unanimous vote of January 22, 2013.

33. On April 23, 2013, Defendant Wright, by her unlawful actions as a government actor and under the color of law, achieved her goal of rescission, her baseless reasons on full display during televised recordings of the Board's several public meetings, culminating in the award of Plaintiff's Lot A lease to Vernon Welch, the spouse of Berta Welch, Defendant Wright's employer as well as Wright's husband's first cousin.

34. On April 23, 2013, the Board wrongfully, and without explanation or justification, rescinded its prior vote to lease Lot A to the Plaintiff, in doing so the Defendants breached the covenant of good faith and fair dealing with the Plaintiff, anticipatorily breached the promised lease, refused to execute and deliver to

Plaintiff a formal indenture of lease for the said premises, and at the present time continues to refuse to deliver and execute the lease and has caused Plaintiff multiple damages.

35. Plaintiff is ready, willing and able to do and perform all acts and things necessary by her to be done under the terms if the agreement set forth in the public meeting votes of the Aquinnah Board of Selectmen of January 22, 2013.

COUNT FOUR
Unconstitutional Taking

36. On September 3, 2013, Aquinnah's Board of Selectmen and Aquinnah's Planning Board conducted a joint public meeting for the specific purpose of discussing Plaintiff's "shack," its removal from Lot A, and the rights of all lessees of Menemsha lots.

37. As of September 3, 2013, the Board actually knew that Plaintiff's Planning Board application was not merely pending but also complex and would become the subject of multiple further permit requirements.

38. Sometime shortly before the Board meeting of December 3, 2013, without notice to the Plaintiff or in compliance with Massachusetts' Open Meeting Law, Defendant Wright had sua-sponte asked the Town Administrator to place an item on the meeting agenda regarding the "status" of Plaintiff's permit applications.

39. Board member Newman is the Board's representative to the Aquinnah Planning Board and was at all relevant times cognizant of Plaintiff's applications, which remain pending to this date. He was a proactive participant in the joint meeting of the Select and Planning Board on September 3, 2013, paragraph 29 above.

40. No notice pursuant to G. L. Ch. 30A, Section 20(c) was given to Plaintiff or to the public that a taking of the shack was to be considered.

41. In multiple meetings of the Board of Aquinnah subsequent to the January 22, 2013 votes, the Board acknowledged Plaintiff's ownership of the shack. (See para. 9-11).

42. At all relevant times, the Board was actually aware that Plaintiff had purchased the shack on April 11, 2013 and had a copy of her Bill of Sale in its Town Office.

43. On May 28, 2013, the Board's attorney corresponded and acknowledged Plaintiff's ownership of the shack.

44. On May 28, 2013, the Board's attorney corresponded and suggested that Plaintiff sell the shack to Vernon Welch.

45. On December 3, 2013, the Board voted to take the shack as town property and did so without notice to the Plaintiff or with either Procedural or Substantive Due Process in violation of Plaintiff's rights under both the 4th and 5th Amendments to the United States Constitution and Articles 10 and 12 of the Massachusetts Declaration of Rights.

46. In violation of the Open Meeting Law of Massachusetts, G. L. Ch. 30A, Section 20(c) by failing to provide appropriate notice to the public of which Plaintiff is a part, the Board lacked the authority to unilaterally amend the agenda from "status" to a "taking."

47. The Board's vote of December 3, 2013, was arbitrary, capricious, and violated Plaintiff's constitutional right to the free and unfettered access to her personal property by taking that property without notice, and by ignoring the requisite steps to seize personal property in accord with the law of eminent domain or as required by the 4th and 5th Amendments to the United States Constitution and Articles 10 and 12 of the Massachusetts Declaration of Rights

48. In a wrongful attempt and with the intent to justify or explain the Board's misconduct of December 3, 2013, on February 5, 2014, entirely without legal justification or precedent, the Board employed Section 17 of a lapsed lease with Camille Rose (lapsed as of June 30, 2013) to take possession of the shack in 2014.

49. On December 3, 2013, in violation of the open meeting law, G. L. Ch. 30A, Section 20(c) by failing to notify anyone in the Town of Aquinnah or in the Town of Chilmark by customary posting in advance of a public meeting of any agenda item by which the Board intended to discuss Plaintiff's property, without notice to the Plaintiff pursuant to her Federal and Massachusetts constitutional rights, the Town voted a public taking of the shack, without compensation, of personal property of the Plaintiff, property situated not in the Town of Aquinnah but in the Town of Chilmark.

COUNT FIVE
Massachusetts Constitution, Declaration of Rights, Art. 10 and 12

50. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

51. The actions of the Defendants, individually and collectively, deprive the Plaintiff of the practical value of her property and has effected a taking of the Plaintiff's property for the purpose of wrongfully benefitting another party, based upon political favoritism and nepotism, and without notice or due process and without the payment of just compensation in violation of the Massachusetts Constitution, Declaration of Rights, Art. 10 and 12.

52. Plaintiff has been damaged by Defendants' violations as described in this count and seek recovery for the damages caused thereby.

<div align="center">

COUNT SIX
Federal Civil Rights Claims (42 US CODE 1983, 1985)

</div>

53. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

54. The actions of the Defendants, individually and collectively, under the color of law, denied the Plaintiff the economically viable use of her property, awarded the lease of Lot A and the so-called "shack" on the basis of political favoritism, which constitutes a seizure without due process and without just compensation in violation of 42 U.S Code, 1983, Federal Civil Rights, Amendments IV, V and Amendment XIV of the United States Constitution.

55. Plaintiff has been damaged by the Defendants' violations as described more fully above and seeks recovery for the damages caused thereby, including attorney's fees and punitive damages.

<div align="center">

COUNT SEVEN
Civil Conspiracy

</div>

56. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

57. The individual Defendants acting as the Board of Selectmen, have pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of a common plan or design to violate Plaintiff's constitutional rights by awarding the lease of Lot A and the shack to another party based upon political favoritism and nepotism.

WHEREFORE, The Plaintiff respectfully requests:

a. That the Defendant Board be required to specifically perform the agreement to lease Lot A in accord with the terms of the January 22, 2013 votes;

b. That if specific performance is not granted, judgment enter in favor of the Plaintiff and against the Defendants, jointly and severally in an amount to be decided by a jury;

c. That the Court declare that Plaintiff is the lawful owner of the shack and that, in the alternative, it be removed, at the Defendants expense to Lot B;

d.  That the Court order the Town of Aquinnah to fairly and reasonably compensate her for the shack, for losses in her business and associated costs;

e.  That payment of costs be made by the Defendants.

f.  The Court award punitive damages and attorneys fees as provided by law.

Respectfully submitted,
For Plaintiff,
By her attorney,

Timothy M. Burke, BBO #065720
160 Gould Street, Suite 100
Needham, MA 02494-2300
(781) 455-0707

Dated: February 9, 2016

(48)

## COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

SUPERIOR COURT DEPARTMENT
C.A. NO. C.A. 1374CV00049

WENDY SWOLINZKY D/B/ A BOOKABOAT, )
     Plaintiff, )
      )
VS. )
      )
BEVERLY WRIGHT, SPENCER BOOKER, )
and JAMES NEWMAN, )
as they are the Aquinnah Board of Selectmen, )
and BEVERLY WRIGHT, individually, )
     Defendants. )
      )

### NOTICE OF FILING OF NOTICE OF REMOVAL

     Please take notice that a Notice of Removal, a true and correct copy of which is attached

hereto, was filed by the defendants in the office of the Clerk of the United States District Court

for the District of Massachusetts on April 7, 2016, relative to the removal and transfer of the

above-captioned action.

A True Copy
Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

The Defendants,
By their Attorneys,

**PIERCE, DAVIS & PERRITANO LLP**

FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

APR 13 2016

REC'D
_____CLERK

_____
John J. Davis, BBO #115890
Seth B. Barnett, BBO #661497
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com
sbarnett@piercedavis.com

Dated: April 7, 2016

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of
this document was served upon each attorney of
record/pro se plaintiff via first class mail/electronic
mail/fax/hand delivery.

4-7-16 _____
Date        Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WENDY SWOLINZKY D/B/ A BOOKABOAT,<br>    Plaintiff,<br><br>VS.<br><br>BEVERLY WRIGHT, SPENCER BOOKER,<br>and JAMES NEWMAN,<br>as they are the Aquinnah Board of Selectmen,<br>and BEVERLY WRIGHT, individually,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. NO. 16-10669<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
### 28 U.S.C. § 1441(a)

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS:

    Petitioners, Beverly Wright, Spencer Booker and James Newman, as they are the Aquinnah Board of Selectmen, and Beverly Wright, individually, respectfully petition this Court, pursuant to 28 U.S.C. § 1441(a), for removal of the above-entitled action to the United States District Court for the District of Massachusetts, Civil Session, from the Superior Court of the Commonwealth of Massachusetts in and for Dukes County, and for their Notice of Removal state as follows:

    1.    The petitioners are named as defendants by the plaintiff, Wendy Swolinzky, d/b/a/ Bookaboat, in a civil action filed in the Superior Court of the Commonwealth of Massachusetts in and for Dukes County, entitled Wendy Swolinzky, d/b/a/ Bookaboat v. Aquinnah Board of Selectmen, et. al, Civil Action No. DUCV2013-00049.  On March 9, 2016, the Superior Court entered an order allowing plaintiff leave to file a Second Amended Complaint. (See Second Amended Complaint, attached hereto as **Exhibit A**; Dukes County Superior Court Order, attached

hereto as **Exhibit B**).  The petitioners have not yet answered or otherwise responded to said Second Amended Complaint.

2.      This is a suit of a wholly civil nature brought in a Massachusetts state court.  The action is pending in Dukes County, Massachusetts, and, accordingly, under 29 U.S.C. § 101 and § 1441(a), the United States District Court for the District of Massachusetts is the proper forum for removal.

3.      In their Second Amended Complaint, the plaintiff now seeks damages and other relief alleging that defendants are liable to her under 42 U.S.C. § 1983 by (1) taking plaintiff's property in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

4.      Because this civil action arises under the Constitution and laws of the United States, the United States District Court has original jurisdiction under 28 U.S.C. § 1331.

5.      The petitioners are filing this Notice of Removal within thirty (30) days of the entry of the Superior Court's Order allowing Plaintiff's Motion for Leave to Amend, which is within thirty days of the date this action became removable, and within the time for filing this petition. See 28 U.S.C. § 1446.

6.      The petitioners will file a Notice of Filing of this Notice of Removal and a copy of this Notice of Removal with the Clerk of the Superior Court of Massachusetts, County of Dukes.

7.      Pursuant to Local Rule 81.1(a), the petitioners shall request of the Clerk of the Superior Court of Massachusetts, County of Dukes, certified or attested copies of all records and proceedings in the state court and certified or attested copies of all docket entries therein, and shall file the same with this Court within thirty (30) days after the filing of this Notice of Removal.

WHEREFORE, petitioners, Beverly Wright, Spencer Booker and James Newman, as they are the Aquinnah Board of Selectmen, and Beverly Wright, individually, pray that the above-entitled action now pending in the Dukes Superior Court of the Commonwealth of Massachusetts in and for Dukes County be removed from that Court to this United States District Court.

The Defendants,
By their Attorneys,

**PIERCE, DAVIS & PERRITANO LLP**

/s/ Seth B. Barnett

John J. Davis, BBO #115890
Seth B. Barnett, BBO #661497
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com
sbarnett@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon the plaintiffs as follows on April 7, 2016:

/s/ Seth B. Barnett
Seth B. Barnett

# A

COMMONWEALTH OF MASSACHUSETTS

DUKES, SS.                          DUKES SUPERIOR COURT
                                    CIVIL ACTION NO.: DUCV2013-00049

WENDY SWOLINZKY                     )
D/B/A BOOKABOAT                     )
              Plaintiff             )
                                    )
V.                                  )
                                    )
BEVERLY WRIGHT, SPENCER BOOKER,     )
And JAMES NEWMAN, as they are the   )
Aquinnah Board of Selectmen, and BEVERLY )
WRIGHT, individually                )
              Defendants            )

---

## SECOND AMENDED COMPLAINT

---

### PARTIES

1. Plaintiff Wendy Swolinzky, hereinafter "Ms. Swolinzky" or "Plaintiff", resides in Dukes County, P.O. Box 634, Aquinnah, MA 02535.

2. For the period of 14 years preceding this complaint, Plaintiff has single handedly conducted an annual/seasonal boat renting business called "BookaBoat," located on land owned by both the Towns of Aquinnah and Chilmark.

3. Defendants Beverly Wright, Spencer Booker and James Newman each reside in Aquinnah, MA. and together constitute the Aquinnah Board of Selectmen, hereinafter "the Board", which conducts its business in Dukes County at 65 State Road, Aquinnah, MA 02535.

4. Defendant Beverly Wright was the Chair Person of the Board, and formerly the President of the Wampanoag Tribe, is a resident of Dukes County and resides in Aquinnah, MA 02535 and Charleston, West Virginia 25321.

### FACTS

5. The Defendants know that Plaintiff's "BookaBoat" boat rental business is seasonal and that a significant volume of her business is conducted annually from late Spring to Labor Day.

6. As of the start of the 2013 season, the Plaintiff held a valid 5-year lease with the Board. This lease of Lot B commenced on July 1, 2012 and ran through June 30, 2017.

7. For the past seven (7) years, the Aquinnah Board of Selectmen and the small community of Menemsha lessees were actually aware that the Plaintiff conducted her business from a small office in a "shack" owned by Camille Rose. This "shack" is located on Lot A, which adjoins Lot (B). Plaintiff had leased Lot B for the previous fourteen (14) years and had been openly using the "shack" for the previous seven (7) years. A major portion of the "shack" itself is located within the Town of Chilmark and the remainder of the shack lies within the borders of the Town of Aquinnah.

8. As of December of 2012, the members of the Aquinnah Board of Selectmen clearly knew that Camille Rose owned this "shack," and that Ms. Rose intended to sell the "shack" to the Plaintiff. The Defendants also knew, or in the exercise of reasonable care, should have known that a significant portion of the "shack" was not located within the borders of the Town of Aquinnah.

9. At the December 18, 2012, Aquinnah Board of Selectmen (hereinafter "BOS") meeting the Board members discussed the possibility of purchasing the "shack" on Lot A from Camille Rose. The BOS directed Aquinnah Town Administrator Adam Wilson (hereinafter "Wilson") to contact Rose to determine if she was interested in the sale of the "shack" as an option to Rose "having to remove it." See email exchange between Wilson and Camille Rose, cc. to BOS, (Attached hereto as "Exhibit A")

10. On January 8, 2013, Rose responded to the BOS as follows:

"Your offer to buy my building in Menemsha is appreciated but I have promised to sell it to Wendy Smolinsky (sic) in the event that I can no longer use it. Please understand that in spite of the stories to the contrary, I have never sublet it to her. Several years ago I made this promise to Wendy and now I will honor it…" See email exchange between Camille Rose and BOS, (Attached hereto as "Exhibit B")

11. There is a provision in all Aquinnah Board leases of the waterfront Menemsha lots prohibiting the subletting of lots or shared usage, however the Board had neither employed nor enforced the provision until December 2012, when the provision was used as a reason not to renew the Lease of Lot A, held by Camille Rose.

12. The BOS initially stated their intention not to renew Camille Rose's lease of Lot A purportedly because she was unable to demonstrate that she intended to use the property for purposes permitted by the lease as a bait and tackle business. The

BOS subsequently attempted to use the "shared usage" exclusion as the basis for ending Ms. Rose's lease.

13. In her preparation for the 2013 season, the Plaintiff appeared at a duly noticed meeting of the Board on January 8, 2013 and presented her business plan.

14. On January 8, 2013, the BOS reviewed Plaintiff's business plan. Board member James Newman suggested that there be a switch of lots, that the Board permit Plaintiff to swap her existing lease of Lot B for the existing lease of Lot A. As stated, Lot A's lessee, Camille Rose, had permitted the Plaintiff to use the shack to conduct her business for the last 7 years without disturbance by the Board or anyone else.

15. The Board took Plaintiff's business plan and its own suggestion to "swap" Plaintiff's Lot B with Lot A under advisement until the next Board meeting, which was scheduled for January 22, 2013.

16. On January 22, 2013, the Board formally accepted the minutes of the January 8, 2013 meeting and did so unanimously. The Board's January 22, 2013, relevant minutes are as follows:

> **"Aquinnah Board of Selectmen**
> **Minutes of Meeting 1/22/2013**
> **Aquinnah Town Hall Selectmen's Mtg Room**
> **Members present: Spencer Booker, Chairman, Jim Newman, Beverly Wright,**
> **Also present: Town Administrator Adam Wilson, Jamie Vanderhoop, Theresa Manning, Chief Randhi Belain, Sgt Paul Manning, Wendy Swolinzky, Vern Welch, Jimmy San Fillippo, Barbara Bassett, Moderator Mike Hebert, June Manning, and Town Accountant Margie Spitz.**
> **-The meeting began at 5:05 pm**
> **-1st on the agenda under old business was a review of minutes from the 1-8 Selectmen's meeting.**
> **-Jim made a motion to accept the minutes from January 8th. Beverly seconded.**
> **The Board voted 3 - 0 in favor. The motion passed.**
> **-Next under old business was a revisit of the proposal from Wendy to have her switch the current Menemsha lot she leases (Lot B) and take over the lot being vacated by Camille Rose (Lot A). With the change, Lot A's water frontage would increase to 70' and Lot B's would be reduced to 35'. Spencer stated he was in favor of the change and just moving the lot lines. Beverly said she just doesn't want a state agency saying down the road they couldn't make these changes. Wendy said the current site plan**

was drawn up by Hugh (Taylor) and only the lot owned by Alfred Vanderhoop had been on the original site plan.

There was discussion about the Board's decision not to renew Camille's lease, which was for one year, expiring June 30th of this year and the existing shed being sold to Wendy. The lot created would become available to the 1st person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern.

-Jim made a motion to move the lot line so that Lot B is reduced to 35 feet and increase Lot A to be 69.9 feet. Beverly seconded. There was discussion about notifying Chip about Lot B's availability. Jimmy asked about the commercial fishing license requirement to have one of the lots. The Board voted 3 - 0 in favor. The motion passed.

-Beverly made a motion that as of July 1st, 2013, the town will enter into a new lease agreement for Wendy to have Lot A. Jim seconded.

The Board voted 3 - 0 in favor. The motion passed." (Attached hereto as "Exhibit C")

17. No contingencies existed or further approval was required at the time of the Board's vote or subsequent to it. The Board was the sole licensing and issuing authority for the rights to lease Lot A. The Plaintiff subsequently relied on their unanimous votes granting her substantial contractual rights and following the January 22, 2013, Board meeting, she entered into a written contract with Camille Rose to purchase the shack resting on Lot A for the sum of $30,000. Any issue regarding any party named on the "waiting list," could and should have been raised at that time.

18. Full faith and credit to a "waiting list" policy of the Board was amply discussed in public during the January 22, 2013 Board Meeting and was repeated in the minutes and stated as follows:

"The lot created would become available to the 1st person on the waiting list. Jim said that was Brian (Vanderhoop), followed by Vern." Vern is Vernon Welch, Berta Welch's husband. "There was discussion about notifying Chip about Lot B's availability." See minutes of the meeting of January 22, 2013, a full, true and accurate copy of which is memorialized in paragraph 17 above. The Board also noted in their minutes that the existing shed was to be sold to the Plaintiff "Wendy."

19. Neither the Plaintiff nor Camille Rose were on the wait list because each held a valid lease. The Board's concept of the lot swap did nothing to derogate from the wait-list policy. It was specifically addressed and honored during the January 22, 2013 meeting. Vernon Welch was present and participating, he was placed on public notice that Lot B was open and available on July 1, 2013 first to Brian Vanderhoop and then to him should Mr. Vanderhoop decline.

20. Defendant Beverly Wright has in the recent past been, and currently is, an employee of Berta Welch, the wife of Vernon Welch. Berta Welch and Defendant Wright have known each other and worked together and have been best friends for many years. Beverly Wright's husband is Berta Welch's first cousin.

21. On April 23, 2013, the Defendants wrongfully and without legitimate justification or notice rescinded their previous vote to award the Plaintiff with a lease for Lot A. The Defendants, without justification or legitimacy subsequently awarded the lease of Lot A, as well as the use of the "shack" to Vernon Welch.

22. This decision was based upon nepotism and political favoritism and was approved by the Board without lawful justification or explanation.

23. The lease of Lot A to Welch was done despite the fact that Defendant Beverly Wright knew that Plaintiff had relied on the January 22, 2013 vote to purchase the shack from Camille Rose. Board members Booker and Newman admitted during public Board meetings that rescission of their January 22, 2013 vote would likely put the Plaintiff out of business.

24. On April 23, 2013, the Board rescinded the previously unanimous vote of January 22, 2013 by a vote of 2 to 0. BOS member James Newman abstained. , The BOS's lease of Lot A to Vernon Welch, was done with full knowledge that the Plaintiff owned the shack.

25. Vernon Welch is domiciled in Dukes Country and resides at 10 Raymonds Hill Lane, Aquinnah. Mr. Welch is married to Berta Welch, Defendant Wright's employer.

COUNT ONE
Breach of Contract

26. On January 22, 2013, the Board of Selectmen of Aquinnah entered into an agreement with the Plaintiff, whereby the Defendant Board agreed to lease to the Plaintiff and the Plaintiff agreed to rent the premises described as follows: Lot A with frontage increased to 69.9 feet, lease to commence July 1, 2013 at the annual rent of $450.00 for a term of five years. The written minutes of the January 22, 2013 BOS meeting were confirmed unanimously on February 5, 2103. The audio-tape and transcript of the January 22, 2013 meeting memorialized the lease agreement as did the confirmation of the written minutes on February 5, 2015. See paragraph 17.

27. The Plaintiff requests that the audio-tapes, transcripts and video-tapes, if any, of the respective BOS meetings identified above are hereby incorporated by reference for all purposes.

28. By its rescission vote of April 23, 2013, the Board of Selectmen of Aquinnah
breached its agreements with the Plaintiff and damaged her in several particulars,
specifically including, but not limited to, the $30,000 she committed in reliance
on the January 22, 2013 votes of the Board of Selectmen of Aquinnah, and
substantial losses in business during her 2013 Summer season and subsequently.

## COUNT TWO
### Promissory Estoppel

29. Following two properly noticed and constituted public meetings of the Board of
Selectmen of Aquinnah, namely the public meetings of January 8 and January 22,
2013, the unanimous votes of the Selectmen constituted promises to the Plaintiff
which reasonably induced her actions to enter into binding contracts in
preparation for the nearing Summer season of 2013, and also induced Plaintiff's
forbearance from moving the shack, which she purchased following the Board's
votes and in addition induced Plaintiff's forbearance from seeking alternative
business sites.

30. Plaintiff's reliance on the promises defined by the unanimous votes of the
Selectmen on January 22, 2013 were not only commercially reasonable, they were
made four months before the start of the Summer season. Her reliance constitutes
an independent and sufficient basis for enforcing the promises.

31. Rescission of the January 22, 2013 unanimous votes occurred on April 23, 2013, a
mere seven (7) days before the start of the 2013 summer season for the Plaintiff.

## COUNT THREE
### Interference With Contractual and Advantageous Business Relationships

32. Defendant Beverly Wright, in concert with third parties, by and with continuing
improbity, intentionally interfered with both the contractual and advantageous
business relationships between the Plaintiff and the Town of Aquinnah by
proactively and wrongfully coordinating a rescission of the Board's unanimous
vote of January 22, 2013.

33. On April 23, 2013, Defendant Wright, by her unlawful actions as a government
actor and under the color of law, achieved her goal of rescission, her baseless
reasons on full display during televised recordings of the Board's several public
meetings, culminating in the award of Plaintiff's Lot A lease to Vernon Welch,
the spouse of Berta Welch, Defendant Wright's employer as well as Wright's
husband's first cousin.

34. On April 23, 2013, the Board wrongfully, and without explanation or justification,
rescinded its prior vote to lease Lot A to the Plaintiff, in doing so the Defendants
breached the covenant of good faith and fair dealing with the Plaintiff,
anticipatorily breached the promised lease, refused to execute and deliver to

Plaintiff a formal indenture of lease for the said premises, and at the present time continues to refuse to deliver and execute the lease and has caused Plaintiff multiple damages.

35. Plaintiff is ready, willing and able to do and perform all acts and things necessary by her to be done under the terms if the agreement set forth in the public meeting votes of the Aquinnah Board of Selectmen of January 22, 2013.

## COUNT FOUR
### Unconstitutional Taking

36. On September 3, 2013, Aquinnah's Board of Selectmen and Aquinnah's Planning Board conducted a joint public meeting for the specific purpose of discussing Plaintiff's "shack," its removal from Lot A, and the rights of all lessees of Menemsha lots.

37. As of September 3, 2013, the Board actually knew that Plaintiff's Planning Board application was not merely pending but also complex and would become the subject of multiple further permit requirements.

38. Sometime shortly before the Board meeting of December 3, 2013, without notice to the Plaintiff or in compliance with Massachusetts' Open Meeting Law, Defendant Wright had sua-sponte asked the Town Administrator to place an item on the meeting agenda regarding the "status" of Plaintiff's permit applications.

39. Board member Newman is the Board's representative to the Aquinnah Planning Board and was at all relevant times cognizant of Plaintiff's applications, which remain pending to this date. He was a proactive participant in the joint meeting of the Select and Planning Board on September 3, 2013, paragraph 29 above.

40. No notice pursuant to G. L. Ch. 30A, Section 20(c) was given to Plaintiff or to the public that a taking of the shack was to be considered.

41. In multiple meetings of the Board of Aquinnah subsequent to the January 22, 2013 votes, the Board acknowledged Plaintiff's ownership of the shack. (See para. 9-11).

42. At all relevant times, the Board was actually aware that Plaintiff had purchased the shack on April 11, 2013 and had a copy of her Bill of Sale in its Town Office.

43. On May 28, 2013, the Board's attorney corresponded and acknowledged Plaintiff's ownership of the shack.

44. On May 28, 2013, the Board's attorney corresponded and suggested that Plaintiff sell the shack to Vernon Welch.

45. On December 3, 2013, the Board voted to take the shack as town property and did so without notice to the Plaintiff or with either Procedural or Substantive Due Process in violation of Plaintiff's rights under both the 4th and 5th Amendments to the United States Constitution and Articles 10 and 12 of the Massachusetts Declaration of Rights.

46. In violation of the Open Meeting Law of Massachusetts, G. L. Ch. 30A, Section 20(c) by failing to provide appropriate notice to the public of which Plaintiff is a part, the Board lacked the authority to unilaterally amend the agenda from "status" to a "taking."

47. The Board's vote of December 3, 2013, was arbitrary, capricious, and violated Plaintiff's constitutional right to the free and unfettered access to her personal property by taking that property without notice, and by ignoring the requisite steps to seize personal property in accord with the law of eminent domain or as required by the 4th and 5th Amendments to the United States Constitution and Articles 10 and 12 of the Massachusetts Declaration of Rights

48. In a wrongful attempt and with the intent to justify or explain the Board's misconduct of December 3, 2013, on February 5, 2014, entirely without legal justification or precedent, the Board employed Section 17 of a lapsed lease with Camille Rose (lapsed as of June 30, 2013) to take possession of the shack in 2014.

49. On December 3, 2013, in violation of the open meeting law, G. L. Ch. 30A, Section 20(c) by failing to notify anyone in the Town of Aquinnah or in the Town of Chilmark by customary posting in advance of a public meeting of any agenda item by which the Board intended to discuss Plaintiff's property, without notice to the Plaintiff pursuant to her Federal and Massachusetts constitutional rights, the Town voted a public taking of the shack, without compensation, of personal property of the Plaintiff, property situated not in the Town of Aquinnah but in the Town of Chilmark.

COUNT FIVE
Massachusetts Constitution, Declaration of Rights, Art. 10 and 12

50. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

51. The actions of the Defendants, individually and collectively, deprive the Plaintiff of the practical value of her property and has effected a taking of the Plaintiff's property for the purpose of wrongfully benefitting another party, based upon political favoritism and nepotism, and without notice or due process and without the payment of just compensation in violation of the Massachusetts Constitution, Declaration of Rights, Art. 10 and 12.

52. Plaintiff has been damaged by Defendants' violations as described in this count and seek recovery for the damages caused thereby.

## COUNT SIX
### Federal Civil Rights Claims (42 US CODE 1983, 1985)

53. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

54. The actions of the Defendants, individually and collectively, under the color of law, denied the Plaintiff the economically viable use of her property, awarded the lease of Lot A and the so-called "shack" on the basis of political favoritism, which constitutes a seizure without due process and without just compensation in violation of 42 U.S Code, 1983, Federal Civil Rights, Amendments IV, V and Amendment XIV of the United States Constitution.

55. Plaintiff has been damaged by the Defendants' violations as described more fully above and seeks recovery for the damages caused thereby, including attorney's fees and punitive damages.

## COUNT SEVEN
### Civil Conspiracy

56. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

57. The individual Defendants acting as the Board of Selectmen, have pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of a common plan or design to violate Plaintiff's constitutional rights by awarding the lease of Lot A and the shack to another party based upon political favoritism and nepotism.

WHEREFORE, The Plaintiff respectfully requests:

a. That the Defendant Board be required to specifically perform the agreement to lease Lot A in accord with the terms of the January 22, 2013 votes;

b. That if specific performance is not granted, judgment enter in favor of the Plaintiff and against the Defendants, jointly and severally in an amount to be decided by a jury;

c. That the Court declare that Plaintiff is the lawful owner of the shack and that, in the alternative, it be removed, at the Defendants expense to Lot B;

d. That the Court order the Town of Aquinnah to fairly and reasonably compensate her for the shack, for losses in her business and associated costs;

e. That payment of costs be made by the Defendants.

f. The Court award punitive damages and attorneys fees as provided by law.

Respectfully submitted,
For Plaintiff,
By her attorney,

Timothy M. Burke, BBO #065720
160 Gould Street, Suite 100
Needham, MA 02494-2300
(781) 455-0707

Dated: February 9, 2016

# B

| **CLERK'S NOTICE** | DOCKET NUMBER<br>**1374CV00049** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|
| CASE NAME:<br>Wendy  Swolinzky d/b/a BookaBoat vs. Aquinnah Board of Selectmen et al | | Joseph E. Sollitto, Jr., Clerk of Court<br>Dukes County |
| TO:<br>Seth Barnett, Esq.<br>Pierce, Davis & Perritano, LLP<br>90 Canal Street<br>Boston, MA 02114 | | COURT NAME & ADDRESS<br>Dukes County Superior Court<br>81 Main Street<br>P. O Box 1267<br>Edgartown, MA 02539 |

You are hereby notified that on 03/09/2016 the following entry was made on the above referenced docket:

Endorsement on Motion to amend the Complaint (#42.0): ALLOWED

| DATE ISSUED<br>03/09/2016 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br>**Hon. Cornelius J Moriarty, II** | SESSION PHONE# |
|---|---|---|

JS 44   (Rev. 11/15)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Wendy Swolinzky d/b/a BookaBoat | Beverly Wright, Spencer Booker and James Newman as they are Aquinnah Board of Selectmen, and Beverly Wright, Ind. |

| | | |
|---|---|---|
| **(b)** County of Residence of First Listed Plaintiff    Dukes | County of Residence of First Listed Defendant    Dukes | |
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* | |
| | NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. | |

| **(c)**   Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Timothy M. Burke, BBO #065720<br>160 Gould Street, Suite 100<br>Needham, MA 02494 781-455-0707 | Seth B. Barnett, BBO #661497<br>Pierce Davis & Perritano LLP, 10 Post Office Square, Suite 1100N<br>Boston, MA 02109 617-350-0950 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
        Plaintiff

☒ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 2   U.S. Government
        Defendant

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                                *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>    & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>    Student Loans<br>    (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>    of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>    Liability<br>☐ 320 Assault, Libel &<br>    Slander<br>☐ 330 Federal Employers'<br>    Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>    Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>    Product Liability<br>☐ 360 Other Personal<br>    Injury<br>☐ 362 Personal Injury -<br>    Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>    Product Liability<br>☐ 367 Health Care/<br>    Pharmaceutical<br>    Personal Injury<br>    Product Liability<br>☐ 368 Asbestos Personal<br>    Injury Product<br>    Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>    Property Damage<br>☐ 385 Property Damage<br>    Product Liability | ☐ 625 Drug Related Seizure<br>    of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>    28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>    3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>    Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>    Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>    Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>    Accommodations<br>☐ 445 Amer. w/Disabilities -<br>    Employment<br>☐ 446 Amer. w/Disabilities -<br>    Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>    Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>    Conditions of<br>    Confinement | ☐ 710 Fair Labor Standards<br>    Act<br>☐ 720 Labor/Management<br>    Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>    Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>    Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>    Actions | ☐ 870 Taxes (U.S. Plaintiff<br>    or Defendant)<br>☐ 871 IRS—Third Party<br>    26 USC 7609 | ☐ 899 Administrative Procedure<br>    Act/Review or Appeal of<br>    Agency Decision<br>☐ 950 Constitutionality of<br>    State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
        Proceeding

☒ 2   Removed from
        State Court

☐ 3   Remanded from
        Appellate Court

☐ 4   Reinstated or
        Reopened

☐ 5   Transferred from
        Another District
        *(specify)*

☐ 6   Multidistrict
        Litigation

| VI.  CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:<br>42 U.S.C. Section 1983<br>Brief description of cause:<br>Plaintiff alleges a violation of her Fifth Amendment Constitutional rights |
|---|---|

| VII. REQUESTED IN<br>COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION<br>    UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S)<br>IF ANY | *(See instructions):* | JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 04/07/2016 | /s/ Seth B. Barnett |

**FOR OFFICE USE ONLY**

| RECEIPT # _____ | AMOUNT _____ | APPLYING IFP _____ | JUDGE _____ | MAG. JUDGE _____ |
|---|---|---|---|---|

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)  Wendy Swolinzky v. Beverly Wright

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

   [ ]   I.    410, 441, 470, 535, 830*, 891, 893, 895, R.23, REGARDLESS OF NATURE OF SUIT.

   [✓]   II.   110, 130, 140, 160, 190, 196, 230, 240, 290,320,362, 370, 371, 380, 430, 440, 442, 443, 445, 446, 448, 710, 720, 740, 790, 820*, 840*,  850, 870,  871.

   [ ]   III.  120, 150, 151, 152, 153, 195, 210, 220, 245, 310, 315,  330, 340, 345, 350, 355, 360, 365, 367, 368, 375, 376, 385, 400, 422, 423, 450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555,  625, 690, 751, 791, 861-865,  890, 896, 899, 950.

            *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   N/A

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]     NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)
   YES [ ]     NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]     NO [✓]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]     NO [✓]

7. Do all of the parties  in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [ ]     NO [✓]

   A.    If yes, in which division do all of the non-governmental parties reside?
         Eastern Division [✓]         Central Division [ ]         Western Division [ ]

   B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
         Eastern Division [ ]         Central Division [ ]         Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)
   YES [ ]     NO [✓]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Seth B. Barnett, BBO #661497

ADDRESS  Pierce Davis & Perritano LLP, 10 Post Office Square, Suite 1100N, Boston, MA 02109

TELEPHONE NO.  617-350-0950

(CategoryForm3-2016.wpd )